UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HENRY BARABIN and GERALDINE BARABIN, | |
| Plaintiffs, | No. C07-1454RSL |
| v. | ORDER DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT |
| ALBANY INTERNATIONAL CORP., *et al.*, | |
| Defendants. | |

## I. INTRODUCTION

This matter comes before the Court on "Defendant Scapa Dryer Fabrics, Inc.'s Motion for Summary Judgment," Dkt. #152, and "Defendant AstenJohnson, Inc.'s Motion for Summary Judgment," Dkt. #156. Plaintiffs allege that Henry Barabin developed mesothelioma as a result of his exposure to defendants' asbestos-containing products during his career at a Washington paper mill. Defendants individually seek summary judgment dismissal of plaintiffs' claims, contending that plaintiffs cannot meet their burden of proof at trial that Mr. Barabin was exposed to asbestos from products manufactured by defendants. For the reasons set forth below, the

ORDER DENYING DEFENDANTS'
MOTIONS FOR SUMMARY
JUDGMENT - 1

Court denies defendants' respective motions for summary judgment.[1]

**II. DISCUSSION**

**A. Background**

On November 1, 2006, Mr. Barabin was diagnosed with malignant pleural mesothelioma. Mesothelioma is a cancer caused by exposure to asbestos. Plaintiffs claim that Mr. Barabin was exposed to asbestos-containing paper machine clothing, or dryer felts, during his employment at the Crown-Zellerbach paper mill in Camas, Washington ("Camas Mill"), where he worked from 1968 to 2001.

Mr. Barabin held several positions during his thirty-three years at the Camas Mill. After a one-month stint packaging finished product, he was assigned to the technical department as a pulp tester, and later as a paper tester. These jobs required him to work on and around each of the fifteen paper machines at the mill, taking pulp and paper samples directly from each machine. In 1974 or 1975, Mr. Barabin began working on paper machine crews. He began on a machine crew as "fifth hand" and worked his way up through various positions, including "fourth hand," "winderman," "back-tender," and "filterman." As a fifth hand, fourth hand, and winderman, Mr. Barabin worked on several machines, cutting the old dryer felts out of the machine and fastening the new felts onto the old and rolling it into the paper machine. In particular, he helped to change paper machine clothing during shutdowns. This involved blowing out the paper machine dryers with air hoses to remove all the dust and scrap paper. As a back-tender, Mr. Barabin had responsibility for controlling the temperature and checking the reel of paper as it came off the machine. As a filterman, he was required to check the "save-all" filters on all of the paper machines. In 1984, Mr. Barabin began working on paper machine

---

[1] Because the Court finds that this matter can be decided on the parties' memoranda, declarations, and exhibits, the parties' requests for oral argument are denied.

ORDER DENYING DEFENDANTS'
MOTIONS FOR SUMMARY
JUDGMENT - 2

number 20, and he worked exclusively on that machine until his retirement in 2001.

It is undisputed that defendant AstenJohnson, Inc. ("Asten") manufactured and distributed asbestos-containing paper machine clothing from 1931 to 1980, Dkt. #165, Ex. G at 7, and that defendant Scapa Dryer Fabrics, Inc. ("Scapa") did the same from 1958 to 1978, Dkt. #162, Ex. E at 2. Furthermore, both Asten's and Scapa's asbestos-containing dryer felts were used at the Camas Mill while Mr. Barabin worked there.

**B. Analysis**

Summary judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Once the movant meets its initial burden, summary judgment is appropriate if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The Court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. United States v. Johnson Controls, Inc., 457 F.3d 1009, 1013 (9th Cir. 2006).

**1. Causation**

Each defendant contends that plaintiffs cannot meet their burden of proof that Mr. Barabin's mesothelioma was proximately caused by exposure to the defendant's asbestos-containing products. Asten points to the fact that Mr. Barabin could not recall the name "Asten" when asked about the dryer felts he worked with and notes that other witnesses could not place Mr. Barabin in proximity to any Asten products. Dkt. #156 at 6. Similarly, Scapa notes that Mr.

