UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| HENRY BARABIN and GERALDINE BARABIN, | ) | No. C07-1454 RSL |
| | ) | |
| Plaintiffs, | ) | MOTION FOR PRE-TRIAL *DAUBERT* HEARING |
| v. | ) | |
| ASTENJOHNSON, INC. and SCAPA DRYER FABRICS, INC., | ) | Fed. R. Evid. 104, 702 |
| | ) | |
| Defendants. | ) | NOTE ON MOTION CALENDAR: OCTOBER 16, 2009 |

## I. RELIEF REQUESTED

Plaintiffs respectfully request that the Court hold a pre-trial hearing to determine the qualifications of plaintiffs' expert Kenneth S. Cohen (CIH # 1537, retired), preliminarily excluded from testifying by the Court's Order on Motions In Limine (Dkt. # 248, *at* 12-14). As the Court noted in that Order, the rulings contained therein are "preliminary and can be revisited at trial based on the facts and evidence as they are actually presented." *Id.* at 2 (citing *Luce v. United States*, 469 U.S. 38, 41-42 (1984).

Plaintiffs intend to call Mr. Cohen as an expert witness at trial. An evidentiary hearing under Rule 104(a) is the proper vehicle to evaluate the admissibility of Plaintiffs' proffered expert testimony. Given the preliminary nature of the Court's exclusion of Mr. Cohen's testimony, the interests of judicial economy are better served by a final ruling on the issue of Mr. Cohen's qualifications to testify as an expert during the pre-trial stage of this case. A final pre-trial ruling on this issue will help ensure the orderly presentation of witnesses and minimize inconvenience to the court and impaneled jurors.

1 -   MOTION FOR PRE-TRIAL *DAUBERT* HEARING
J:\WA\106995\USDC (Federal)\TRIAL\MTN PreTrial HRG.wpd

**BRAYTON ❖ PURCELL, LLP**
111 SW Columbia Street, Suite 250
Portland, Oregon 97201
Tel: (503) 295-4931; Fax: (503) 241-2573

## II. BACKGROUND

A.    Mr. Cohen's Prior Trial Testimony Against Asten and Scapa

Mr. Cohen has testified twice in trials involving both Asten and Scapa. Most recently, Mr. Cohen testified in the case of *Coulter v. AC and S, Inc. et. al.,* King County Superior Court Cause No. 01-2-34675-0SEA.

Judge Sharon Armstrong denied Scapa's motion to exclude Mr. Cohen's testimony (in which Asten had joined), deeming his testimony regarding the plaintiff's exposure to respirable asbestos fibers from Asten and Scapa's dryer felts used at a pulp and paper mill admissible under the more conservative evidentiary standard of *Frye v. United State*s, 293 F.1013, 1014 (D.C. Cir. 1923) followed by the Washington State Courts.[1] Asten did not raise the issue of Ken Cohen's testimony on appeal.[2]

Similarly, in the case of *Emrick v. AC and S, Asten Group, et al.*, Multnomah County (OR) Circuit Court Cause No. 0002-02019, Mr. Cohen's testimony regarding the plaintiff's exposure to respirable asbestos fibers from defendant Asten and Scapa's dryer felts used at various pulp and paper mills in the Pacific Northwest was admitted at trial against those two defendants over their objection.[3] There is nothing to differentiate Mr. Cohen's testimony against Asten and Scapa in the *Emrick* and *Coulter* cases from the testimony Mr. Cohen will offer in this case.

Mr. Cohen has given his opinions at trial regarding asbestos fiber drift, exponential decay and persistence, and re-entrainment in state and federal courts in Washington, Oregon, California, Hawaii, Massachusetts, Texas, Virginia, Louisiana, and Ohio.[4] In only one instance has this

---

[1]Ex. 1 - Order on Motions in Limine, *Coulter v. AC and S, Inc. et. al.,* King County Superior Court Cause No. 01-2-34675-0SEA.

