UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| HENRY BARABIN and GERALDINE BARABIN,<br><br>Plaintiffs,<br><br>v.<br><br>ASTENJOHNSON, INC. and SCAPA DRYER FABRICS, INC.,<br><br>Defendants. | No. C07-1454 RSL<br><br>PLAINTIFFS' TRIAL BRIEF |

## I.  INTRODUCTION

Henry Barabin was employed at the (former) Crown-Zellerbach pulp and paper mill in Camas, WA, between 1968 and 2001, when he retired.  Mr. Barabin was diagnosed with malignant pleural mesothelioma on or about November 1, 2006.

After Mr. Barabin was diagnosed with mesothelioma, he and his wife sought to hold accountable the manufacturers of asbestos-containing products that Mr. Barabin was exposed to during his occupational career as a laborer and paper machine operator at the Camas mill.  These products include the asbestos-containing paper machine clothing (dryer felts and fabrics) made by AstenJohnson, Inc. and Scapa Dryer Fabrics, Inc.

## II.  THE NATURE OF ASBESTOS-RELATED DISEASE

From 1890 to 1970 some 25 million tons of asbestos were used in the United States. Selikoff, *Asbestos Associated Disease* (1980).  The time period between exposure to respirable

1 -   PLAINTIFFS' TRIAL BRIEF
J:\WA\106995\USDC (Federal)\TRIAL\PLT TRIAL BRIEF.wpd

**BRAYTON ❖ PURCELL, LLP**
Columbia Square Building
111 SW Columbia Street, Suite 250
Portland, Oregon 97201
Phone: (503) 295-4931; Fax: (503) 241-2573

asbestos fibers and the onset of an asbestos-related disease can range from between 12 to 60 years. In spite of the long latency period, medical science recognized the causal relationship between asbestos exposure and lung disease as early as 1907. In the state of Washington, the Workers' Compensation Board first recognized and compensated asbestos victims, starting in 1939. *Rem. Rev. Statute* 7679 (21).

### III. HENRY BARABIN AND HIS DISEASE

Henry Barabin is now 69 years old, and currently resides with his wife Geraldine ("Gerry") in Sun City, Arizona, where they moved following Mr. Barabin's retirement. Henry and Gerry have been married for 36 years.

Mr. Barabin was diagnosed with malignant pleural epithelial mesothelioma in November of 2006 by his treating physician during a follow-up to an annual physical exam. Malignant mesothelioma is a rare, incurable, and invariably fatal cancer of the lining chest wall cavity. Exposure to respirable asbestos fibers is the undisputed cause of mesothelioma.[1]

Victims of mesothelioma "often experience marked weight loss, cachexia, and hypoxia in the later stages of the disease. The pain associated with mesothelioma may be severe and unrelenting requiring significant amounts of analgesics, including narcotics."[2] Life expectancy for those with pleural mesothelioma is typically short - ranging from nine to 18 months from diagnosis.[3] Recent advances in chemotherapeutic treatment have extended life expectancies, but only by a few months.[4]

Mr. Barabin has so far been fortunate enough to survive his disease longer than most, and will live to tell his story in Court. Mr. Barabin's longevity is due, in part, to the chemotherapy treatments he has received (and is currently undergoing). However, the course of Henry Barabin's cancer will eventually follow the pattern typical of malignant mesothelioma - the

---

[1] Gary K. Friedman, *Asbestos: Risk Assessment, Epidemiology, and Health Effects* § 7.21 (Ronald F. Dodson, Ph.D & Samuel P. Hammar, M.D. eds., Taylor & Francis 2006).

[2] *Id*. at § 7.22.1.

[3] *Id*.

[4] *Id*. at § 7.27.

