1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HENRY BARABIN and GERALDINE
BARABIN,

                                    Plaintiffs,

        v.

ALBANY INTERNATIONAL CORP.;
ASTENJOHNSON, INC., et al.,,

                                    Defendants.

No. C07-1454

DEFENDANT ASTENJOHNSON,
INC.'S MOTION FOR A JUDGMENT
AS A MATTER OF LAW PURSUANT
TO FRCP 50(A)

## I.      INTRODUCTION AND RELIEF REQUESTED

Pursuant to Federal Rule of Civil Procedure 50(a), defendant AstenJohnson, Inc.
("Asten") moves this Court for a judgment as a matter of law dismissing all claims filed
against it by plaintiffs Henry Barabin and Geraldine Barabin ("Plaintiffs").  Plaintiffs have
failed to identify any admissible evidence that Mr. Barabin was ever exposed to any asbestos-
containing products manufactured or sold by Asten, or that any such products were a
substantial factor in his alleged asbestos-related injury.  Plaintiffs have failed to meet their
burden under Fed. R. Civ. Proc. 50, and therefore Asten is entitled to judgment as a matter of
law.

DEFENDANT ASTENJOHNSON,
INC.'S MOTION FOR A JUDGMENT
AS A MATTER OF LAW - 1
Case No. C07-1454

K:\2038878\00554\20950_MRL\20950P217Y

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

## II.   LEGAL STANDARD

### A.   Standard for Judgment as a Matter of Law

Judgment as a matter of law is appropriate where "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue[.]"  Fed. R. Civ. P.  50(a)(1); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251 (1986) (a court need not submit an issue to the jury when there is no evidence "upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed") (citation omitted); *Summers v. Delta Air Lines, Inc.,* 508 F.3d 923, 926 (9th Cir. 2007) (Rule 50(a) "allows a court to remove issues – claims, defenses, or entire cases – from the jury when there is no legally sufficient evidentiary basis to support a particular outcome.") (citation omitted). Whether the evidence is sufficient to create an issue of fact for the jury, in other words, is a preliminary question of law to be determined by the Court.  *Lange v. Penn Mut. Life Ins. Co.,* 843 F.2d 1175, 1181 (9th Cir. 1988).  Rule 50(a) serves "economy and expedition … by cutting short trials containing legally insufficient evidence as soon as it is apparent that [a] party is unable to carry a burden of proof that is essential to that party's case."  *Summers,* 508 F.3d at 927 (citations omitted).

When "there is no substantial evidence to support a claim, i.e., only one conclusion can be drawn, the court must direct a verdict[.]"  *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League,* 726 F.2d 1381, 1387 (9th Cir. 1984).  A "mere scintilla" of evidence is not sufficient to present a question for the jury.  *See Westinghouse Elec. Corp. v. CX Processing Labs, Inc.,* 523 F.2d 668, 673 (9th Cir. 1975) (affirming grant of judgment as a

DEFENDANT ASTENJOHNSON,
INC.'S MOTION FOR A JUDGMENT
AS A MATTER OF LAW - 2
Case No. C07-1454

K:\2038878\00554\20950_MRL\20950P217Y

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1   matter of law and stating "[s]ubstantial evidence is more than a mere scintilla.") (citing

2   *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)); *see also Barnes v. Arden*

3   *Mayfair, Inc.,* 759 F.2d 676, 684 (9th Cir. 1985) (applying same standard to affirm grant of

4   summary judgment); *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir. 1978)

5   (affirming grant of summary judgment and stating: "A mere scintilla of evidence will not do,

6   for a jury is permitted to draw only those inferences of which the evidence is reasonably

7   susceptible; it may not resort to speculation.").

8       **B.    Plaintiffs' Burden of Proof**

9           In *Lockwood v. AC&S, Inc.*, 109 Wn.2d 235, 245, 744 P.2d 605 (1987), the Court held

10  that in order for there to be a triable issue of fact regarding causation in an asbestos case, a

11  plaintiff must offer evidence supporting a reasonable inference that there was exposure to

12  respirable asbestos fibers from a defendant's product.  While a plaintiff is not required to

13  personally identify the asbestos products to which he was exposed, the evidence of said

14  exposure has to remain above speculation or conjecture.  *Id.* at 247, *Clift v. Nelson*, 25 Wn.

