The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HENRY BARABIN and GERALDINE BARABIN, | NO. C07-1454 RSL |
| Plaintiffs, | DEFENDANT SCAPA DRYER FABRICS, INC.'S, MOTION FOR NEW TRIAL OR, IN THE ALTERNATIVE, FOR REMITTITUR |
| v. | |
| ASTENJOHNSON, INC. and SCAPA DRYER FABRICS, INC., | NOTE ON MOTION CALENDAR: JANUARY 8, 2010 |
| Defendants. | **ORAL ARGUMENT REQUESTED** |

## I.  RELIEF REQUESTED

Pursuant to Fed. R. Civ. P. 59, Defendant Scapa Dryer Fabrics, Inc. urges the Court to order a new trial or, in the alternative, a remittitur for the following reasons:

- Juror dishonesty during voir dire deprived Scapa of a fair trial.

- Juror misconduct during deliberation deprived Scapa of a fair trial.

- The Court's exclusion of collateral-source evidence after Mrs. Barabin testified about her fear of being left destitute caused the jury to award excessive damages.

- Scapa was denied an apportionment of damages by a Washington statute that violates the United States Constitution.

DEFENDANT SCAPA DRYER FABRICS, INC.'S, MOTION FOR
NEW TRIAL OR, IN THE ALTERNATIVE, FOR REMITTITUR –1

(C07-1454 RSL)

2695941.1

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

- The jury's verdict is against the great weight of the evidence.
- The Court abused its discretion by admitting the testimony of Plaintiffs' experts Cohen, Brodkin and Millette, by allowing evidence in support of Plaintiff's every fiber/total dose theory, and by admitting certain documents offered by Plaintiffs.
- The Court erroneously charged the jury.
- Plaintiffs' counsel made an improper jury argument.
- The jury's damage award is excessive.

## II.  EVIDENCE RELIED UPON

Scapa relies on the Declaration of Lisa C. Williams and the exhibits attached thereto, the Un-redacted Declaration of Juror, filed under seal by defendant AstenJohnson, and the Declaration of G. William Shaw in support of AstenJohnson's Motion for a new trial and the exhibits attached thereto as well as the record and file herein.

## III.  ARGUMENT AND AUTHORITIES

A.  Juror Dishonesty During Voir Dire Deprived Scapa Of A Fair Trial.

Against the backdrop of an "ordinary" verdict, evidence of juror dishonesty during voir dire is troubling enough.  But in an outlier case like this – involving a remarkably large award for non-economic damages that can only be explained by the information the jurors withheld – it is a particularly serious matter indeed, and the interests of justice very clearly demand a new trial.

A new trial for juror dishonesty during voir dire should be granted when (i) a juror failed to answer honestly a material question; and (ii) the correct answer would have provided a valid basis for a challenge for cause.  *Price v. Kramer*, 200 F.3d 1237, 1254 (9th Cir. 2000). Juror challenges are governed by 28 U.S.C. §1870, and challenges for cause must be based on a narrowly specified, provable, and legally cognizable basis of partiality.  *Darbin v. Nourse*, 664 F.2d 1109, 1113 (9th Cir. 1981).  There must be a showing of actual or implied bias.

DEFENDANT SCAPA DRYER FABRICS, INC.'S, MOTION FOR
NEW TRIAL OR, IN THE ALTERNATIVE, FOR REMITTITUR –2

(C07-1454 RSL)

2695941.1

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1    *United States v. Gonzalez*, 214 F.3d 1109, 1112 (9th Cir. 2000).  An evidentiary hearing may

2    be necessary to inquire into juror bias when a juror gives dishonest answers during voir dire.

3    *See Bear v. Ford Motor Co.*, 2008 WL 2230743, at *3 (E.D. Wash. 2008) (citing *Williams v.*

4    *Taylor*, 529 U.S. 420 (2000)).   The Ninth Circuit has observed that "it is preferable that a

5    hearing be held."  *Hard v. Burlington N. R.R.*, 812 F.2d 482, 485 (9th Cir. 1987).

6              1.    Juror's failure to disclose a brain tumor

7              During voir dire in this case, counsel for Scapa asked the jurors whether they had had

8    any experience with cancer in their lives:

9              I need to find out, just like I talked to Ms. Maghie, is there anybody here that
             has had any experience with cancer in your life?  I am not going to go into the
10             details about it, but a close friend, a relative, perhaps yourself, has had an
             experience with cancer that you feel like, when you start hearing about someone
11             suffering from cancer and getting chemotherapy, and having the symptoms and
             the problems that go along with that, that you are going to be so overwhelmed,
12             feeling for the plaintiff, that you are just going to say, I really feel like Mr.
             Barabin should get some money no matter what?  Anybody have any experience
13             like that?  I am not going to pry, but just raise your hand and tell me.

14   *See* Ex. A to the Declaration of Lisa C. Williams ("Williams Dec."), 10/26/09 at 107:7-18.

15   One juror did not disclose that she suffers from a brain tumor.  Williams Dec., Ex. B.[1]  A

16   juror's failure to disclose that he or she suffers from a medical condition similar to the

17   plaintiff's is grounds for a new trial.  *See Tate v. Giunta*, 413 S.W.2d 200 (Mo. 1967) (trial

18   court properly granted new trial based on juror's failure to disclose he suffered from medical

19   condition similar to plaintiff's); *see also United States v. Eubanks*, 591 F.2d 513, 517 (9th Cir.

20   1979) (finding juror bias where sons of juror in heroin distribution case were heroin users and

21   had served prison sentences); *Dyer v. Calderon*, 151 F.3d 970, 981-82 (9th Cir. 1998) (finding

22   bias in murder case where juror's brother had been murdered but juror failed to reveal that

23   information during voir dire).