ORDER DENYING DEFENDANTS'
MOTIONS FOR SUMMARY
JUDGMENT - 3

Barabin could not testify under oath that he worked with Scapa dryer felts and contends that plaintiffs' evidence consists of the "speculative memories of co-workers that there may have been a Scapa product at the Camas Mill." Dkt. #152 at 3, 8. According to Scapa, "[w]ithout any admissible evidence describing the frequency, regularity, and/or proximity of any exposure of Mr. Barabin to respirable asbestos dust from any Scapa product, a juror will be left to speculate whether such a product was a cause of Mr. Barabin's condition." Id. at 8.

Under Washington law,[2] "the plaintiff must establish a reasonable connection between the injury, the product causing the injury, and the manufacturer of the product." Lockwood v. AC & S, Inc., 109 Wn.2d 235, 245 (1987). In Lockwood, defendant Raymark moved for a directed verdict at the close of plaintiff's case and for a judgment notwithstanding the verdict returned in favor of the Lockwoods after jury deliberations ended. The Supreme Court of Washington determined that the Lockwoods presented sufficient evidence of causation, despite the fact that there was "no direct evidence that [Mr.] Lockwood worked with or near Raymark cloth on the *George Washington* [vessel] or that Raymark cloth was torn from that vessel." Id. The court "believe[d] that it would be reasonable for a factfinder to infer that [Mr. Lockwood] was exposed to Raymark's product" based on several factors. Id. at 247. First, the Court found that witness testimony that Raymark's product was used on a large liner conversion at Puget Sound Bridge and Dredge in 1947 and 1948, and Mr. Lockwood's testimony that he had worked on the overhaul of the *George Washington* and that there was asbestos on that type of job, "indicate that Raymark's product was used on a ship where Lockwood worked." Id. Second, the court pointed to "expert testimony that after asbestos dust was released, it drifted in the air and could

---

[2] Because federal jurisdiction is based on diversity of the parties, the Court applies Washington state law to resolve all substantive and procedural issues. See Freund v. Nycomed Amersham, 347 F.3d 752, 761 (9th Cir. 2003).

ORDER DENYING DEFENDANTS'
MOTIONS FOR SUMMARY
JUDGMENT - 4

be inhaled by bystanders who did not work directly with asbestos." Id. The Court found it "reasonable to infer that since [Raymark's] product was used on that ship when Lockwood worked there, Lockwood was exposed to it." Id. Third, the court relied on evidence that both the application of new asbestos and the ripping out of old asbestos creates asbestos dust. Id. Finally, the court noted that "Raymark ha[d] not pointed to any evidence in the record that the handling of Raymark cloth creates no asbestos dust." Id. The court concluded that, based on these factors, combined with expert testimony on the cumulative effect of asbestos exposure on the contraction of asbestosis, "it would be reasonable for a jury to conclude that Lockwood's exposure to Raymark's product was a proximate cause of his injury." Id. at 247-48.

When compared to the above analysis in Lockwood, plaintiffs' case similarly presents sufficient evidence for a reasonable juror to infer that Mr. Barabin was exposed to Asten and Scapa asbestos-containing products. The Court first considers whether defendants' products were used in the machines on which Mr. Barabin worked. While the Court agrees with Asten that Mr. Barabin's testimony and the accounts of his co-workers are alone insufficient to substantiate plaintiffs' claims,[3] Asten's motion fails to mention the over 150 pages of Asten sales records to the Camas Mill. See Dkt. #165, Ex. I. These records show which Asten products were delivered to which Camas Mill paper machines and when. For example, on February 26, 1971, Asten sold one of its "Synbest" dryer felts, an asbestos-containing product, see Dkt. #165, Ex. G at 7, to the Camas Mill to be installed in the Number 15 machine. Dkt. #165, Ex. I at 9. Mr. Barabin's testimony indicates that he worked on the Number 15 machine, along with other

---

[3] Although plaintiffs present the testimony of Jack W. Barratt, a retired Camas Mill paper-maker, stating that Asten and Scapa are the only two manufacturers of dryer felts he recalls, Dkt. #165, Ex. E, plaintiffs have not provided information on when Mr. Barratt worked at the mill, which areas or machines he worked on or around, or whether he worked with Mr. Barabin.