[2]Ex. 2 - *Coulter, et al., v. Asten Group, Inc.*, 135 Wn. App. 613, 146 P.3d 444 (2006).

[3]Ex. 3 - Excerpts of trial testimony, *Emrick v. AC and S, Asten Group, et al.*, Multnomah County (OR) Circuit Court Cause No. 0002-02019.

[4]Ex 4 - Declaration of Kenneth Cohen ("Cohen Decl.), ¶ 28.

2 -   MOTION FOR PRE-TRIAL *DAUBERT* HEARING
J:\WA\106995\USDC (Federal)\TRIAL\MTN PreTrial HRG.wpd

**BRAYTON ❖ PURCELL, LLP**
111 SW Columbia Street, Suite 250
Portland, Oregon 97201
Tel: (503) 295-4931; Fax: (503) 241-2573

1  testimony been excluded,[5] and that preliminary pre-trial exclusion was overturned on appeal.[6]

2        B.      Asten's Motion In Limine to Exclude Kenneth Cohen

3        In this case, defendant AstenJohnson, Inc. ("Asten") presented the court with a stock

4  motion to exclude the testimony of Mr. Cohen,  (Dkt. # 186) which was joined by its co-defendant

5  Scapa Dryer Fabrics, Inc. ("Scapa") (Dkt. # 226).  Asten's motion rests on four grounds,

6  summarized as follows:  (A)  Our asbestos textile product does not release asbestos fibers; (B)

7  Cohen has a phony Ph.D.; (C) Cohen can't testify because he has no experience with dryer felts;

8  (D)  "Cohen's theory" of asbestos exposure is not based on accepted scientific methodology.  (Dkt.

9  #186, *at* 2-5).

10        This motion is almost identical to the motion to exclude Mr. Cohen's testimony denied by

11  Judge Armstrong in the *Coulter* case,[7] and is virtually identical to all the other *limine* motions to

12  exclude Mr. Cohen in every case in which he is designated for trial testimony.[8]  Plaintiffs briefly

13  address each of Asten's stated grounds in Section IV, below.

14                              III.  AUTHORITY

15        Federal Rule of Evidence 702 allows a witness "qualified as an expert by knowledge, skill,

16  experience, training, or education" to testify as an expert if "(1) the testimony is based upon

17  sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3)

18  the witness has applied the principles and methods reliably to the facts of the case."  As the

19  Supreme Court held in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993),

20  Rule 702 establishes a standard of evidentiary reliability which a trial judge, as a gatekeeper, must

21  enforce to ensure that an expert's testimony "both rests on a reliable foundation and is relevant to

22  the task at hand."

23        Although the Supreme Court has afforded trial courts substantial latitude in deciding what

24

25        [5]Ex. 4 - Cohen Decl., ¶ 28.

26        [6]Ex. 5 - Order overturning Cohen exclusion, *Walker, et al. v. Avondale Industries, Inc., et al.*, State of
27  Louisiana Court of Appeals No. 2009-C-0047;

28        [7]Ex. 6 - Defendant Scapa's Motion In Limine to Exclude Testimony of Kenneth S. Cohen, *Coulter v. AC
and S, Inc. et. al.*, King County Superior Court Cause No. 01-2-34675-0SEA.

        [8]Carter Decl., ¶ 12
3 -  MOTION FOR PRE-TRIAL *DAUBERT* HEARING
     J:\WA\106995\USDC (Federal)\TRIAL\MTN PreTrial HRG.wpd

**BRAYTON ❖ PURCELL, LLP**
111 SW Columbia Street, Suite 250
Portland, Oregon 97201
Tel: (503) 295-4931; Fax: (503) 241-2573

1   procedure is necessary in the context of a given case to properly test a potential expert's reliability,

2   *see Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999), conducting a voir dire hearing in

3   *limine* has become an accepted practice in the federal courts when an opposing party raises a

4   material dispute as to the admissibility of expert scientific evidence.  *See Daubert v. Merrell Dow*

5   *Pharmaceuticals, Inc.*, 43 F.3d 1311, 1319, n.10 (9th Cir. 1995), *cert. denied*, 516 U.S. 869,

6   (1995); *see also* G. Michael Fenner, *The Daubert Handbook: The Case, Its Essential Dilemma,*

7   *and Its Progeny*, 29 Creighton L. Rev. 939, 957 (advocating early pretrial Fed. R. Evid. 104(a)

8   hearings as a preferred vehicle for exercising admissibility evaluations of expert testimony).