2 -   PLAINTIFFS' TRIAL BRIEF
J:\WA\106995\USDC (Federal)\TRIAL\PLT TRIAL BRIEF.wpd

**BRAYTON ❖ PURCELL, LLP**
Columbia Square Building
111 SW Columbia Street, Suite 250
Portland, Oregon 97201
Phone: (503) 295-4931; Fax: (503) 241-2573

tumorous growth will invade the pleural space (the space between the two membranes that form the lining of the chest wall cavity, designed to move smoothly against each other when the lungs expand for normal breathing) and eventually encase his lung.  Simply put, Mr. Henry Barabin will slowly suffocate as his lung can no longer operate under the strain of the chest wall tumor.

Mr. Barabin will be survived by his wife and their five adult children, three of whom are Gerry's from a previous marriage that he adopted after his marriage to Gerry in 1973.  Although Mr. Barabin presents with a stoic facade, underneath that facade he is angry, scared, and frustrated that his life will be cut short.  Mrs. Barabin's life is also marred by similar emotions.

## IV.  LEGAL CLAIMS

The plaintiffs will pursue the following claims at trial:  (1) Negligence; and (2) Products Liability, pursuant to Restatement (Second) of Torts § 402A (1965), as adopted by *Ulmer v. Ford Motor Co.,* 75 Wn. 2d 522, 452 P.2d 729 (1969).  Related to these claims, the Barabins are seeking both economic and non-economic damages, including a claim for Mrs. Barabin's loss of consortium.

### A.     Product Liability

The State of Washington adopted the Restatement (Second) of Torts §402A (1965) which provided in part:  "One who sells any product in a defective condition unreasonably dangerous to the user or consumer . . . is subject to liability for physical harm thereby caused to the ultimate user . . ."  *Ulmer v. Ford Motor Co.*, 75 Wn.2d 522, 452 P.2d 729 (1969).

The case of *Seattle-First National Bank v. Tabert*, 86 Wn.2d 145, 148, 542 P.2d 774 (1975) extended the liability of manufacturers to sellers and distributors, whether wholesalers or retailers.

The *Tabert* court discussed the reason why product liability was being imposed upon companies distributing products, and defined and discussed what product liability means in this state.

> "The doctrine of strict liability does not impose legal responsibility simply because a product causes harm.  Such a result would embody absolute liability, which is not the import of strict liability . . . The liability language of the section (402A) creates liability for a product in a <u>defective condition</u> which is <u>unreasonably dangerous</u> . . . Case law has adopted, modified or altered the

3 -   PLAINTIFFS' TRIAL BRIEF
      J:\WA\106995\USDC (Federal)\TRIAL\PLT TRIAL BRIEF.wpd

**BRAYTON ❖ PURCELL, LLP**
Columbia Square Building
111 SW Columbia Street, Suite 250
Portland, Oregon 97201
Phone: (503) 295-4931; Fax: (503) 241-2573

> restatement definitions on several issues. Must a product be both defective and unreasonably dangerous? It has been held that the terms are synonymous, i.e. that defective means unreasonably dangerous and has no independent significance . . . If a product is unreasonably dangerous, it is necessarily defective. The plaintiff may, but should not be required to prove defectiveness as a separate matter . . . Thus, we hold that liability is imposed under Section 402A if a product is not reasonably safe. That means that it must be unsafe to an extent beyond that which would be reasonably contemplated by the ordinary consumer . . ."

*Tabert* at 150, 154.

The case of *Little v. P.P.G. Industries*, 92 Wn.23 118, 594 P.2d 911 (1979), added that if a dangerous product contains inadequate warnings, it is deemed "unreasonably dangerous" and the manufacturer or distributor is liable for those injuries proximately caused. The court in <u>Little</u> related that the care that the manufacturer may have taken or the knowledge of danger of the product is not at issue in a product liability cause of action. It is the adequacy of the warning which is given or the necessity of such a warning which must command the jury's attention, not the defendant's conduct. *Little* at 121.