15  App. 607, 611 (1980).

16          In addition, the plaintiff must establish a reasonable connection between the injury, the

17  product causing the injury, and the manufacturer.  *Lockwood*, 109 Wn.2d at 245.  *Lockwood*

18  clarified that a finding of causation will depend on the nature of the product, the tendency of

19  that product to release respirable asbestos as it is handled, the plaintiffs' proximity to said

20  release, and the duration intensity of the exposure.  *Id.* at 248.[1]  Consequently, there must be

21  
    _____

22  [1] *Lockwood* indicates that:

23          [t]rial courts should consider a number of factors when determining if
            there is sufficient evidence for a jury to find that causation has been
24          established. They should consider the evidence of plaintiff's proximity to
            the asbestos product when the exposure occurred and the expanse of the
25  

26  
DEFENDANT ASTENJOHNSON,
INC.'S MOTION FOR A JUDGMENT
AS A MATTER OF LAW - 3
K:\2038878\00554\20950_MRL\20950P217Y

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

sufficient evidence to support an inference that the asbestos-containing product was a "substantial factor" in causing the injury. *Lockwood*, 109 Wn.2d at 248-49; *Mavroudis v. Pittsburgh-Corning Corp.*, 86 Wn. App. 22, 28 (1997).

### III.    ARGUMENT

**A.    Plaintiffs' Evidence is Insufficient to Sustain a Verdict for Plaintiffs.**

Plaintiffs' evidence is insufficient to establish that Mr. Barabin worked with or around Asten asbestos-containing dryer felts or any other product manufactured by Asten.    At different times, Mr. Barabin was a paper tester and as a worker on the paper machine. *E.g.* Trial Transcript ("Tr. Trans.") (10/28/09) 136:3-139:13.  There is no testimony presented by the plaintiffs that Mr. Barabin worked with a dryer felt manufactured by Asten. *Id.* at 188:24-25; 189:1-6.  In fact, Mr. Barabin could not identify the manufacturer of any dryer felt used on any paper machine during the time he was a paper tester. *Id.* at 158:6-9; *Id.* at 173:24-174:1.  Mr. Barabin also could not indicate which machines he removed and installed dryer felts on. *Id.* at 173:19-23.  Most importantly, Mr. Barabin did not know whether the dryer felts on the machines he worked on contained asbestos. *Id.* at 174:15-17.  Nor have Plaintiffs produced any evidence that places Mr. Barabin in proximity to an Asten asbestos-containing

work site where asbestos fibers were released. They should also take into account the extent of time that the plaintiff was exposed to the product. As the time of exposure to asbestos dust increases, so does the severity of diseases associated with such exposure.

Courts should also consider the types of asbestos products to which the plaintiff was exposed and the ways in which such products were handled and used. Asbestos products exist in a wide variety of forms, which differ in the amounts and percentages of asbestos they contain.

DEFENDANT ASTENJOHNSON,
INC.'S MOTION FOR A JUDGMENT
AS A MATTER OF LAW - 4
Case No. C07-1454

K:\203887\00554\20950_MRL\20950P217Y

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    dryer felt.

2         There is no evidence which places Mr. Barabin next to or near an asbestos-containing

3    dryer felt as required by *Lockwood*.   Consequently, in order for a jury to render a verdict

4    against Asten, the jury would have to speculate that Mr. Barabin worked with or around or

5    was exposed to products manufactured by Asten.[2]   On this point alone, a directed verdict is

6    required.  *British Airways*, 585 F.2d at 952.

7

8    **C.    Plaintiffs' Evidence Does Not Satisfy *Lockwood*.**

9         Assuming, arguendo, that Plaintiffs had provided sufficient evidence that Mr. Barabin

10   was around an asbestos-containing dryer felt manufactured by Asten, Plaintiffs' evidence still

11   falls short of meeting the *Lockwood* standard.  Plaintiffs' experts have conceded that there is

12   an ambient level of asbestos that is present in all air and is not considered causative of

13   mesothelioma.  These experts, however, did not provide or rely upon evidence of above-

14   ambient exposures to asbestos released from asbestos-containing dryer felts in production on

15   a paper machine in a paper mill.  Without more, the causal link between an Asten asbestos-

16   containing dryer felt and Mr. Barabin's disease has not been made.