24   _____

25   [1] "Statements which tend to show deceit during voir dire are not barred by [Federal Rule of Civil Procedure 606(b)]," even when the improper voir dire is the basis of a motion for a new trial.  *Hard v. Burlington No. R.R.,* 812 F.2d 482, 485 (9th Cir. 1987); *see also United States v. Henley,* 238 F.3d 1111, 1121 (9th Cir. 2001).

DEFENDANT SCAPA DRYER FABRICS, INC.'S, MOTION FOR
NEW TRIAL OR, IN THE ALTERNATIVE, FOR REMITTITUR –3

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

(C07-1454 RSL)

2695941.1

1   "[P]rejudice must sometimes be inferred from the juror's relationships, conduct or life

2   experiences, without a finding of actual bias." *Dyer,* 151 F.3d at 984.  Here, however, the

3   Court need not speculate whether the juror's brain cancer establishes actual bias in favor of the

4   Plaintiffs.  The evidence shows without a doubt that the juror was in fact biased because of her

5   experience with brain cancer.  The attached Declaration of one juror confirms that this other

6   juror discussed her brain cancer during deliberations and openly sympathized with Plaintiffs

7   because of it.[2]  Her influence on the deliberations can be inferred from the unusually large sum

8   of damages the jury awarded.  Plainly, under the objective analysis required to assess implied

9   bias, this juror's personal life experience would have been grounds for granting a challenge for

10  cause.  Accordingly, the Court should grant a new trial.

11          2.      *Jurors' failure to disclose bias against Asten related to Boeing*

12  During voir dire, counsel for Asten asked the following question:

13  Again, I am from New Orleans.  My client is AstenJohnson.  They are, like
    Scapa, a manufacturer of dryer fabrics which are used in paper mills.  They are
14  based in Charleston, South Carolina.  I understand from Mr. Shaw that
    Charleston, South Carolina has been in the news of late here in Seattle.  I
15  wondered – From looking at your questionnaires a number of you have ties to
    Boeing or worked with Boeing.  Is there anything about my client being from
16  Charleston, and Charleston being in a contest with Seattle to get the new Boeing
    Dreamliner that would cause you to say, golly, there is a defendant from
17  Charleston, we need to teach those Charleston folks a lesson?

18  Williams Dec., Ex. A,  at 10/26/09, 111:24-112:10.  No jurors raised their hands in response to

19  this question.  During the trial, Boeing in fact made the decision to build its new manufacturing

20  facility in Charleston, South Carolina and not Seattle, Washington.[3]  The jurors discussed this

21  matter during deliberations, and some of the jurors wanted to send a message of anger and

22  discontent through the verdict.  As described in the juror's declaration:

23          [W]hen the jury was deciding damages[,] at one point the economic damages

24  ――――――――――
    [2] A redacted version of the juror's Declaration is filed with this motion.  Scapa fully incorporates the un-redacted
    Declaration filed under seal by co-defendant AstenJohnson.
25  [3] Scapa requests that the Court take judicial notice of this fact, which is well documented in the media. *See*
    http://online.wsj.com/article/SB10001424052748704888404574787063I024680.html

DEFENDANT SCAPA DRYER FABRICS, INC.'S, MOTION FOR
NEW TRIAL OR, IN THE ALTERNATIVE, FOR REMITTITUR –4

(C07-1454 RSL)

2695941.1

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

were listed as $700,007.   This was a direct reference to Boeing and its commercial airplane line.   One of the jurors who supported this particular calculation said something to the effect of "I wonder if they will get this?"

Williams Dec., Ex. B.  Ultimately, the jurors decided not to send the hidden message in their economic damages award, but the fact that they even contemplated it speaks volumes about their serious bias against Asten due to its geographic location.   And the jury certainly did send the message openly with its excessive $8,000,000 non-economic damages award.   Scapa will suffer as much from that hostility as Asten did – Scapa and Asten are jointly and severally liable for the excessive damage findings.   Had the jurors who were biased against Asten honestly answered the voir dire question posed by Asten's counsel, Asten would have had a valid basis for challenging those jurors for cause, and the verdict in this case would not have been tainted by geographical prejudice.   The Court should grant a new trial.

B.     Scapa Is Entitled To A New Trial Based On Jury Misconduct During Deliberations.

Separate and apart from their dishonesty during voir dire, the jurors who were biased against Defendant Asten also committed misconduct by injecting the matter of Boeing's decision to build aircraft in South Carolina into the deliberations.   The Court's instructions to the jury included this one: "You must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy."   The jurors who raised and considered the Boeing matter during deliberations violated that instruction.

"Failure by the jury to follow the court's instructions, which results in prejudice to the moving party, is a proper ground for a new trial."   *AlphaMed Pharm. Corp. v. Arriva Pharm., Inc.,* 432 F. Supp. 2d 1319, 1356 (S.D. Fla. 2006) (granting new trial in part based on jury's failure to follow court's instructions).   As discussed above, it is readily apparent that the discussion of the Boeing matter during deliberations resulted in prejudice to Asten and, by extension, to Scapa.

Also, and again separate and apart from her dishonesty during voir dire, a juror

DEFENDANT SCAPA DRYER FABRICS, INC.'S, MOTION FOR
NEW TRIAL OR, IN THE ALTERNATIVE, FOR REMITTITUR –5

(C07-1454 RSL)

2695941.1

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

committed misconduct by injecting an intense measure of sympathy into the deliberations by discussing her own experience with her brain tumor.  Jurors have a duty "not to allow emotion to overcome fact, not to allow sympathy to overcome reason, not to allow desire for result to overcome justice."  *Melandris v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 703 F.2d 1152, 1169 (10th Cir. 1981).  Accordingly, this Court's instructions to the jury admonished it not to base its decision on sympathy.  This juror plainly violated that instruction to the prejudice of Scapa, which requires a new trial.  *AlphaMed Pharm.*, 432 F. Supp. 2d at 1356.