ORDER DENYING DEFENDANTS'
MOTIONS FOR SUMMARY
JUDGMENT - 5

1 machines, as a pulp tester in 1971. See Dkt. #165, Ex. B at 33:17, 43:20, 68:19. Similarly, plaintiffs present sales records from Scapa indicating that Scapa sold asbestos-containing dryer felts to the Camas Mill while Mr. Barabin worked there. See Dkt. #162, Ex. H. These documents also note the specific machines for which each dryer felt was delivered.

The circumstantial evidence linking defendants' products to specific machines on which Mr. Barabin worked is at least as sufficient as the evidence linking Raymark's product to Mr. Lockwood's work area. In Lockwood, the Court held that a juror was entitled to infer that Raymark's product was used on Mr. Lockwood's ship from the fact that Raymark's product was used on a large liner conversion at Puget Sound in 1947 and 1948 and that Mr. Lockwood worked on the conversion of a large liner called the *George Washington* at that time. 109 Wn.2d at 247. Here, the evidence shows that defendants' products were not only delivered to the Camas Mill while Mr. Barabin worked there but were designated for use on specific paper machines on which Mr. Barabin worked.[4] Neither Mr. Lockwood nor Mr. Barabin personally identified a defendant's product as present in their work area. See id. at 245. Although the Lockwood court relied on witness testimony to place Mr. Lockwood in proximity to Raymark's product, see id. at 246-47 ("instead of personally identifying the manufacturers of asbestos products to which he was exposed, a plaintiff may rely on the testimony of witnesses who

---

[4] The fact that the sales records each designate a particular machine is important. Both defendants note that the Camas Mill is 660 acres long and consists of multiple buildings. Defendants argue that "[t]he general presence of an asbestos-containing product in one area or building of the campus cannot as a matter of law establish the presence of that product in another part of the campus." Dkt. #163 at 4. If plaintiffs' evidence only showed that defendants asbestos-containing products were housed somewhere in the Camas Mill without any reference to where those products were placed in relation to Mr. Barabin, plaintiffs would be on shakier ground. But because the sales records indicate the precise machine to which each dryer felt was destined, plaintiffs have enough evidence from which a juror could connect the dots to place a certain dryer felt at a certain machine during a certain time period when Mr. Barabin would have been responsible for working on that machine.

ORDER DENYING DEFENDANTS'
MOTIONS FOR SUMMARY
JUDGMENT - 6

1 identify manufacturers of asbestos products which were then present at his workplace"), the
2 court never indicated that reliable witness testimony is required in order to support a plaintiff's
3 claim.[5] Like the witness testimony in Lockwood, the sales records here provide sufficient
4 evidence from which a reasonable juror can infer that defendants' products were used in
5 plaintiff's work environment.

6 Second, the Court considers the expert testimony regarding the effects of asbestos dust on
7 both those who worked directly with asbestos and bystanders. See Lockwood, 109 Wn.2d at
8 247. Plaintiffs present the declaration of Ken Cohen, an expert in the area of industrial hygiene.
9 See Dkt. #165, Ex. K ¶ 1; Dkt. #162, Ex. N ¶ 1. Relying on Mr. Barabin's testimony and the
10 sales records from Asten and Scapa, see Dkt. #165, Ex. K ¶¶ 4-10; Dkt. #162, Ex. N ¶¶ 4-12,
11 Mr. Cohen states,

> Asbestos fibers are released into the air by the installation, manipulation and removal of asbestos-containing products. After release into the air, they hang in the air and become diffused. Persons working in the area where asbestos is being used can and do inhale asbestos fibers. Released asbestos fibers drift with air currents, and spread throughout a work area over time. Asbestos fibers that eventually reach the ground are re-diffused into the air by air currents (e.g., including, but not limited to: people walking by the area, people sweeping the area, people blowing down areas with compressed air). This diffusion and re-diffusion happens even in very large settings such as paper mills. Asbestos fibers released from the installation, manipulation and removal of an asbestos-containing product in one area of the mill can expose workers throughout th entire paper mill. This is true of a paper mill the size of the Crown-Zellerbach mill in Camas, WA.