9       As the First Circuit has recognized, "The ultimate purpose of the *Daubert* inquiry is to

10  determine whether the testimony of the expert would be helpful to the [trier of fact] in resolving a

11  fact in issue." *Cipollone v. Yale Indus. Prods.*, 202 F.3d 376, 380 (1st Cir. 2000).  An evidentiary

12  hearing under Rule 104(a) is the proper vehicle to evaluate the admissibility of Plaintiffs' proffered

13  expert testimony, so that the court can assess the credibility of a witness first-hand, and does not

14  have to make evidentiary decisions in an informational vacuum.

15      The factors set forth in *Daubert* for the consideration of expert testimony were not intended

16  to be exhaustive nor to apply in every case.  *Kumho Tire*, 526 U.S. 137, 141-142.  However, a trial

17  court may consider the specific factors identified in *Daubert* where they are reasonable measures of

18  the reliability of proffered expert testimony.  *Skidmore v. Precision Printing and Packaging, Inc.*,

19  188 F.3d 606, 618 (5th Cir. 1999) ("Whether *Daubert's* suggested indicia of reliability apply to any

20  given testimony depends on the nature of the issue at hand, the witness's particular expertise, and

21  the subject of the testimony.  It is a fact-specific inquiry." (internal citations omitted)).

22      Likewise, in considering the admissibility of testimony based on some "other specialized

23  knowledge," Rule 702 generally is construed liberally. *See, e.g.*, *United States v. Ramsey*, 334 U.S.

24  App. D.C. 193, 165 F.3d 980, 984 (D.C. Cir. 1999).  As the court stated in *United States v.*

25  *Hankey*, 203 F.3d 1160, 1168, (9th Cir. 2000), admissibility of expert opinion testimony generally

26  turns on the following preliminary question of law determinations by the trial judge under Federal

27  Rule of Evidence 104(a):  (1) whether the opinion is based on scientific, technical, or other

28  specialized knowledge;  (2)  whether the expert's opinion would assist the trier of fact in

understanding the evidence or determining a fact in issue; (3) whether the expert has appropriate

4 -   MOTION FOR PRE-TRIAL *DAUBERT* HEARING
        J:\WA\106995\USDC (Federal)\TRIAL\MTN PreTrial HRG.wpd

**BRAYTON ❖ PURCELL, LLP**
111 SW Columbia Street, Suite 250
Portland, Oregon 97201
Tel: (503) 295-4931; Fax: (503) 241-2573

1   qualifications - i.e., some special knowledge, skill, experience, training or education on that subject

2   matter. *Fed. R. Evid.* 702; *Jones v. Lincoln Elec. Co.,* 188 F.3d 709, (7th Cir. 1999); *see also*

3   *Wilson v. Woods*, 163 F.3d 935 (5th Cir. 1999) (expert in fire reconstruction unqualified as expert

4   in auto accident reconstruction);  (4) whether the testimony is relevant and reliable. *Unisys Sav.*

5   *Plan Litig.*, 173 F.3d 145, 155 (3rd Cir. 1999); *Kumho Tire*, 526 U.S. 137, 148-149; (5) whether

6   the methodology or technique the expert uses "fits" the conclusions (the expert's credibility is for

7   the jury),  *See General Electric Co. v. Joiner*, 522 U.S. 136, 152 (1997); and (6) whether its

8   probative value is substantially outweighed by the risk of unfair prejudice, confusion of issues, or

9   undue consumption of time. *Fed. R. Evid.* 403; *United States v. Chischilly*, 30 F.3d 1144, 1156

10  (9th Cir. 1994).  Plaintiffs are confident that Mr. Cohen's testimony will easily pass scrutiny under

11  these criteria as it has so many times before, especially when the court takes the opportunity to

12  assess Mr. Cohen's testimony first-hand.