In *Kisor v. Johns Manville Corp.*, 783 F.2d 1337 (9th Cir. 1986) the Ninth Circuit Court of Appeals applied the philosophy of *Little* in an asbestos injury case. The court explained that the focus is on the warning itself and the reasonable expectations of the consumer, not upon the manufacturer's conduct.

The court in *Kisor* also held that it would not allow a defendant to defend a strict product liability action by introducing evidence of industry and/or manufacturer's customs and practices. That type of evidence, sometimes called "state of the art," is only allowable under a negligence claim. *Kisor* at 1341. *See also Lockwood v. AC&S, Inc.*, 109 Wn.2d 235, 744 P.2d 605 (1987).

In *Lenhardt v. Ford Motor Co.*, 102 Wn.2d 208, 683 P.2d 1097 (1984), the Supreme Court held that in a pre-Washington Product Liability Act product liability case, evidence of industry customs and standards is irrelevant, and so is inadmissible. The court there held that the focus in a product liability case is on the product, and not on the actions of the manufacturers, and if the product is not reasonably safe, a defendant is liable, no matter how reasonable his conduct. *Id*. at 214.

4 -  PLAINTIFFS' TRIAL BRIEF
J:\WA\106995\USDC (Federal)\TRIAL\PLT TRIAL BRIEF.wpd

**BRAYTON ❖ PURCELL, LLP**
Columbia Square Building
111 SW Columbia Street, Suite 250
Portland, Oregon 97201
Phone: (503) 295-4931; Fax: (503) 241-2573

B. <u>Negligence</u>

The essence of plaintiff's negligence claims is that the defendants were negligent in failing to warn foreseeable product users of the dangers of their asbestos-containing products. The negligence cause of action requires a showing of four elements: existence of a duty; breach of that duty; causation; and resulting damages.

When the conduct of an actor involves a foreseeable risk of harm to the person injured he/she owes a duty to that person. *See generally Berg v. General Motors Corp.*, 87 Wn. 2d 584, 591-94, 555 P.2d 555 P.2d 818 (1977); *King v. City of Seattle*, 84 Wn.2d 239, 248, 525 P.2d 228 (1974). Moreover a defendant's liability extends to the foreseeable results from unforeseeable causes. *Id*. at 248. Foreseeability is normally a jury question and can only be decided as a matter of law when reasonable minds cannot differ on the issue. *Rikstad v Holmberg*, 76 Wn.2d 265, 270, 456 P.2d 355 (1969).

As an element of a negligence claim under products liability, as in any negligence case, the plaintiff must demonstrate a duty owed by the defendant. *Hansen v. Friend*, 118 Wn.2d 479, 485, 824 P.2d 483 (1992). Once a duty is found, the jury determines the scope of that duty. *Bernethy v. Walt Failor's Inc.*, 97 Wn.2d 929, 933, 653 P.2d 280 (1982).

"A manufacturer's duty of ordinary care is a duty to warn of hazards involved in the use of a product which are or should be known to the manufacturer." *Reichelt v. Johns-Manville Corp.*, 107 Wn.2d 761, 772, 733 P.2d 530 (1987).

The negligence case turns on evidence of when and what did defendants know (or should have known) regarding the dangers of their products. There will be evidence introduced at the trial regarding the defendants' knowledge and the state of knowledge that was available to them. Evidence regarding knowledge is relevant if it has, "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Fed. R. Evid*. 401. A negligent failure to warn case also involves the traditional concepts of reasonableness and foreseeability. *Davis v. Globe Mach. Mfg. Co.*, 102 Wn.2d 68, 684 P.2d 692 (1984).

The defendants had a duty to test and analyze the products they sold. The court in *Koker,*

5 - PLAINTIFFS' TRIAL BRIEF
J:\WA\106995\USDC (Federal)\TRIAL\PLT TRIAL BRIEF.wpd

**BRAYTON ❖ PURCELL, LLP**
Columbia Square Building
111 SW Columbia Street, Suite 250
Portland, Oregon 97201
Phone: (503) 295-4931; Fax: (503) 241-2573

at pp 476, 477, 478 discussed and approved an instruction which encompasses the law regarding this duty.