17         **1.    Kenneth Cohen's Testimony**

18        Plaintiffs' industrial hygienist, Kenneth Cohen, testified that an industrial hygienist

19   has several factors to consider when it comes to a worker's particular risk from exposure:

20   _____

21   *Lockwood*,  109 Wn.2d at 248.
     [2]  Purchase records show that the Camas Mill was supplied with asbestos-containing dryer
     felts manufactured by Asten which were intended for specific machines.  Assuming,
22   arguendo, that these dryer felts released respirable asbestos (which Asten denies), Mr. Barabin
     cannot place himself on those machines when those dryer felts were being used.  Moreover,
23   Plaintiffs' own experts, as discussed further below, concede that the level of exposure would
     vary with Mr. Barabin's proximity to an asbestos-containing dryer felt and the duration of Mr.
24   Barabin's exposure.  Plaintiffs, therefore, cannot solely rely on the presence of an Asten
     asbestos-containing dryer felt at the Camas Mill.
25

26

DEFENDANT ASTENJOHNSON,
INC.'S MOTION FOR A JUDGMENT
AS A MATTER OF LAW - 5
Case No. C07-1454

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

"what are they doing, can asbestos be released into the air, and can they breathe it."  Tr.

Trans. (10/29/09), at 42:21-43:2.  Cohen admitted that workers at paper mills have different

exposures depending on the work they are performing.  *Id.* at 113:24-114:2.  Along the same

lines, he testified that work exposures can also depend on the environmental conditions of the

paper mill.  *Id.* at 114:3-114:25.

   Mr. Cohen also conceded that not all exposures are considered causative.  He admitted

that exposure to a single fiber of asbestos does not concern him.  *Id.* at 127:5-9.  Indeed,

Cohen testified that abatement returned an area to ambient levels of asbestos:

> Q   After asbestos is released from a product and settles, why is
> it necessary to perform abatement to make the area safe?
>
> A   Because the abatement procedure is the only way to rid the
> space of the particulate asbestos fibers that are floating in the
> area.  You can't see them.  They're there.  We can sample them
> and we can test them.  After these workers go in and wash
> everything down, industrial hygienists come in, sample the air
> within that space, that plastic space, <u>and determine whether or
> not it's comparable to the level of asbestos in what's called the
> ambient air, or the air outside of the building</u>.  There is a
> small -- very, very small amount of asbestos in what's called
> ambient air, the air outside of the courthouse, which is that
> constant churning level of all of the asbestos that's ever been
> released.

*Id.* at 52:8-21 (emphasis added).

   Mr. Cohen defined an ambient exposure to asbestos as .00001 to .00009 f/cc.  *Id.* at

127:10-15.  Having presented the jury with a non-causative threshold of fiber release,

Plaintiffs had to elicit testimony from Mr. Cohen or present evidence that would explain <u>how

an asbestos-containing Asten or Scapa dryer felt used in production at the environment of the

Camas Paper Mill</u> would have exceeded that threshold.

   Cohen did not do so, and could not do so.  He could not speak to the environment of

DEFENDANT ASTENJOHNSON,
INC.'S MOTION FOR A JUDGMENT
AS A MATTER OF LAW - 6
Case No. C07-1454

K:\2038878\00554\20950_MRL\20950P217Y

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

the Camas Paper Mill and how that would affect fiber drift. *Id.* at 107:17-22; 112:10-113:14

(Mr. Cohen has not visited the Camas Mill and has only visited three paper mills in his

lifetime).  He could also not speak to the condition of dryer felts in production.  Indeed,

although Cohen admitted that soap, otherwise known as sulfates, can have an effect on

asbestos fiber drift, Cohen had never tested paper slurry to determine its chemical makeup.

*Id.* at 119:19-120:5; 120:10-121:1.  Moreover, Cohen has no direct or specialized experience

or training associated with dryer felts.  *Id.* at 105:22-24; 106:4-6; 106:7-9; 106:18-21.   Cohen

refused to perform a calculation that takes into account Mr. Barabin's exposure from dryer

felts, has never conducted a test of any kind on a paper mill where dryer felts are being used,

and is not aware of a single study showing any exposure to asbestos specifically from dryer

felts in use in a paper mill.  *Id.* at 107-109.