Finally, this same juror committed misconduct by introducing an extrinsic matter – her medical condition – into the deliberations.  *See In re Hanford Nuclear Reservation Litig.*, 534 F. 3d 986, 1015 (9th Cir. 2008).  Discussing or relying on one's general personal experience during deliberations is one thing, but when that experience consists of suffering from a terminal medical condition similar to the plaintiff's, it is highly improper for a juror to inject that matter into the deliberations.  *See Grotemeyer v. Hickman,* 393 F.3d 871, 880 (9th Cir. 2004) (observing that not all personal experience "is proper grist for the deliberative mill."); *cf. Tate v. Giunta*, 413 S.W.2d 200 (Mo. 1967) (trial court properly granted new trial based on juror's failure to disclose he suffered from medical condition similar to plaintiff's).  Accordingly, the Court should grant Scapa's request for a new trial.

C.   The Court Should Have Admitted Collateral Source Evidence To Counter Mrs. Barabin's Misleading Testimony.

"Injured parties may . . . waive the protections of the collateral source rule by opening the door to evidence of collateral benefits."  *Johnson v. Weyerhauser Corp.*, 953 P.2d 800, 805 (Wash. 1998); *see also Marler v. Dept. of Ret. Sys.*, 997 P.2d 966, 971 (Wash. App. 2000).  The court of appeals in *Johnson* held that the plaintiff opened the door to evidence that his wife was receiving workers' compensation benefits by testifying that "the family did not have as much money as it used to."  *Id.*  Reversing on other grounds, the Washington Supreme Court

DEFENDANT SCAPA DRYER FABRICS, INC.'S, MOTION FOR NEW TRIAL OR, IN THE ALTERNATIVE, FOR REMITTITUR –6

(C07-1454 RSL)

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1    agreed with that ruling and held that if the plaintiff opened the door on retrial, the collateral

2    source evidence would again be admissible. *Id.*

3        Courts have long recognized that the collateral source rule should not be used as a

4    shield and that "a plaintiff's testimony on direct examination may make evidence of payments

5    from a collateral source relevant and necessary for purposes of rebuttal." *Cowens v. Siemens-*

6    *Elema AB*, 837 F.2d 817, 824 (8th Cir. 1988).  Accordingly, "when a plaintiff through either

7    the use of misleading statements or outright false statements falsely conveys to the jury that he

8    or she is destitute or in dire financial straits, the admission of evidence of collateral source

9    payments received by the plaintiff is admissible." *Kronig v. State Farm Auto. Ins. Co.*, 567

10   N.W.2d 42, 46 (Minn. 1997).

11       Here, Geraldine Barabin not only opened the door to evidence of collateral benefits, her

12   testimony made it imperative that the jury be told that Henry Barabin's medical expenses are

13   being paid by his employer and perhaps even that Plaintiffs have recovered substantial

14   settlements from others.  Mrs. Barabin misleadingly implied (i) that Mr. Barabin's healthcare

15   depends on Mrs. Barabin remaining healthy so that she can pay for his medications and

16   treatment, and (ii) that paying for Mr. Barabin's treatment could leave her destitute:

17
          My thoughts for the future are that I can keep my health and be able to take
18        care of him, and be able to pay for the necessary medications and stuff, because
          this is not a cheap illness.  It is very expensive.  And I just hope that I just don't
19        break down, and I am able to continue taking care of Henry and securing the
          proper things that I need to take care of him with.  And I just don't want to be
20        left destitute.

21   Williams Dec., Ex. A at 10/29/09, 16:9-15.

22       This is precisely the sort of misleading testimony that courts in Washington and

23   elsewhere have deemed to open the door to collateral source evidence.  *See, e.g., Fitzgerald v.*

24   *Expressway Sewerage Const., Inc.*, 177 F.3d 71, 75-76 (1st Cir. 1999) (district court properly

25   admitted collateral source evidence after accident victim's mother testified to financial strain

---

DEFENDANT SCAPA DRYER FABRICS, INC.'S, MOTION FOR
NEW TRIAL OR, IN THE ALTERNATIVE, FOR REMITTITUR –7

(C07-1454 RSL)

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1   caused by accident).  Mrs. Barabin's misleading testimony caused the jury to calculate its

2   excessive damage award based on sympathy, rather than the true facts.  Courts should not

3   accept unfair application of the collateral source rule with complacency.  *Rotolo Chevrolet v.*

4   *Superior Court* 105 Cal. App. 4th 242, 246 n.3 (2003).  Accordingly, the Court should order a

5   new trial.

6   D.   Scapa Was Unconstitutionally Deprived Of An Apportionment Of Damages.

7         Under Washington law, Scapa was not permitted to seek a fault apportionment that

8   would have resulted in Scapa paying only those damages that the jury found it actually caused.

9   *See Coulter v. Asten Group, Inc.*, 146 P.2d 444 (Wash. App. 2006) (apportionment not

10   available in cases involving asbestos-related claims).  Now that the jury has returned a verdict

11   against Scapa, the Court should hold that Washington law unconstitutionally deprived Scapa of

12   a fault apportionment and grant a new trial so that Scapa can secure that apportionment.

13         1.   Imposing joint and several liability on Scapa would violate the Equal Protection
            Clause of the United States Constitution.