Dkt. #165, Ex. K ¶ 12. Defendants contend that Mr. Cohen's declaration is legally insufficient to create a material issue of fact for trial. Dkt. #163 at 6; Dkt. #167 at 6. Defendants argue that Mr. Cohen does not cite any testimony that Mr. Barabin was exposed as a direct user or even as

---

[5] Similarly, in Van Hout v. Celotex Corp., 121 Wn.2d 697 (1993), while the court found that witness testimony placing Celotex's products on the ship on which Van Hout worked was sufficient to support a jury verdict in favor of the plaintiff, id. at 707, it did not hold that witness testimony was necessary to do so.

ORDER DENYING DEFENDANTS'
MOTIONS FOR SUMMARY
JUDGMENT - 7

a bystander to respirable asbestos from either an Asten or a Scapa dryer felt. But just as plaintiffs are allowed to rely on circumstantial evidence to support their claims, see Lockwood v. AC & S, Inc., 44 Wn.App. 330, 354 (1986), plaintiffs' expert may base his opinion on that same circumstantial evidence. Mr. Cohen's statements regarding asbestos fibers drifting "throughout the entire paper mill" are certainly worthy of thorough cross-examination given the mill's size and structure, but his testimony combined with the sales documents locating defendants' products at specific machines and Mr. Barabin's testimony positioning him at those same machines constitute substantial evidence for trial.

Third, plaintiff has presented evidence that the various jobs he performed at the Camas Mill exposed him, both directly and indirectly, to asbestos dust. For instance, in handling scraps of old dryer felts, Mr. Barabin observed dust. Dkt. #165, Ex. B at 77:21. He also saw dust when participating in the installation of new dryer felts. Id. at 78:1-16. Finally, neither Asten nor Scapa has pointed to any evidence in the record that the handling of their dryer felts created no asbestos dust.[6]

Although the evidence in this case closely maps onto the evidence presented in Lockwood, the Lockwood court cautioned that "the sufficiency of the evidence of causation will depend on the unique circumstances of each case," 109 Wn.2d at 249, and articulated several factors trial courts should consider "when determining if there is sufficient evidence for a jury to find that causation has been established," id. at 248. Specifically, Lockwood instructed trial courts to consider evidence of the plaintiff's proximity to the asbestos product, the expanse of the work site where asbestos fibers were released, the extent of time the plaintiff was exposed to

---

[6] Scapa does deny that any emissions of respirable asbestos-containing dust from Scapa products occurred, but it "recognizes that such an argument at this procedural juncture is not appropriate" and therefore presents no evidence of this claim as part of its summary judgment motion. Dkt. #163 at 2 n.1.

ORDER DENYING DEFENDANTS'
MOTIONS FOR SUMMARY
JUDGMENT - 8

the product, the types of asbestos products to which the plaintiff was exposed, and the ways in which such products were handled and used. Id. While not all of these factors weigh in plaintiffs' favor, the evidence provided regarding each factor does present a genuine issue of material fact for trial. As noted above, the sales documents along with Mr. Barabin's testimony present evidence of his proximity to Scapa and Asten dryer felts, and Mr. Barabin's testimony reveals when and how often he was directly and indirectly exposed to dust from dryer felts on the various machines, see, e.g., Dkt. #165, Ex. B at 76. Defendants present convincing evidence regarding the relatively vast expanse of the paper mill, see Dkt. #153, Ex. 1, but Mr. Barabin's testimony indicates that his work required him to work on all the machines throughout the mill and in specific areas for extended periods of time, see, e.g., Dkt. #165, Ex. B at 82. Mr. Cohen's expert testimony discusses asbestos fiber release from dryer felts, Dkt. #165, Ex. K ¶ 11, and Dr. Brodkin's medical evaluation further discusses the "historically high levels of asbestos exposure" from dryer felts in paper mills, Dkt. #157, Ex. G at 23. Finally, Mr. Barabin's testimony indicates the ways in which the dryer felts were changed, cut, and discarded to support his claims that he was directly and indirectly exposed to them during his employment at the Camas Mill.