13                                   IV.  ARGUMENT

14          A.      The Defendants' Asbestos Textiles

15          To the extent the Court's preliminary ruling seems to implicitly accept the defendants'

16  argument that dryer felt textiles are somehow different from other asbestos textiles (citing Mr.

17  Cohen's "lack of expertise regarding dryer felts . . ." Dkt. #248 *at* 14), there is simply no basis to

18  support this ruling.  Asten has not presented this Court with any evidence to support the assertion

19  contained within its Motion to Exclude that its paper machine clothing is different from other

20  asbestos textile products, or does not release respirable asbestos fibers like other asbestos textile

21  products.  Further, such evidence has not been presented in any of the other motions the defendants

22  have brought before this court which contain the same assertion. (*See, e.g.,* Dkt # 152 *at* 8).

23          Every asbestos defendant in every jurisdiction argues that because the asbestos fibers

24  contained in its product were _____ (fill blank with:  "encapsulated," "coated," "treated," "oily,"

25  "wet," "amended," "special" "non-traditional"), they could not possibly release respirable fibers

26  when the product was used as intended.  Belying this assertion are the countless findings of

27  liability by juries around the country against makers of products such as asbestos-containing vinyl

28  floor tiles, asphalt roofing underlayment, asphalt roof shingles, and a wide and varied array of

    asbestos textiles used in a multitude of applications, including as paper machine clothing like that

5 -   MOTION FOR PRE-TRIAL *DAUBERT* HEARING
      J:\WA\106995\USDC (Federal)\TRIAL\MTN PreTrial HRG.wpd

**BRAYTON ❖ PURCELL, LLP**
111 SW Columbia Street, Suite 250
Portland, Oregon 97201
Tel: (503) 295-4931; Fax: (503) 241-2573

1 | at issue here.

2 |     **B.**    <u>Mr. Cohen's Qualifications</u>

3 |     The issue of Mr. Cohen's post-graduate degree plays no role in plaintiffs' case in chief.

4 | Plaintiffs' counsel does not seek to bolster Mr. Cohen's testimony by referring to him as "Doctor

5 | Cohen," and do not address him in this fashion.[9]   Asten's assertion that "Cohen lacks the

6 | necessary educational requirements to present expert testimony to the trier of fact" ignores the

7 | plain language of Rule 702 and the decisions analyzing this rule.  (Dkt. # 186 *at* 7).

8 |     Mr. Cohen's testimony is not rooted in his any degree, but rather his long years of

9 | experience, knowledge, and training as a Certified Industrial Hygienist; his work assessing asbestos

10 | exposure risk for the California Department of Industrial Relations, Division of Occupational

11 | Safety and Health (more commonly referred to as "Cal/OSHA"), and in particular his work as an

12 | Inspector with the High Hazard Unit; as a certified AHERA (Asbestos Hazard Emergency

13 | Response Act) Asbestos Inspector and Management Planner; and as a private consultant for

14 | corporate clients.[10]

15 |     Mr. Cohen's certification as an industrial hygienist (now retired), is the same certification

16 | held by the defendants' industrial hygienist, conferred by the American Board of Industrial

17 | Hygiene ("ABIH").[11]  As an industrial hygienist, Mr. Cohen researched products which contain

18 | asbestos, and the makers of these products.[12] Mr. Cohen is familiar with asbestos and asbestos-

19 | containing products used in industrial settings and on board ships.[13]  Such products include

20 | asbestos textiles, gaskets, valve packing, pump packing, thermal insulation, refractory material, fire

21 | proofing, and cement piping, among many others.[14]

22 |     Mr. Cohen has been employed for over 20 years to advise and evaluate working conditions

---

[9]Ex. 3 - Excerpts of trial testimony, *Emrick v. AC and S, Asten Group, et al.*, Multnomah County (OR) Circuit Court Cause No. 0002-02019

[10]Ex. 4 - Cohen Decl., ¶ 3-7

[11]*Id.* at ¶ 3

[12]*Id.* at ¶ 11.