> "The appellants contend the trial court erred in instructing the jury that the defendants had a duty to test their products and keep abreast of scientific knowledge surrounding those products. Instruction 22 given by the trial court stated:
>
>> 'This instruction applies to the plaintiffs' negligence claim: A manufacturer of products is under a duty to use ordinary care to test, analyze and inspect the products it sells, and is charged with knowing what such tests should have revealed.
>>
>> The manufacturer has a duty to use ordinary care to keep abreast of scientific knowledge, discoveries, advances and research in the field, and is presumed to know what is imparted thereby.
>>
>> When a product manufacturer becomes aware of or should have become aware of dangerous aspects of its product, it has a continuing duty to warn of such dangerous aspects even though the dangerous aspects are discovered after the product has left its hands. The duty to warn potential users exists even though such dangerous aspect was not known or foreseeable when the product was initially marketed.
>>
>> The duty to warn attaches, not when scientific certainty of harm is established, but whenever a reasonable person using the product would want to be informed of the risk of harm in order to decide whether to expose himself to it.'
>
> The appellants argue this instruction is an incorrect statement of the law as to their liability under both the Act and common law negligence. Further they contend the instruction sets forth factual conclusions in the guise of the legal standard to be applied by the jury, and therefore constitutes a comment on the evidence and invades the province of the jury. We disagree."

*Koker v. Armstrong Cork, Inc.,* 60 Wn. App. 466, 476-477, 804 P.2d 659.

Additionally, the *Koker* court cited with approval cases from federal and other state jurisdictions to support the fact that a duty to inspect and test a product exists, including *Dartez v. Fibreboard Corp.*, 765 F.2d 456, 461 (5th Cir. 1985), in explaining the manufacturer's obligation to test its products.

> "'*Borel* [*v. Fibreboard Paper Products Corp*, 493 F.2d 1076 (5th Cir. 1973) *cert. denied*, 419 U.S. 869 (1974)] holds all manufacturers to the knowledge and skill of an expert. They are obliged to keep abreast of any scientific discoveries and are presumed to know the results of all such advances. Moreover, they each bear the duty to fully test their products to uncover all scientifically discoverable dangers before the products are sold. *Id*. at 1089-90. The actual knowledge of an individual

6 -   PLAINTIFFS' TRIAL BRIEF
J:\WA\106995\USDC (Federal)\TRIAL\PLT TRIAL BRIEF.wpd

**BRAYTON ❖ PURCELL, LLP**
Columbia Square Building
111 SW Columbia Street, Suite 250
Portland, Oregon 97201
Phone: (503) 295-4931; Fax: (503) 241-2573

>> manufacturer is not the issue. If the dangers of asbestos were known to Johns-Manville at the time of Dartez's exposure, then the same risks were scientifically discoverable by other asbestos corporations. Therefore, the testimony of the medical director of the industry's largest member is relevant to plaintiff's attempt to meet the evidentiary burden defined in Borel.'
>
> The appellants do not argue with the instruction other than to argue that it creates additional duties not found in the common law, and further that there is no authority establishing such a duty in the State of Washington. We do not agree."

*Koker*, 60 Wn. App. at 478.

Asbestos defendants usually claim as a defense to negligence claims that they did not have knowledge of the harmful effects of their asbestos products to product <u>users</u>. The *Borel* court addressed this argument in its review of the extent of a manufacturer's knowledge about the dangers of asbestos. in its decision , at 1083 for an overview of that court's review (in 1973) of the extent of the asbestos manufacturers' knowledge.