Cohen claims that, without intensive abatement some level, of asbestos remains in an

environment indefinitely; or, in Cohen's own words, the concentration of asbestos "never

going to reach zero."  *Id.* at 161:4-12.  Combined with Cohen's testimony that there is "no

safe level" for asbestos,  *id.* at 34:25-35:14, Cohen's theory leads to a conclusion that use of

asbestos in a product results in disease, period, contrary to his own testimony about ambient

exposures.  Under Cohen's formulation, this conclusion does not depend upon the actual level

of fiber release from a product, the environmental conditions present in the area during or

after the potential release, or how far a plaintiff is separated by time or distance from the use

of the product.[3]  Cohen's opinion that Mr. Barabin had direct or bystander exposures to

---

[3] Cohen's testimony, however, is that released asbestos is abated through time:
By all the means that are present, leaving by open doors, leaving by
windows, leaving on the clothing of workers, unfortunately
leaving in the lungs of workers, however it might leave the
space, by any cleaning methods or whatever, the concentration
diminishes very rapidly. This is also called a half-life curve.

DEFENDANT ASTENJOHNSON,
INC.'S MOTION FOR A JUDGMENT
AS A MATTER OF LAW - 7
Case No. C07-1454

K:\2038878\00554\20950_MRL\20950P217Y

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  asbestos from dryer felts that substantially caused Mr. Barabin's disease, is, at best,

2  descriptive, not substantive.[4]  Put differently, without substantive evidence of the amount of

3  asbestos released in production from an asbestos-containing dryer felt, Cohen's conclusions

4  that Mr. Barabin was exposed to "direct" and "bystander" exposures to asbestos is not

5  equivalent to above-ambient exposure that will be causative under Cohen's own testimony.

6      Cohen's testimony requires a jury to speculate and conclude that the historical use of

7  asbestos in a product like Asten's dryer felts results in disease no matter what other factors

8  and conditions were present at a work site—a result that is wholly inconsistent with Cohen's

9  own testimony, the testimony of any of Plaintiffs' other experts, and Washington's legal

10  standard for asbestos-injury liability as set forth in *Lockwood* and *Mavroudis v. Pittsburgh-*

11  *Corning Corp.*, 86 Wn. App. 22 (1997) (applying the substantial factor test).   This is

---

13  *Id.* at 56.  As such, Cohen's testimony is not that asbestos released by a fiber felt remains
indefinitely and will find its way to Mr. Barabin at the same level and intensity of its first
14  release weeks or months after its release.  This underscores the importance of the *Lockwood*
proximity, duration and intensity test.

[4]    By way of example, Cohen testified generally, but not specifically, about the possible
15  intensity about Mr. Barabin's exposure:

16  Q   And I will try to ask it a little bit better.  I don't mean
to get into quantity.  But qualitatively, is there ever a
17  point -- you know, in other words, if Mr. Barabin is directly
himself working on a dryer change out where he is blowing or
18  cutting or he is within the nearby vicinity watching other
workers do it, or he's away in another part of the building, does
19  that change whether or not, from an industrial hygiene
standpoint, you can ignore an exposure to asbestos?
20  A   No.  But can I explain?
Q   Please.
21  A   When Mr. Barabin walks into that building, he is being
exposed.  When he is working in the proximity of others working
22  with asbestos-containing materials, he is being exposed at a
slightly higher level.  When he, himself, is working with
23  asbestos-containing materials, he is being exposed at the highest
level.

24  *Id.* at 82:13-83:3

26  

DEFENDANT ASTENJOHNSON,
INC.'S MOTION FOR A JUDGMENT
AS A MATTER OF LAW - 8
Case No. C07-1454

K:\2038878\00554\20950_MRL\20950P217Y

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1   precisely the type of conjecture inference that a jury is not permitted to make.  *Anderson*, 477

2   U.S. at 251..

3       **2.    Medical causation testimony**

4       Plaintiffs' other experts also testified that ambient exposures are not causative, but had

5   no evidence that Mr. Barabin was exposed to Asten asbestos-containing dryer felts at that

6   threshold level of exposure.

7       By way of example, Dr. Brody testified that levels of asbestos at an ambient level do

8   not cause disease:

9       Q.      And you have testified in the past, and you believe that
        these background levels of asbestos that we all breathe can cause
10      there to be billions of fibers in people's lungs, correct?

11      A       Sure.  That's not a lot.  You can get a billion fibers into a
        thimble.  That is not a lot, but, yes, what you say is true.
12

13      Q       And you would agree with me that that level of breathing
        asbestos does not cause disease?
14

15      A   Correct.

16      Q   It is also your opinion, is it not, Dr. Brody, <u>that exposure
        levels slightly above the background levels are not something</u>
17      <u>that you believe puts a person at a risk of disease</u>?