14

15         Joint and several liability has been justified on the grounds that when the plaintiff

16   sustains an indivisible injury caused by multiple tortfeasors, the wrongdoers should not escape

17   liability merely because the plaintiff cannot prove which wrongdoer caused what degree or

18   portion of the injury.  *See Coulter*, 146 P.2d at 446; RESTATEMENT (THIRD) OF TORTS § 27E,

19   Reporter's Note, cmt. b (1998).  In Washington, however, most defendants are not subject to

20   joint and several liability.  Instead, they entitled to an apportionment of damages – even if they

21   contribute to cause an indivisible injury, and even if their co-tortfeasors are insolvent or

22   immune to liability.  *See* WASH. REV. CODE ANN. § 4.22.070(1).  In other words, most

23   defendants pay damages in an amount reflecting only their degree of fault as found by the jury;

24   if the plaintiff cannot be made whole because other parties who contributed to cause his

25   injuries are insolvent or immune to liability, then so be it.

DEFENDANT SCAPA DRYER FABRICS, INC.'S, MOTION FOR
NEW TRIAL OR, IN THE ALTERNATIVE, FOR REMITTITUR –8

(C07-1454 RSL)

2695941.1

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

An exception applies, however, when the injury-causing instrumentality is a "hazardous substance." *Id.* at (3)(a).  A defendant responsible for a hazardous substance that contributes to cause an injury is not entitled to an apportionment and is instead held jointly and severally liable.  *Id.*  Washington courts have held that this section of the statute applies to asbestos cases.  *See Coulter*, 146 P.2d at 446-47.  (Apparently, however, the Washington Legislature intended for it to apply to toxic waste cases.  *See* Cornelius J. Peck, *Washington's Partial Rejection and Modification of the Common Law Rule of Joint and Several Liability*, 62 WASH. L. REV. 233, 251 (1986)).  As one commentator observed shortly after the statute was enacted, the creation of this exception "will almost certainly be used to attack the constitutionality of [the statute] as a deprivation of equal protection of the law under both the United States and Washington Constitutions."  *Id.*

The Washington Legislature has arbitrarily selected a class of defendants – those responsible for hazardous substances that cause injury – and burdened them with the duty to pay all of a plaintiff's damages regardless of their degree of fault for the plaintiff's injury.  There is no rational basis for distinguishing between a defendant responsible for a hazardous substance that contributes to cause an injury and a defendant responsible for another type of dangerously-defective product or wrongful act that contributes to cause an injury.  It is entirely arbitrary to treat the two classes of similarly-situated defendants differently and to deny the protections afforded by apportionment to a defendant responsible for a hazardous substance.  The Equal Protection Clause of the Fourteenth Amendment to the Federal Constitution commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws."  *Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439 (1985).

The disparate treatment cannot be justified on the ground that some hazardous-substance tortfeasors responsible for the plaintiff's injury or disease might be non-existent or insolvent by the time the injury or disease manifests itself.  It is arbitrary to tie a defendant's

DEFENDANT SCAPA DRYER FABRICS, INC.'S, MOTION FOR NEW TRIAL OR, IN THE ALTERNATIVE, FOR REMITTITUR –9

(C07-1454 RSL)

2695941.1

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

1  liability to the solvency of his co-torfeasors.   More importantly, however, in cases not

2  involving hazardous substances, defendants are entitled to apportionment even when their co-

3  tortfeasors are insolvent or immune to liability.  *See* WASH. REV. CODE ANN. § 4.22.070(1).  If

4  defendants in other types of cases are not saddled with joint and several liability to ensure the

5  plaintiff is made whole, then neither should defendants in hazardous-substance cases – at least

6  not without a rational basis for imposing that burden on hazardous-substance defendants

7  without also imposing it on defendants who caused injury with some other type of product or

8  conduct.

9         Furthermore, the disparate treatment cannot be justified as an incentive to exercising

10 greater care with respect to hazardous or potentially-hazardous products.   Joint and several

11 liability forces a defendant to pay for *another's* carelessness – *i.e.,* conduct that it cannot

12 control.   Also, as a recent United States Supreme Court decision confirms, the disparate

13 treatment cannot be rationalized on the grounds that apportionment is impossible in cases

14 involving hazardous or toxic substances.  *Burlington N. & Santa Fe Ry. Co. v. United States,*

15 129 S.Ct. 1870 (2009) (defendants in CERCLA case not jointly and severally liable; district

16 court's apportionment of liability for a single harm was reasonable).   Finally, as applied to

17 Scapa and other "asbestos defendants," joint and several liability cannot be justified as an

18 incentive to remediation because the products in question are no longer manufactured or sold,

19 and the plaintiffs' exposures all occurred decades ago.  (And in any event, the Legislature

20 never intended the hazardous-substance exception to apply to cases of this type in the first

21 place.  *See* Peck, 62 WASH. L. REV. at 251).

22         In short, Section 4.22.070(3)(a) arbitrarily places hazardous-substance defendants at an

23 extreme disadvantage as compared to other types of similarly-situated defendants without any

24 rational basis for doing so.  Because defendants in non-hazardous-substance cases are entitled

25 to an apportionment of fault, even in cases involving an indivisible injury, and because it is

DEFENDANT SCAPA DRYER FABRICS, INC.'S, MOTION FOR
NEW TRIAL OR, IN THE ALTERNATIVE, FOR REMITTITUR –
10

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2695941.1

arbitrary to treat Scapa differently, the Court should hold that Section 4.22.070(3)(a) violates the Equal Protection Clause of the United States Constitution and grant Scapa a new trial. *See Estelle v. Dorrough*, 420 U.S. 534, 539 (1975) (Equal Protection Clause requires that, in defining class subject to legislation, distinctions that are drawn have some relevance to purpose for which classification is made); *Reed v. Reed*, 404 U.S. 71, 76 (1971) (classification must be reasonable, not arbitrary, and must rest on some ground of difference having fair and substantial relation to object of legislation, so that all persons similarly situated are treated alike).