Plaintiffs' evidence is far from conclusive. Plaintiffs present no direct evidence linking defendants' products with Mr. Barabin's exposure to asbestos, but the circumstantial evidence they provide, when viewed in the light most favorable to plaintiffs, is sufficient to create a reasonable inference that Mr. Barabin was exposed to Scapa's and Asten's asbestos-containing dryer felts.

**2. Substantial Factor Causation**

Asten further contends that plaintiffs have failed to establish medical causation. Dkt.

#156 at 7.[7] Washington law requires plaintiffs to establish that exposure to asbestos from an Asten product was a "substantial factor" in causing Mr. Barabin's illness. Mavroudis v. Pittsburgh-Corning Corp., 86 Wn.App. 22, 28 (1997). The substantial-factor test of causation applies in "multi-supplier asbestos-injury cases . . . wherein the expert witness testifies . . . that all of the plaintiff's exposure probably played a role in causing the injury and that it is not possible to determine which exposures were, in fact, the cause of the condition." Id. at 32. The supreme court of Washington, however, has yet to establish how the substantial factor causation standard is to be applied in asbestos-injury cases. In Mavroudis, the Court of Appeals analyzed Hue v. Farmboy Spray Co., Inc., 127 Wn.2d 67 (1995), a pesticide case in which the supreme court found that "the plaintiff only needed to show that a portion of a defendant's pesticide became part of the total cloud of pesticide that caused the damage." Id. at 30. "[T]he *Hue* court certainly implied that asbestos-injury plaintiffs need not prove or apportion individual causal responsibility but need only show that the defendant's asbestos products were among those in the plaintiff's work environment when the injurious exposure occurred." Id. However, Mavroudis did not reach the issue since it found that the plaintiff had shown that exposure to the defendant's product, "standing alone, would have been sufficient to cause Mr. Mavroudis's injury." Id. at 31. The court based its determination on the fact that the defendant's product was one of only three asbestos-containing products during the time of exposure, that the defendant's product gave off very substantial amounts of asbestos when cut, and that as little as ten percent of the asbestos exposure the plaintiff received would have been sufficient to cause his mesothelioma. Id.

The court has been given no information from either party on how much asbestos dust

---

[7] Scapa, however, intends to refute at trial that its dryer felts could have been a substantial factor in causing mesothelioma, and it insists that plaintiffs' "statements regarding substantial factor are wholly irrelevant to the adjudication of this motion." Dkt. #163 at 9.

ORDER DENYING DEFENDANTS'
MOTIONS FOR SUMMARY
JUDGMENT - 10

was emitted by Asten dryer felts. However, as in <u>Mavroudis</u>, plaintiffs have provided evidence indicating that Asten was not a trivial contributor of asbestos-containing dryer felts at the Camas Mill. First, although Dr. Brodkin reported that Mr. Barabin experienced bystander asbestos exposure as a laborer at a Texas refinery between 1964 and 1968, he stated that Mr. Barabin "experienced his most prominent exposure to asbestos as a career paper machine worker and laborer at the [Camas Mill.]" Dkt. #157, Ex. G at 22. William Finn, chairman and director of Asten, stated in his deposition that Asten's plant in Salem, Oregon supplied dryer felts and fabrics to the nearby Camas Mill, Dkt. #165, Ex. F at 178, and he stated that Scapa, for which the Camas Mill was a major customer, <u>see</u> Dkt. #162, Ex. F at 150, was one of its primary competitors in the Washington area, Dkt. #165, Ex. F at 87. Without making any determination on the substantial factor causation standard applicable in asbestos-injury cases, the Court finds that summary judgment on the issue of substantial factor causation is not appropriate.

### III. CONCLUSION

For all of the foregoing reasons, the Court DENIES defendant Scapa's motion for summary judgment (Dkt. #152) and defendant Asten's motion for summary judgment (Dkt. #156).

DATED this 18th day of August, 2009.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER DENYING DEFENDANTS'
MOTIONS FOR SUMMARY
JUDGMENT - 11