[13]*Id.*

[14]*Id.*

6 -   MOTION FOR PRE-TRIAL *DAUBERT* HEARING
      J:\WA\106995\USDC (Federal)\TRIAL\MTN PreTrial HRG.wpd

**BRAYTON ❖ PURCELL, LLP**
111 SW Columbia Street, Suite 250
Portland, Oregon 97201
Tel: (503) 295-4931; Fax: (503) 241-2573

at facilities owned and operated by corporate clients as a private consultant.[15] Mr. Cohen has extensive experience consulting on workplace asbestos exposure levels and abatement procedures, including on ships, in shipyards, railroad yards, power plants, and repair facilities.[16]

Mr. Cohen taught the fundamentals of industrial hygiene either as a guest lecturer or faculty appointee at various institutions, including: the University of California, San Diego; San Diego State University Graduate School of Public Health; Texas A&M; Old Dominion; and Syracuse.[17] At the University of California, San Diego, Mr. Cohen was on the Engineering Extension faculty as a lecturer for approximately four years.[18]

Mr. Cohen was also a lecturer at the University of California, San Diego Medical School for one year teaching physicians and nurses Industrial Toxicology.[19] At San Diego State University, Mr. Cohen taught fundamentals of Environmental Engineering, Industrial Hygiene, Toxicology and other similar courses.[20] Mr. Cohen has taught courses for industrial hygienists at numerous national conferences, and presented workshops for occupational physicians who were board certified in Industrial Pulmonary Medicine.[21]

When workplace toxic exposures occur, it is rarely possible to do scientific measurements contemporaneously. Industrial hygienists are often called upon to evaluate toxic exposures (including asbestos exposures) retrospectively; therefore, industrial hygienists are often required to use their scientific knowledge and training to estimate the nature and extent of toxic exposure subsequent to the exposure event. Mr. Cohen has testified regarding retrospective asbestos exposure assessments as an expert witness on a multitude of occasions.[22]

---

[15]Ex. 4 - Cohen Decl., ¶ 6.

[16]*Id.*

[17]*Id.* at ¶ 8.

[18]*Id.*

[19]*Id.* at ¶ 9.

[20]*Id.*

[21]*Id.* at ¶ 10.

[22]*Id.* at ¶ 13.

7 - MOTION FOR PRE-TRIAL *DAUBERT* HEARING
J:\WA\106995\USDC (Federal)\TRIAL\MTN PreTrial HRG.wpd

**BRAYTON ❖ PURCELL, LLP**
111 SW Columbia Street, Suite 250
Portland, Oregon 97201
Tel: (503) 295-4931; Fax: (503) 241-2573

1

C.   Mr. Cohen's Experience with Asbestos Textiles

2        Specific to this case, Mr. Cohen has visited operating paper mills, including the Camas

3   Mill.[23] Mr. Cohen has conducted numerous tests on a wide variety of asbestos textiles, including

4   those made from treated yarns.[24]   Mr. Cohen is familiar with Dr. James Millette's study of

5   asbestos-containing dryer felts published in the peer-reviewed literature, which discusses the

6   concentrations of respirable chrysotile asbestos fiber released into the air after dryer felt samples

7   were blown off with compressed air.[25]

8        To the extent the Court's ruling regarding Mr. Cohen's testimony was concerned with "his

9   lack of expertise with regard to dryer felts . . ." Mr. Cohen is on nearly equal footing to Paul

10  Carlson, the industrial hygienist designated by the defendants.  Mr. Cohen has conducted no

11  independent testing of dryer felt textile.  Likewise Mr. Carlson has conducted no testing of dryer

12  felts on his own; rather, he has been only peripherally involved in a single test of dryer felts