> "Asbestosis has been recognized as a disease for well over fifty years. The first reported cases of asbestosis were among asbestos textile workers. In 1924, Cooke in England discovered a case of asbestosis in a person who had spent twenty years weaving asbestos textile products. In the next decade, numerous similar cases were observed and discussed in medical journals. An investigation of the problem among textile factory workers was undertaken in Great Britain in 1928 and 1929. In the United States, the first official claim for compensation associated with asbestos was in 1927. By the mid-1930's, the hazard of asbestosis as a pneumonoconiotic dust was universally accepted. Cases of asbestosis in insulation workers were reported in this country as early as 1934. The U.S. Public Health Service fully documented the significant risk involved in asbestos textile factories in a report by Dreessen, et al., in 1938. The authors urged precautionary measures and urged elimination of hazardous exposures."

Borel v. Fibreboard, 493 F.2d 1076, 1083 (5th Cir. 1973), *cert. denied*, 419 U.S. 869 (1974).

Washington also recognizes a continuing duty to warn, even after a product has left a manufacturer's control. *Lockwood v. AC & S, Inc.*, 109 Wn.2d 235, 744 P.2d 605 (1987).

### C. Joint And Several Liability Of Defendants

The medical evidence in this case will show that the harm to Mr. Barabin caused by exposure to asbestos is indivisible, and that it is scientifically impossible to single out or otherwise identify a particular exposure to respirable asbestos from a defendant's product as <u>the</u> cause of his disease. Under this set of circumstances, each defendant is jointly and severally liable for the damages sustained by Mr. Barabin. *See Sofie v. Fibreboard Corp.,* 112 Wn.2d 636,

7 -   PLAINTIFFS' TRIAL BRIEF
J:\WA\106995\USDC (Federal)\TRIAL\PLT TRIAL BRIEF.wpd

**BRAYTON ❖ PURCELL, LLP**
Columbia Square Building
111 SW Columbia Street, Suite 250
Portland, Oregon 97201
Phone: (503) 295-4931; Fax: (503) 241-2573

771 P.2d 711 (1989) (RCW 4.22.070 excludes asbestos-related lawsuits from its several liability provisions because asbestos is a "hazard substance").

In *Borel*, the Fifth Circuit held that, because a number of asbestos exposures ("several causes...") " . . . combine to produce an injury that is not reasonably capable of being divided," the defendants were jointly and severally liable for Mr. Borel's cancer:

> "Where the tortious acts of two or more wrongdoers join to produce an indivisible injury, that is, an injury which from its nature cannot be apportioned with reasonable certainty to the individual wrongdoers, all of the wrongdoers will be held jointly and severally liable for the entire damage and the injured party may proceed to judgment against any one separately or against all in one suit."

*Borel v. Fibreboard*, 493 F.2d 1076, 1094-96 (5th Cir. 1973).

In the State of Washington, the law is the same. In *Seattle-First v. Shoreline Concrete*, 91 Wn.2d 230, 538 P.2d 1308 (1978) the court held:

> "The cornerstone of tort law is the assurance of full compensation to the injured party. To attain this goal, the procedural aspect of our rule permits the injured party to seek full recovery from any one or all of such tort-feasors. So long as each tort-feasor's conduct is found to have been a proximate cause of the *indivisible* harm, we can conceive of no reason for relieving that tort-feasor of his responsibility to make full compensation for all harm he has caused the injured party. What may be equitable *between multiple tort-feasors* is an issue totally divorced from what is fair to the injured party."

*Id.* at 236 (emphasis added).

This legal principal has been applied consistently in asbestos-injury cases in Washington. *See Mavroudis v. Pittsburgh-Corning Corp.* 86 Wn. App. 22, 935 P..2d 684 (1997). *See also Lockwood v. AC & S, Inc.*, 109 Wn.2d 235, 268 and Instruction #6 given by the trial court, to wit.

> "When the concurring negligence and/or product liability of two or more defendants are each proximate causes of the harm, each is liable regardless of the relative degree in which each contributes to the harm."