18      A   <u>"Slightly" can depend on a lot of things.  If it is slightly</u>
        <u>above for just a day or so, I agree with you.  If slightly turns</u>
19      <u>into months and years, there is no safe level that has been</u>
        <u>established.  So "slightly" depends on the time.</u>
20

21   Tr. Trans., (10/27/09), 148:2-16.

22      Dr. Brody also testified that the level of exposure of a worker is relevant to the

23   investigation of the disease.

24      Q   Dr. Brody, you agree that the level of exposure a worker has
        to asbestos is very important in investigating the causation of
25

26
DEFENDANT ASTENJOHNSON,
INC.'S MOTION FOR A JUDGMENT
AS A MATTER OF LAW - 9
Case No. C07-1454

K:\2038878\00554\20950_MRL\20950P217Y

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

disease?

A   Sure.

Q   The dose required to cause disease typically varies with the intensity of the exposure?

A   Right.  So dose requires a knowledge of intensity and the time of exposure, yes.

*Id.* 149:3-10.

Dr. Brodkin, like Dr. Brody and Mr. Cohen, agrees that background or ambient

exposures are low and should be excluded from any dose calculation:

Q       Is there any way for a doctor or a scientist to go back in time from that date of diagnosis and disregard any occupational asbestos exposures as some causal, some not causal?

A       In terms of the types of exposures I have talked about, whether there is an identifiable release of fibers from the material, such that it is inhaled, and such that that exposure occurred more than ten years prior to the development of mesothelioma, all of those exposures would add to the cumulative dose that resulted in risk for mesothelioma. It would make no sense to remove one exposure and only concentrate on another. It's really the aggregate or cumulative exposure.

Q       Does it matter whether some of those exposures are direct versus bystander versus background?

A       The background or ambient exposures, I would exclude. There is no evidence that ambient exposures, the two times ten to the minus six fiber per cc, in a clinically significant way add to the risk. I mean, mesothelioma is a very rare disease. But in terms of the other types of exposures, whether they are direct or bystander, these are all identifiable exposure sources.

Tr. Trans. (11/03/2009) at 68:5-23, 32-33 (testifying, inter alia, that there is no evidence that

DEFENDANT ASTENJOHNSON,
INC.'S MOTION FOR A JUDGMENT
AS A MATTER OF LAW - 10
Case No. C07-1454

K:\2038878\00554\20950_MRL\20950P217Y

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  below ambient levels of asbestos "causes a clinically significant increased risk"), 62

2  (testifying that walking past an asbestos-containing material would not represent an identified

3  exposure).  Dr. Brodkin's testimony, consequently, required an industrial hygienist's finding

4  that an asbestos dryer felt in production released more than ambient levels of asbestos.

5      Nonetheless, Dr. Brodkin provided opinions which depended on the existence of such

6  testimony.  By way of example, Dr. Brodkin testified that:

7      Mr. Barabin's exposures related to his paper machine work were strong
        identifiable exposures and added to his cumulative exposure, and as such
8      would also be substantial contributing factors in his development of
        mesothelioma.

9

10  *Id.* at 63:22-64:8.

11      Mr. Barabin's general exposure around paper machines is not at issue.  As testified to

12  by Dr. Brodkin, the environment around a paper machine includes exposures from other

13  asbestos-containing products at the mill, not just dryer felts.

14      With regards to dryer felt specific components, Dr. Brodkin testified that he relied on

15  studies that would "indicate that dryer felts would be an important component of the

16  cumulative exposure around a paper machine."  *Id.* at 56.  However, the two studies Dr.

17

18  Brodkin referred to as informing his opinion are not specific to dryer felt exposures at all.

19  The first, Kay Tesche's article as published in the American Industrial Hygiene Journal

20  regarded asbestos levels at non-paper production areas of the pulp and paper mills.  *Id.* at

21  49:15-20 ("The American Industrial Hygiene Association Journal is a large review of British

22  Columbia pulp and paper mills and, again, surveys exposures in various <u>non-production levels</u>

23  of the pulp and paper mills").  Dr. Brodkin also mentioned a large study of pulp and paper

24

25

26

DEFENDANT ASTENJOHNSON,
INC.'S MOTION FOR A JUDGMENT
AS A MATTER OF LAW - 11
Case No. C07-1454

K:\2038878\00554\20950_MRL\20950P217Y

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    mill workers, and that these studies would inform his opinion that "in the area of a paper-