      2.    <u>Imposing joint and several liability would deprive Scapa of its property without due process.</u>

In addition, the application of this law to asbestos cases is fraught with a unique inequity: plaintiffs can and do manipulate the process to deprive defendants of an appropriate reduction in their liability. The Washington law allows a Defendant whose liability is predicated on Section 4.22.070(3)(a) a "credit" for amounts paid in settlement by other responsible parties. In asbestos cases generally and in the present case, the plaintiff or his counsel acknowledge that non-parties' conduct was a substantial factor in causing the disease and that mesothelioma is a total-dose disease. Here, as in other cases, Plaintiff nonetheless made no effort to recover monies from many of those admittedly responsible parties. During trial, Plaintiff then asked the jury to award him the full measure of all damages proximately caused by his development of mesothelioma, including the portion of the damages attributable to non-trial defendants. This manipulation of the process renders the law per se unconstitutional as applied to asbestos cases.

Under Section 4.22.070(3)(a), a defendant has no input or control over its liability to the plaintiff for damages caused by others. The plaintiff exercises absolute control over whether to assert claims against and settle with other parties that contributed to cause his

DEFENDANT SCAPA DRYER FABRICS, INC.'S, MOTION FOR NEW TRIAL OR, IN THE ALTERNATIVE, FOR REMITTITUR – 11

1    injury.   If the plaintiff chooses not to settle with those other parties, then obviously the

2    defendant cannot obtain a settlement credit reducing the total amount of damages it must pay.

3    Plaintiffs in asbestos cases routinely abuse this prerogative to avoid any admission that parties

4    other than the target defendant contributed to cause their injuries.   And to add insult to injury,

5    when they do so, Washington law does not allow the defendant to seek contribution from those

6    other parties that caused the plaintiff's injuries.   *See Gerrard v. Craig*, 857 P.2d 1033, 1038

7    (Wash. 1993).   In short, the plaintiff exercises unfettered control over the amount of the

8    plaintiff's damages that must be paid by a defendant who contributed to cause only a portion of

9    those damages.

10          The Due Process Clause of the Fourteenth Amendment to the United States

11   Constitution is violated when a defendant can be forced to pay damages caused by another

12   without any control over the extent of its liability or the right to recoup from others responsible

13   for causing those damages.   *See Whisenant v. Brewster-Bartle Offshore Co.*, 446 F.2d 394, 403

14   (5th Cir. 1971) (indemnitor's liability cannot be established by indemnitee's unilateral act of

15   settling with plaintiff – due process requires notice and an opportunity to defend); *cf. Philip*

16   *Morris, USA v. Williams*, 549 U.S. 346 (2007) (requiring defendant to pay punitive damages

17   for harming persons not before the court amounts to a taking without due process).   Under

18   Washington law, Scapa had no opportunity to defend itself against liability imposed for the

19   injury-causing conduct of other parties, and it has no right even to *seek* reimbursement from

20   those other parties who caused the damages Scapa will be required to pay.   That is a classic

21   violation of the Due Process Clause.   "Implicit within the concept of due process is that

22   liability may be imposed on an individual only as result of that person's acts or omissions, not

23   merely because of his association with any group."   *Tyson v. New York City Housing Auth.*,

24   369 F. Supp. 513, 518 (D.C.N.Y. 1974).

25

DEFENDANT SCAPA DRYER FABRICS, INC.'S, MOTION FOR
NEW TRIAL OR, IN THE ALTERNATIVE, FOR REMITTITUR –
12

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2695941.1

1    E.    The Jury's Verdict Is Against The Great Weight Of The Evidence.

2         When a losing party moves for a new trial on insufficient evidence grounds, the district

3    court has "the duty . . . to weigh the evidence as [the court] saw it, and to set aside the verdict

4    of the jury, even though supported by substantial evidence, where, in [the court's]

5    conscientious opinion, the verdict is contrary to the clear weight of the evidence." *Murphy v.*

6    *City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990) (quoting *Moist Cold Refrigerator Co. v.*

7    *Lou Johnson Co.*, 249 F.2d 246, 256 (9th Cir. 1957)).  Here, as discussed in more detail in

8    Scapa's and Asten's Renewed Motions for Judgment as a Matter of Law, the evidence does not

9    support the jury's verdict.  Even if the Court concludes the verdict is supported by substantial

10   evidence, it should nevertheless grant a new trial because the great weight of the evidence

11   establishes that:

12   • Mr. Barabin would not have inhaled asbestos fibers from a Scapa
13     product.

14   • Mr. Barabin did not frequently and regularly worked in close proximity
       to a Scapa asbestos-containing product.

15
16   • Asbestos from a Scapa product was not a substantial factor in causing
       Mr. Barabin's disease.  (Plaintiffs' total dose theory is not supported by
       Washington law and is unsupported by the great weight of the
17     evidence).

18   • No Scapa asbestos-containing product posed a hazard to Mr. Barabin.
19     (Plaintiffs did not produce a single medical or scientific publication that
       asbestos-containing dryer felts pose a danger when used in paper mills,
20     and there was overwhelming evidence that asbestos-containing dryer
       felts do not release asbestos fibers in a quantity exceeding ambient air
21     levels.)

22   • Scapa did not owe any duty to warn about its products because they
23     were not dangerously defective or, alternatively, because Mr. Barabin
       was not exposed to any Scapa product.

24
25        For these reasons, and for the reasons discussed in Asten's motion for new trial, the

DEFENDANT SCAPA DRYER FABRICS, INC.'S, MOTION FOR
NEW TRIAL OR, IN THE ALTERNATIVE, FOR REMITTITUR –
13

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2695941.1

1   Court should order a new trial of this case on the grounds that jury's verdict is against the

2   great weight of the evidence.