13  conducted by others,[26] and commissioned by Asten's law firm for purposes of litigation.[27]

14       A Certified Industrial Hygienist (such as Mr. Cohen before he retired his certification) is

15  qualified to assess toxic exposure potential in an industrial environment by virtue of his

16  certification, training, knowledge, and experience.  The ABIH does not offer or recognize any sub-

17  specialty or certification specific to pulp and paper mills.[28]  Although Mr. Cohen has not spent as

18  much time in paper mills as Mr. Carlson, Mr. Cohen is personally familiar with paper mills,

19  including the Camas Mill, and is personally familiar with innumerable other types of industrial

20  facilities and machine spaces that are closely analogous to the paper mill environment.

21       Once again, the defendants have presented no evidence that the pulp and paper mill

22

23       [23]Ex. 4 - Cohen Decl., ¶ 24;  *See also* Dkt. # 187 at 23, lns. 1-8.

24       [24]*Id.* at ¶ 25.

25       [25]*Id.* at ¶ 26.

26       [26]Ex. 7  - Excerpts of deposition transcripts of Paul Carlson (CIH), taken in *Coulter v. AC and S, Inc. et. al.*,
27   King County Superior Court Cause No. 01-2-34675-0SEA.

28       [27]Ex. 8 - Excerpts of "Report of Investigation - Testing Asbestos-Containing Dryer Felts for Asbestos Fiber
    Release at the Western Michigan University Pilot Plant"

         [28]Ex. 4 - Cohen Decl., ¶ 27.
8 -   MOTION FOR PRE-TRIAL *DAUBERT* HEARING
      J:\WA\106995\USDC (Federal)\TRIAL\MTN PreTrial HRG.wpd

**BRAYTON ❖ PURCELL, LLP**
111 SW Columbia Street, Suite 250
Portland, Oregon 97201
Tel: (503) 295-4931; Fax: (503) 241-2573

1  environment is so different from any other industrial environment that it requires education or

2  training specific to pulp and paper mills in order to opine on toxic exposures within them.  The

3  defendants are free to argue that the pulp and paper mill environment is somehow unique, and

4  draw distinctions between that industrial environment and other humid and ventilated

5  environments Mr. Cohen has done extensive work in.  However, such distinctions go to the weight

6  of Mr. Cohen's testimony, not its admissibility.

7        D.      The Science of Fiber Drift, Re-entrainment, Persistence and Exponential Decay

8          Contrary to Asten's assertions, the "theories" of asbestos fiber drift, re-entrainment,

9  persistence and exponential decay do not belong to Mr. Cohen, and are not "theories."  These terms

10  describe some of the most well documented physical characteristics of asbestos fibers.      "Re-

11  entrainment" is a term used to describe the movement of asbestos fiber from a settled state on

12  surfaces to an airborne state.[29]  Far from being novel, the principals of re-entrainment underlie the

13  Environmental Protection Agency's ("EPA") policies for protecting the nation's school children

14  from asbestos exposure.[30]  Attached as Exhibit 2 to Mr. Cohen's declaration is a brief bibliography

15  of some of the literature that describes these concepts.  All these sources confirm the large body of

16  research that, once released into the air, asbestos fibers continue to contaminate the area of initial

17  release and will migrate away from the source, and thereby contaminating remote areas.

18          Fiber drift, re-entrainment, and fiber persistence are well-known and accepted properties of

19  mineral fibers, especially asbestos fibers.  These concepts are widely understood and used by

20  industrial hygienists, occupational health professionals, regulators, scientists, and asbestos

21  abatement contractors.

22          "Fiber drift" describes the movement of asbestos fiber from an original source of fiber

23  release.[31]  This feature of asbestos fibers has long been acknowledged by Washington courts.  *See*

24  *Lockwood v. AC and S, Inc.*, 109 Wn. 2d 235, 243-244, 744 P.2d 605 (1987) (noting that asbestos

25  dust released into the air can remain hanging for long periods of time, become diffused, and drift

26

27        [29]Ex. 4 - Cohen Decl., ¶ 15.