D.  "Substantial Factor" is the Appropriate Proximate Cause Test

The substantial factor test of causation applies to this case. Dkt. # 248 *at* 3-6. Plaintiffs will prove at trial that every occupational exposure to respirable asbestos fibers is a substantial factor in contributing to the asbestos-related injury at issue in this matter. In instances of asbestos exposure where the *whole* exposure is "the" cause of the resulting injury or disease, and

8 -   PLAINTIFFS' TRIAL BRIEF
      J:\WA\106995\USDC (Federal)\TRIAL\PLT TRIAL BRIEF.wpd

**BRAYTON ❖ PURCELL, LLP**
Columbia Square Building
111 SW Columbia Street, Suite 250
Portland, Oregon 97201
Phone: (503) 295-4931; Fax: (503) 241-2573

where individual contribution to the cause cannot be rationally ascertained, the substantial factor test applies. *Mavroudis v. Pittsburgh Corning Corp.*, 86 Wn. App. 22, 30, 935 P.2d 684 (1997).

> "In *Hue*, the plaintiff only needed to show that a portion of a defendant's pesticide became part of the total cloud of pesticide that caused the damage. Instruction 22 in the present case required that the jury find that the quantity of OCF's asbestos to which Mr. Mavroudis was exposed would have been a sufficient cause of the mesothelioma, standing alone, even if the injury would have occurred without exposure to that specific product. *Hue* arguably sets an easier standard for asbestos-injury plaintiffs to meet than instruction 22 because under the *Hue* approach, any contribution to the exposure, no matter how insignificant in relation to the overall exposure, apparently could be the basis for liability. By citing *Lockwood* in conjunction with *Martin v. Abbott Laboratories* [FN7], the case eliminating the need to show individual causal responsibility in DES cases, the *Hue* court certainly implied that asbestos-injury plaintiffs need not prove or apportion individual causal responsibility but need only show that the defendant's asbestos products were among those in the plaintiff's work environment when the injurious exposure occurred."

*Id*. at 30 (emphasis added).

As the court stated in *Mavroudis,* the simplest articulation of the "substantial factor" standard[5] comes from eminent legal scholar W. Page Keeton:

> "When the conduct of two or more actors is so related to an event that their combined conduct, viewed as a whole, is a but-for cause of the event, and the application of the but-for rule to them individually would absolve all of them, the conduct of each is a cause in fact of the event."[6]

*Id*. at 30, 935 P.2d at 688 (citing W. Page Keeton, et al, *Prosser & Keeton on Torts* § 41, at 268 (5th ed. 1984).

Plaintiffs need only to establish that defendants' products caused exposures that were part of the total dose of asbestos sustained by Mr. Barabin, and need not apportion individual causal responsibility among defendants. *Id*. Like the toxic cloud at issue in *Hue, et al., v. Farmboy Spray Co., Inc., et al.*, 127 Wn. 2d 67, 896 P.2d 682 (1995), any attempt to retrospectively divide the total toxic exposure that caused the harm would be unscientific and meaningless, and carries the potential for multiple tortfeasors to enjoy a causation defense merely because of the

---

[5]It is a common practice for asbestos defendants to attempt to obfuscate this legal standard by referring to it as "substantial cause" or similar mis-statements. Through this trope asbestos defendants seek to heighten a plaintiff's burden by conflating for judge and jury this legal term of art into something more akin to the dictionary definition of "substantial."

9 -   PLAINTIFFS' TRIAL BRIEF
J:\WA\106995\USDC (Federal)\TRIAL\PLT TRIAL BRIEF.wpd

**BRAYTON ❖ PURCELL, LLP**
Columbia Square Building
111 SW Columbia Street, Suite 250
Portland, Oregon 97201
Phone: (503) 295-4931; Fax: (503) 241-2573