2    making machine, workers that work around paper machines, average exposures during the

3    period of about 1980 into the early 1990s would have been on average one and a half fibers

4    per cc." *Id.* at 55.  The studies relied upon not only post-date the production of Asten

5    asbestos-containing dryer felts, but also again measured exposures around a paper machine,

6    not exposures specific to dryer felts.  The jury would be asked to assume, despite evidence to

7    the contrary, that all asbestos exposure around a paper machine, years after the defendants in

8    this case made asbestos-containing dryer felts, could be predictive of the release of asbestos

9    from dryer felts, when, in fact, it at best suggests the direct opposite conclusion.  By relying

10   on evidence that does not isolate dryer felt exposures, Dr. Brodkin is, in essence, substituting

11   the product-specific evidence required by *Lockwood* for an indistinct cloud of exposures from

12   around the mill.[5]

13

14           3.       Dr. <u>Millette's Testimony.</u>

15           The testimony of Dr. Millette provides neither any pieces of ore or any lore that can be

16   forged into the missing links in the plaintiffs' chain of causation.  As the court recognized in

17   its ruling on the permissible scope of Dr. Millette's testimony, his studies do not replicate any

18   of the conditions in a paper mill and may not be presented to the jury as simulations of the

19   actual operations in a paper mill.  (Docket No. 248, at page 21-24).  At best, therefore, Dr.

20   Millette's testimony merely stands for the proposition that dryer felts under unique, non-

21   occupational situations can release asbestos.  Again, however, this testimony of release is not

22

23

24   _____

25   [5] This is consonant with Plaintiffs' theory and request to use the *Hue* standard in this matter.

26   DEFENDANT ASTENJOHNSON,
     INC.'S MOTION FOR A JUDGMENT
     AS A MATTER OF LAW - 12
     Case No. C07-1454

K\2038878\00554\20950_MRL\20950P217Y

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

a proxy for testimony that establishes that the intensity of the release was above the ambient levels that Plaintiffs' experts have stated is non-causative.

Dr. Millette specifically testified that he is not aware of any studies that addressed the question of whether the cutting of an asbestos containing dryer felt releases respirable asbestos fiber in excess of the current OSHA PEL.  Tr. Trans. (11/5/09) at 73:2-5.  There has been no testimony presented by the plaintiff that the cutting of a dryer felt releases any respirable asbestos fiber.  Dr. Millette does agree that the potential for fiber release and the potential for asbestos exposure would vary from job function to job function and be based on a number of workplace factors, like ventilation, presence of water, and humidity. *Id.* at 62-63.  Yet with that acknowledgment, Dr. Millette is not able to comment on those factors that affect the potential for fiber release in general or as to Mr. Barabin in particular.

The reasons for the Court's limitations of Dr. Millette's testimony on the motion in limine include some of the limitations shown in court, and echo the limitations found in Mr. Cohen's testimony.  While Cohen and Millette admitted that the environment of a paper mill and the working conditions would both be relevant in measuring fiber release and dispersion, Dr. Millette did not know the humidity of the mill in the 1960's or 1970's.  *Id.* at 64:18-20.  Millette did not know the amount of water usage by the Camas Mill in the 60's and 70's.  *Id.* at 65: 9-12.   Like Mr. Cohen, Dr. Millette did not know the number of air exchanges there are in any period of time at a Camas Mill paper machine.  *Id.* at 79:2-4; 70:2-4.

Dr. Millette's tests did not account for the condition of a dryer felt on a working paper machine.  For example, Dr. Millette's acknowledged that <u>none</u> of the pieces of felts that he

DEFENDANT ASTENJOHNSON,
INC.'S MOTION FOR A JUDGMENT
AS A MATTER OF LAW - 13
Case No. C07-1454

K:\203878\00554\20950_MRL\20950P217Y

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

tested were thoroughly soaked. *Id.* at 70:22-25.  Dr. Millette's "Post–it Note" test was done on a dry felt.  *Id.* at 71: 6-8; 70:22-25.  While Millette indicated that there are a number of chemicals in the water that is used in the paper making process, *id.* at 77:9-22, he only used distilled water in his tests *Id.* at 77:23-25, 78:1-6.   Dr. Millette makes no mention made by him that this pure water is the functional equivalent to the chemical laddened water used in the paper making process.[6]   Moreover, although there was some air movement to provide for air moving out of the experiment's hood, *id.* at 71, there was no comparison made with the air flow above and around the paper machine.   Dr. Millette's finger test fares no better: it was also done on a dry felt, *id.* at 71, and only his finger was wetted with a drop of distilled water placed on his finger tip.  *Id.*