3   F.      The Court Abused Its Discretion In Admitting Evidence Offered By Plaintiffs.

4           A new trial is warranted where the court's evidentiary rulings were erroneous and

5   affected the jury's verdict. *Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir.

6   1995).   Several of this Court's evidentiary rulings were erroneous and affected the jury's

7   verdict.

8           1.      The Court erred in admitting the testimony of Plaintiff's expert Kenneth Cohen

9           Before trial, the Court correctly recognized that the testimony of Plaintiff's expert

10  Kenneth Cohen was unreliable and should be excluded.  The Court's decision to reverse that

11  ruling and admit Cohen's unreliable testimony caused the jury to render an improper verdict.

12  Absent Cohen's unreliable and improper testimony, Plaintiffs would not have had any basis for

13  asserting that Mr. Barabin inhaled dryer felt fibers.  For the reasons stating in the original

14  moving papers seeking the exclusion of Cohen's testimony and in the motion for new trial filed

15  by Defendant Asten, the Court abused its discretion in admitting that testimony at trial.

16          2.      The Court erred in admitting the testimony of Plaintiff's expert Dr. Brodkin

17          The Court also abused its discretion by admitting the testimony of Plaintiffs' expert Dr.

18  Brodkin.  For the reasons stated in the defendants' original moving papers seeking exclusion of

19  Dr. Brodkin's testimony and in Defendant Asten's motion for new trial, the Court should have

20  excluded Dr. Brodkin's testimony.

21          3.      The Court erred in admitting the testimony of Plaintiff's expert Dr. Millette

22          Defendant Asten's motion for new trial amply demonstrates that Dr. Millette's testing,

23  upon which he based his testimony, was not conducted under conditions substantially similar to

24  those at the Camas mill.  "[A] court may properly admit experimental evidence if the tests were

25  conducted under conditions substantially similar to the actual conditions." *Champeau v.*

DEFENDANT SCAPA DRYER FABRICS, INC.'S, MOTION FOR
NEW TRIAL OR, IN THE ALTERNATIVE, FOR REMITTITUR –
14

1    *Fruehauf Corp.,* 814 F.2d 1271, 1278 (8th Cir. 1987) (internal citations omitted); *see also*

2    *Hinds v. General Motors Corp.,* 988 F.2d 1039, 1048 (10th Cir. 1993); *Smith & Wesson v.*

3    *United States,* 782 F.2d 1074, 1083 (1st Cir. 1986).   Here, the dissimilarity was so great as to

4    have been dispositive in determining the outcome of Dr. Millette's testing.   In a case like this,

5    where "the circumstances of the [incident], as alleged, are so different from [the] test as to

6    make the results largely irrelevant if not misleading," a new trial is warranted.   *Gladhill v. Gen.*

7    *Motors Corp.,* 743 F.2d 1049, 1051-52 (4th Cir. 1984).

8          4.    The Court erred in permitting Plaintiffs to present their every fiber/total dose
               theory

9

10         Defendant Asten's arguments concerning Plaintiffs' every fiber/total dose theory apply

11   equally to Scapa.   The Court erred in permitting Plaintiffs to present that theory.   Absent any

12   quantitative evidence of levels of asbestos released from a Scapa asbestos-containing dryer felt

13   in the Camas mill, Plaintiffs' experts Dr. Brodkin and Mr. Cohen were permitted to offer vague

14   opinion testimony that "qualitatively" the exposures from dryer felts were significant

15   exposures of Mr. Barabin.   *See, e.g.,* Williams Dec., Ex. A at 11/3/09, 53:2-10.   "Qualitative

16   exposure" is merely an imprecise term that permits plaintiffs to dilute the causation

17   requirements necessary to prove proximate cause.

18         5.    The Court erred in admitting certain documents:

19         The Court should not have admitted into evidence: (i) Asbestos Textile Institute

20   ("ATI") documents (exhibits 221, 222, 230, 240, 241, 245, 250, 251, 254, 255, 256, 261, 262,

21   264, 279, 283, and 285); (ii) Asten corporate documents, including documents pertaining to

22   plant conditions in Asten manufacturing facilities (320, 321, 323, 324, and 354); and (iii) Scapa

23   corporate documents (exhibits 482, 557, 675, ).   As explained in Asten's motion for new trial,

24   the ATI documents were not relevant, and their prejudicial effect outweighed any probative

25   value.   The Asten corporate documents were not relevant to Plaintiffs' claims against Scapa

DEFENDANT SCAPA DRYER FABRICS, INC.'S, MOTION FOR
NEW TRIAL OR, IN THE ALTERNATIVE, FOR REMITTITUR –
15

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2695941.1

1    and should have been excluded for the reasons asserted by Asten.  Finally, the Scapa corporate

2    documents pertaining to plant conditions in Scapa facilities also were not relevant.  Conditions

3    in Scapa manufacturing facilities, where raw asbestos was used to produce a finished product,

4    were entirely dissimilar to conditions in the Camas mill and had no probative value regarding

5    Mr. Barabin's work experience.   Any relevance these plant conditions documents had was

6    outweighed by their prejudicial effect.  FED. R. EVID. 403.   Further, these documents were

7    cumulative of the interrogatory responses read into the record by Plaintiffs' counsel.  Williams

8    Dec., Ex. A at 11/5/09, 119:11-120:20.

9    G.      The Court Erroneously Charged The Jury.

10           A new trial should be granted when the court's charge is misleading or misstates the

11   law.  *See Martin v. California Dept. of Veterans Affairs*, 560 F.2d 1042, 1046 (9th Cir. 2009).