28        [30]Ex. 9 - Excerpts from the EPA "Orange Book"

        [31]Ex. 4 - Cohen Decl., ¶ 15.

9 -   MOTION FOR PRE-TRIAL *DAUBERT* HEARING
     J:\WA\106995\USDC (Federal)\TRIAL\MTN PreTrial HRG.wpd

**BRAYTON ❖ PURCELL, LLP**
111 SW Columbia Street, Suite 250
Portland, Oregon 97201
Tel: (503) 295-4931; Fax: (503) 241-2573

1  with air currents throughout a work site); *Berry v. Crown Cork & Seal Company*, 103 Wn. App

2  312, 322, 14 P.3d 789 ( Div. 1 2000) (noting that asbestos fibers have the ability to disperse over

3  an entire work site).

4  "Persistence" is a known characteristic of asbestos and describes the ability of asbestos to

5  contaminate an area for long periods of time due to the virtual indestructibility of asbestos fibers.[32]

6  Indeed, resistance to high heat, physical force, and chemical degradation are the reasons asbestos

7  fiber was used in so many products.[33]

8  Asbestos fiber, once released, tends to contaminate an area for considerable time unless

9  proper abatement is performed.[34]  This is especially so given successive releases of fiber from a

10  particular product.  Initial installation, product disturbance, deterioration, and finally removal all

11  add to the total load of fiber released into an area, absent strict abatement procedures.[35]  The

12  persistence of asbestos in an area and the gradual reduction of concentration over time is known as

13  the "exponential decay" of asbestos.[36]  Various studies have been done by Mr. Cohen and others

14  tracking the change in concentrations of asbestos as time passes after an initial release.[37]

15  The well-established scientific principles of asbestos re-entrainment (or "re-suspension"),

16  and the aerodynamic properties of asbestos fiber spread are well-documented in medical and

17  scientific literature.  Once released, given still air, asbestos fibers will eventually settle onto

18  surfaces.  However, minimal energy inputs can re-suspend asbestos fiber into the air and into the

19  breathing zone of anyone entering the contaminated space.[38]

20  The property of asbestos fiber to cycle between settling on surfaces and becoming re-

21  suspended, or "re-entrained," is generally accepted in the scientific community and among

---

23  [32]Ex. 4 - Cohen Decl., ¶ 15.

24  [33]*Id.*

25  [34]*Id.* ¶ 16.

26  [35]*Id.*

27  [36]*Id.*

28  [37]*Id.* at ¶ 18.

[38]*Id.* at ¶ 21-23.

10 - MOTION FOR PRE-TRIAL *DAUBERT* HEARING
J:\WA\106995\USDC (Federal)\TRIAL\MTN PreTrial HRG.wpd

**BRAYTON ❖ PURCELL, LLP**
111 SW Columbia Street, Suite 250
Portland, Oregon 97201
Tel: (503) 295-4931; Fax: (503) 241-2573

1  industrial hygienists.  Various writings, textbooks, and publications on industrial hygiene and

2  asbestos dust exposure, dating as early as the 1930s, have discussed the properties of asbestos dust

3  and the concept of re-entrainment.

4    Asbestos fiber's ability to remain airborne was described as early as 1936 by Phillip

5  Drinker and Theodore Hatch from the Harvard School of Public Health, in their seminal book,

6  *Industrial Dust, Hygienic Significance, Measurement and Control.*  Their work described the

7  longitudinal cleaving of asbestos fiber causing an attraction to molecules of air which surround the

8  fiber.  This process is unique to asbestos and contributes to the buoyancy of the fiber and the

9  tendency asbestos fiber to remain suspended in the air once it is released.  Every time asbestos fiber

10  is re-entrained, it is subject to further fiber drift and migration throughout an industrial site,

11  building,  or ship.