1  numerosity of the exposures.  *See Id.*

2  Washington courts have firmly rejected this potential injustice in a variety of contexts.  In rejecting the contention that plaintiffs had to show that an individual defendant's contribution to the pesticide cloud would have been sufficient to cause the injury on its own, the court cited a series of its prior cases with consistent reasoning and rulings, including *Martin v. Abbott Laboratories*, 102 Wn.2d 581, 689 P.2d 368 (1984) (eliminating individual causal responsibility in DES [diethylstilbestrol] cases); *Lockwood v. AC & S*, 109 Wn.2d 235, 245, 744 P.2d 605 (1987) (cited for the proposition that plaintiff need establish only that defendant's asbestos products were among those in the plaintiff's work environment); and *Benton City v. Adrian*, 50 Wn. App. 330, 342, 748 P.2d 679 (1988) (recognizing that where plaintiff suffers indivisible damage caused by the combined flow of defendants' excess irrigation waters, it is error to dismiss action on ground that damages are not "sufficiently individualized and traceable to each defendant.").  *Hue* at 92, 896 P.2d at 695.

Washington courts have firmly rejected this tragedy-of-the-commons result in the context of toxic torts:

> "In sum, we conclude that multi-supplier asbestos-injury cases call for the substantial-factor test of causation rather than the but-for test, in cases such as this one, wherein the expert witness testifies, as did Dr. Hammar, that all of the plaintiff's exposure probably played a role in causing the injury and that it is not possible to determine which exposures were, in fact, the cause of the condition."

*Mavroudis* at 32.

In light of anticipated testimony on asbestos' properties as both a initiator and as a promoter of various disease responses, it will be impossible to retrospectively parse out and "blame" some fibers more than others for purposes of causation.  Expert testimony will also establish that prior exposures render a person particularly susceptible to injury from later exposures, and all parties agree that the total dose causes the disease.  Likewise, "important and material" means just what it says: that the particular exposure by a defendant was important, and material in causing the harm.

## V.  DEFENDANTS

Defendant AstenJohnson, Inc. is liable for manufacturing and distributing asbestos-

10 - PLAINTIFFS' TRIAL BRIEF
J:\WA\106995\USDC (Federal)\TRIAL\PLT TRIAL BRIEF.wpd

**BRAYTON ❖ PURCELL, LLP**
Columbia Square Building
111 SW Columbia Street, Suite 250
Portland, Oregon 97201
Phone: (503) 295-4931; Fax: (503) 241-2573

1 containing dryer felts to which Henry Barabin was exposed during the time he worked at Crown-Zellerbach paper mill in Camas, Washington.  Defendant AstenJohnson, Inc. failed to warn plaintiff of the risks associated with asbestos well after defendant knew or should have known of such dangers.

Defendant Scapa Dryer Fabrics, Inc. is liable for manufacturing and distributing asbestos-containing dryer felts to which Henry Barabin was exposed during the time he worked at Crown-Zellerbach paper mill in Camas, Washington.  Defendant AstenJohnson, Inc. failed to warn plaintiff of the risks associated with asbestos well after defendant knew or should have known of such dangers.

## VI.  DAMAGES

A.   Economic Damages

Plaintiff Henry Barabin has incurred medical expenses for his treatment of mesothelioma estimated in excess of $100,000.00.  Plaintiff estimates loss of future income and loss of social security income due to decedent's premature retirement is $ 485,000.

B.   Non-Economic Damages

General Damages are claimed as prescribed by law and as determined by the evidence presented at trial.

Dated this 21st day of October, 2009.

                          BRAYTON ❖ PURCELL, LLP

                          /s/ Cameron O. Carter

                          Cameron O. Carter, WSBA #33326
                          Attorneys for Plaintiffs Henry Barabin and
                          Geraldine Barabin

11 - PLAINTIFFS' TRIAL BRIEF
J:\WA\106995\USDC (Federal)\TRIAL\PLT TRIAL BRIEF.wpd

**BRAYTON ❖ PURCELL, LLP**
Columbia Square Building
111 SW Columbia Street, Suite 250
Portland, Oregon 97201
Phone: (503) 295-4931; Fax: (503) 241-2573