Consequently, the jury was presented with evidence from Millette that neither replicated nor accounted for Mr. Barabin's work experience as a paper maker on a working paper machine in a paper mill like Camas.  In fact, when Dr. Millette was asked to opine on an actual blow down like Mr. Barabin would have performed on a paper machine, he admitted that it would not approximate the levels he reached with his test:

> Q  And so you wouldn't be able to tell us, for example, what the number would be if someone just blew parallel to the dryer felt the whole time as opposed to any angle?
>
> A  What the number result would be?
>
> Q  Yes.
>
> A  I would anticipate that you wouldn't find very much, because you are not very much off the surface.

---

[6] This is unrebutted testimony by Paul Carlson that surfactants are added to the water used in the paper making process.  Tr. Trans. (11/9/09) at 129:21-25;130:1-6.

DEFENDANT ASTENJOHNSON,
INC.'S MOTION FOR A JUDGMENT
AS A MATTER OF LAW - 14
Case No. C07-1454

K:\2038878\00554\20950_MRL\20950P217Y

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

*Id.* at 69; *e.g.* Tr. Trans. (10/28/09), at 74:20-21.

It is logically inconsistent and contradictory for Plaintiffs' experts to declare that undefined background levels of asbestos exposure (whatever they may be) cannot cause mesothelioma, while declaring that each and every exposure to asbestos-containing products above the undefined background (whatever they may be) are a substantial contributing factor in causing mesothelioma.[7]  It is also logically and legally insufficient for Plaintiffs to suggest that Mr. Barabin's development of mesothelioma indicates that his risk of developing mesothelioma from dryer felts was 100%.   Plaintiffs' experts have provided no evidence that the levels of asbestos respired by Mr. Barabin from an asbestos containing dryer felt on a paper machine in production were above the levels they have described as causative.[8]  Without more, Plaintiffs are asking the jury to infer, without proper evidence, that any exposure, even exposures below ambient, are causative.   Plaintiffs' theory of the case, in essence, inverts the burden of proof on Defendants, forcing the Defendants to prove a negative: that their dryer felts did not cause Mr. Barabin's mesothelioma.  In so doing, Plaintiffs are placing a stake outside of Washington jurisprudence and their own experts' testimony.

---

[7] This is not a case where the absence of evidence requires a finding that dryer felts must have been a substantial source of Mr. Barabin's mesothelioma.  Defendants have proffered uncontroverted evidence that Mr. Barabin was exposed to asbestos from other sources, including but not limited to thermal insulation, and Plaintiffs' experts have agreed that these exposures would have substantial causes of Mr. Barabin's disease.
[8] As Defendants' experts have shown, tests done on working paper mill machines have shown releases of asbestos that fall below the ambient threshold and OSHA standards, both at the time and today.  Plaintiffs experts' refusal to explain the contradictions in their own testimony are in furtherance of their theory of the case, not because of the absence of data.

DEFENDANT ASTENJOHNSON,
INC.'S MOTION FOR A JUDGMENT
AS A MATTER OF LAW - 15
Case No. C07-1454

K:\2038878\00554\20950_MRL\20950P217Y

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1

## IV.  CONCLUSION

2      The links of the Plaintiffs' case of causation are illusory.  There is no substance for

3  their theory that Mr. Barabin was exposed to any respirable asbestos from Asten's dryer felts.

4  Their tale that every fiber is causative is not found in the testimony of any witness or article

5  presented.  For the reasons stated, Asten requests that this Court grant its motion for a

6  judgment as a matter of law.

7

      DATED this 16th day of November, 2009.

8

9                                          K&L GATES LLP

10

11                                         By \ G. William Shaw
                                             G. William Shaw, WSBA # 8573
12                                           Martha Rodriguez-Lopez, WSBA # 35466
                                             Michelle Jensen, WSBA #36611
13                                         Attorneys for Defendant
                                           AstenJohnson, Inc.

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT ASTENJOHNSON,
INC.'S MOTION FOR A JUDGMENT
AS A MATTER OF LAW - 16
Case No. C07-1454

K:\2038878\00554\20950_MRL\20950P217Y

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022