12   Here, a new trial is necessary because the Court:

13           • did not correctly instruct the jury on substantial factor causation;

14           • did not include a state of the art component in its strict liability instruction;

15           • erroneously instructed the jury that there was a continuing duty to warn; and

16           • failed to include an exposure question on the verdict form.

17   These complaints were timely raised at trial, and Defendants fully advised the Court of the

18   factual and legal bases for their complaints.  As explained in more detail in Defendant Asten's

19   motion for new trial, these errors in the charge were reasonably calculated to and probably did

20   cause the jury to return an improper verdict.  Given the paucity of evidence supporting the

21   Plaintiffs' claims, the jury would have reached a defense verdict had it been properly

22   instructed.  Accordingly, the Court should grant a new trial.

23   H.      Plaintiffs' Counsel Made An Improper Argument To The Jury.

24           Fairness to the parties and our system of justice dictates that "there must be limits to

25

DEFENDANT SCAPA DRYER FABRICS, INC.'S, MOTION FOR
NEW TRIAL OR, IN THE ALTERNATIVE, FOR REMITTITUR –
16

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2695941.1

1    pleas of pure passion and there must be restraints against blatant appeals to bias and prejudice."

2    *Draper v. Airco, Inc.*, 580 F.2d 91, 95 (3d Cir. 1978).  The introduction of purely emotional

3    elements into the jury's deliberations is prohibited conduct.  *Smith v. K-Mart Corp.*, 177 F.3d

4    19, 26 (1st Cir. 1999).  During closing arguments, Plaintiffs counsel declared:

5            They [the Barabins] are part of the many people that these defendants have been
             hurting and killing over the years, and they are no different.

6    Williams Dec., Ex. A at 11/16/09, 62:20-22.

7            That statement suggested to the jury that Scapa acted with a degree of calculated

8    intentional malevolence – a suggestion that had no foundation in this trial on negligence and

9    strict liability.  This was an improper appeal to the jury's passions.  *See Marcoux v. Farm Serv.*

10   *& Supplies, Inc.*, 290 F. Supp. 2d 457, 471 (S.D.N.Y. 2003).  In effect, Plaintiffs' counsel was

11   urging the jury to send Scapa a message, which is clearly improper in a case where punitive

12   damages are not in issue.  *Nice v. ZHRI, Inc.*, 105 F. Supp. 2d 1028, 1029 (E.D. Ark. 2000).

13           Moreover, the statement improperly went outside the record by referring to Scapa

14   killing and hurting others, *i.e.*, nonparties, when there was no evidence of such, and it

15   improperly encouraged the jury to render a verdict that would punish Scapa for injuries it had

16   allegedly inflicted on *others*.   Given the United States Supreme Court's holding that a

17   defendant may not be forced to pay punitive damages for harm caused to strangers to the

18   litigation, that argument was clearly improper.  *See Philip Morris, USA v. Williams*, 549 U.S.

19   346 (2007).  The jury's excessive damages award indicates that the jurors did in fact base their

20   verdict on a misguided desire to punish the defendants.  For all of these reasons, the Court

21   should order a new trial.

22   I.      The Damages Awarded By The Jury Are Excessive.

23           Federal law determines the procedural question of whether a court, sitting in diversity,

24   should grant a new trial based on excessive damages.  *Lowe v. General Motors Corp.*, 624 F.2d

25

DEFENDANT SCAPA DRYER FABRICS, INC.'S, MOTION FOR          **Williams, Kastner & Gibbs PLLC**
NEW TRIAL OR, IN THE ALTERNATIVE, FOR REMITTITUR –         601 Union Street, Suite 4100
17                                                          Seattle, Washington 98101-2380
                                                            (206) 628-6600

2695941.1

1373, 1383 (5th Cir. 1980); *see also Galard v. Johnson*, 504 F.2d 1198, 1200, n. 1 (7th Cir. 1974). The Ninth Circuit has identified three instances where a jury's damage award should be reduced: (i) where the amount is grossly excessive or monstrous; (ii) where the evidence clearly does not support the damage award; and (iii) where the award could only have been based on speculation or guesswork. *In re First Alliance Mortgage Co.*, 471 F.3d 977, 1001 (9th Cir. 2006). To remedy an excessive verdict, a court may grant the defendant's new trial motion or deny the motion, conditional on the plaintiff accepting a remittitur. *Morgan v. Woessner*, 997 F.2d 1244, 1258 (9th Cir. 1993); *Fenner v. Dependable Trucking Co., Inc.*, 716 F.2d 598 (9th Cir. 1983).

The doctrine of remittitur recognizes that, although it is within the jury's discretion to compute damages, there is an upper limit, and whether that limit has been surpassed is a question of law, not fact. *Mazcyk v. Long Island R. Co.*, 896 F. Supp. 1330, 1336 (E.D.N.Y. 1995). A jury "may not abandon analysis for sympathy for a suffering plaintiff and treat an injury as though it were a winning lottery ticket." *Scala v. Moore McCormack Lines, Inc.*, 985 F.2d 680, 684 (2d Cir. 1993). Thus, for example, in *Tillman v. Freightliner, LLC*, 247 Fed. Appx. 867, 2007 WL 2298037 (9th Cir. 2007), the Ninth Circuit held that a jury's damage award in a product liability case was excessive and ordered the district court to reduce the damages for future non-economic damages to $3.85 million. *Id.* at *2. "This sum approaches the pro rata amounts awarded to the plaintiffs in a case involving murder rather than accidental death." *Id.* (citing O.J Simpson case in which two plaintiffs were awarded total of $8.5 million).