12    Mr. Cohen has studied how asbestos is released into the air from asbestos-containing

13  products, and how asbestos behaves in air once released.  Mr. Cohen is well familiar with the

14  physical and aerodynamic properties of asbestos that facilitates re-entrainment and resuspension of

15  asbestos in an air space once it is contaminated.  Mr. Cohen has personally performed studies

16  evidencing the ability of asbestos to remain suspended for long periods of time.

17    Mr. Cohen is not aware of any credible study which refutes these properties of asbestos,

18  and the defendants have cited none.[39]  The very tendency of asbestos to remain airborne for long

19  periods of time is the primary reason modern abatement procedures are required to prevent initial

20  release and to capture fiber that does become airborne.[40]

21    In *Marcinko v. A-Best Products Co.*, Ohio Court of Common Pleas, Case No. CV-362681

22  (2001) (an asbestos wrongful death action), Mr. Cohen's trial testimony regarding asbestos

23  exposure via re-entrainment withstood a *Daubert*  challenge, where the decedent's asbestos

24  exposure came <u>only</u> from re-entrained fibers.[41]

25    After the conclusion of the pre-testimonial *Daubert* hearing, the Court determined that re-

26

27  [39]Ex. 4 - Cohen Decl., ¶ 19.

28  [40]*Id.* ¶ 20.

[41]Ex. 10 -Memorandum Opinion in *Marcinko v. A-Best Products Co., et al.*, Ohio Court of Common Pleas Case No. CV 362681, at 1.

11 - MOTION FOR PRE-TRIAL *DAUBERT* HEARING
J:\WA\106995\USDC (Federal)\TRIAL\MTN PreTrial HRG.wpd

**BRAYTON ❖ PURCELL, LLP**
111 SW Columbia Street, Suite 250
Portland, Oregon 97201
Tel: (503) 295-4931; Fax: (503) 241-2573

1 entrainment was a scientifically valid principle and concluded that such evidence was admissible,

2 correctly stating that it "is not the province of the judge to immediately foreclose the validity of

3 testimony" such as Mr. Cohen's and, "The Trier of Fact will choose between the competing

4 opinions of the experts."[42]  Although not binding on this Court, this opinion does serve as useful

5 guidance on the issue of admissibility of the competing opinions of experts, the true worth of

6 which are to be determined by the trier of fact.  A copy of the transcripts of the *Daubert* hearing

7 conducted in that case regarding Mr. Cohen's opinions is attached.[43]

## V. CONCLUSION

9 　　　No trial court in America has ever precluded Mr. Cohen's testimony on re-entrainment,

10 fiber drift, and fiber persistence because, contrary to Asten's unsupported assertions, this testimony

11 is well supported by empirical evidence and peer reviewed research.  If this Court has any doubts

12 that plaintiffs can establish Mr. Cohen's qualifications yet one more time in a Court of law,

13 plaintiffs respectfully request that the Court hold a pre-trial hearing on Mr. Cohen's qualifications.

16 DATED this 30th day of September, 2009.

17 　　　　　　　　　　　　　　　BRAYTON ❖ PURCELL, LLP

19 　　　　　　　　　　　　　　　/s/ Cameron O. Carter

20 　　　　　　　　　　　　　　　Cameron O. Carter, WSBA #33326
　　　　　　　　　　　　　　　Attorneys for Plaintiffs Henry Barabin and Geraldine
　　　　　　　　　　　　　　　Barabin

---

27 　　　[42]Ex. 10 -Memorandum Opinion in *Marcinko v. A-Best Products Co., et al.*, Ohio Court of Common Pleas

28 Case No. CV 362681, at 23-24.

　　　[43]Ex. 11 - Transcripts of the pre-trial *Daubert* hearing regarding Ken Cohen's trial testimony, in *Marcinko v. A-Best Products Co., et al.*, Ohio Court of Common Pleas Case No. CV 362681.

12 - MOTION FOR PRE-TRIAL *DAUBERT* HEARING

**BRAYTON ❖ PURCELL, LLP**
111 SW Columbia Street, Suite 250
Portland, Oregon 97201
Tel: (503) 295-4931; Fax: (503) 241-2573