In evaluating the damages awarded in a particular action, courts properly may look to awards in other cases to plaintiffs with similar injuries as a point of reference by which to gauge the appropriateness of the award. *D'Amato v. Long Island R. Co.*, 874 F. Supp. 57, 59 (E.D.N.Y. 1995). Damage awards by Washington juries in other mesothelioma cases will

DEFENDANT SCAPA DRYER FABRICS, INC.'S, MOTION FOR NEW TRIAL OR, IN THE ALTERNATIVE, FOR REMITTITUR – 18

1   assist this Court in fixing a point of reference for this case.  Of the 117 asbestos injury cases

2   tried in Washington in the past twenty-seven years, fifty-three have resulted in a verdict for the

3   Plaintiff.[4]  The highest verdict reached by the jury was for $1,700,000 in the King County case

4   of *Henderson v. Fraser's Broiler Service, Inc.*, Cause No. 01-1-02403-5-SEA, a living

5   mesothelioma case where the plaintiff testified to direct exposure to the defendant's products.[5]

6   The only previous verdict in Washington against a dryer felt defendant was for at total amount

7   of $242,500, with AstenJohnson assessed 5% liability and the plaintiff 2% liability.  *Coulter v.*

8   *ACandS, Inc.*, Cause No. 01-2-34675-0 SEA.[6]

9          The jury's award in this matter of $10.2 million dollars is 42 times higher than the

10  highest amount ever awarded in Washington to a plaintiff claiming exposure from an asbestos-

11  containing dryer felt (*Coulter*), and almost ten times the highest amount ever awarded in

12  Washington for an asbestos-related claim.  The jury's verdict is shockingly excessive as a

13  matter of prior Washington verdicts in asbestos matters.  Indeed, the verdict's size suggests that

14  the jury calculated its award based on both geographical prejudice against Asten, the sympathy

15  aroused by the juror's discussion of her own cancer ordeal, and Mrs. Barabin's misleading

16  testimony about her fear of being left "destitute."  Accordingly, the Court should grant this

17  motion for new trial or, in the alternative, deny it conditioned upon the Plaintiffs accepting a

18  remittitur of damages to a reasonable amount selected by this Court.

19              IV.  <u>ADOPTION OF DEFENDANT ASTEN'S MOTION</u>

20         Scapa specifically adopts and incorporates by reference Defendant Asten's motion for

21  new trial.

22

23

24  ─────────────────
[4] *See* Declaration of G. William Shaw in Support of AstenJohnson, Inc.'s Motion for a New Trial.

25  [5] *Id.*
    [6] *Id.*

DEFENDANT SCAPA DRYER FABRICS, INC.'S, MOTION FOR       **Williams, Kastner & Gibbs PLLC**
NEW TRIAL OR, IN THE ALTERNATIVE, FOR REMITTITUR –      601 Union Street, Suite 4100
19                                                       Seattle, Washington 98101-2380
                                                         (206) 628-6600

2695941.1

V. <u>CONCLUSION</u>

This Court has the power to grant a new trial based on its appraisal of the fairness of the initial trial and the reliability of the jury's verdict. *Gray v. Bicknell*, 86 F.3d 1472, 1480 (8th Cir. 1996); *see also United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir. 1999). The Court has broad discretion in granting a new trial, *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36, 101 S.Ct. 188, 190-191 (1980), and can grant a new trial to prevent a miscarriage of justice. *Consolo v. George*, 58 F.3d 791, 795 (1st Cir. 1995). There has been a serious miscarriage of justice in this case, and Scapa respectfully urges the Court to grant this Motion for New Trial and award Scapa any other relief to which it is justly entitled.

DATED this 18th day of December, 2009.

<u>s/Lisa C. Williams, WSBA #35446</u>
Attorney for Defendant Scapa Dryer Fabrics, Inc.
WILLIAMS, KASTNER & GIBBS PLLC
601 Union Street, Suite 4100
Seattle, WA 98101-2380
Telephone: (206) 628-6600
Fax: (206) 628-6611
Email: lwilliams@williamskastner.com

*Of Counsel:*
H. Lane Young (*Pro Hac Vice*)
M. Elizabeth O'Neill (*Pro Hac Vice*)
Hawkins & Parnell, LLP
4000 SunTrust Plaza
303 Peachtree Street N.E.
Atlanta, Georgia 30308-3243
Telephone:   (404) 614-7400
Facsimile:   (404) 614-7500
Email: lyoung@hplegal.com
Email: eoneill@hplegal.com
Attorneys for Scapa Dryer Fabrics, Inc.

DEFENDANT SCAPA DRYER FABRICS, INC.'S, MOTION FOR
NEW TRIAL OR, IN THE ALTERNATIVE, FOR REMITTITUR –
20

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2695941.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 18, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Cameron Carter | G. William Shaw |
| Jane Vetto | Kirkpatrick & Lockhart |
| Brayton ☐ Purcell | Preston Gates  Ellis, LLP |
| Columbia Square Building | 925 Fourth Ave., Suite 2900 |
| 111 SW Columbia Street, Suite 250 | Seattle, WA  98104 |
| Portland, OR  97201 | bill.shaw@klgates.com |
| ccarter@braytonlaw.com | ***Attorneys for AstenJohnson, Inc.*** |
| jvetto@braytonlaw.com | |
| ***Attorneys for Plaintiffs*** | |

DATED this 18th day of December, 2009.

s/Lisa C. Williams
Lisa C. Williams, WSBA #35446
Attorney for Defendant Scapa Dryer Fabrics, Inc.
Williams Kastner & Gibbs PLLC
601 Union Street, Suite 4100
Seattle, WA 98101-2380
(206) 628-6600
(206) 628-6611
lwilliams@williamskastner.com

DEFENDANT SCAPA DRYER FABRICS, INC.'S, MOTION FOR NEW TRIAL OR, IN THE ALTERNATIVE, FOR REMITTITUR – 21

**Williams, Kastner & Gibbs PLLC**
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
(206) 628-6600

2695941.1