Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HENRY BARABIN and GERALDINE BARABIN,<br><br>                         Plaintiffs,<br><br>    v.<br><br>ALBANY INTERNATIONAL CORP.; ASTENJOHNSON, INC., et al.,<br><br>                     Defendants. | No. C07-1454<br><br>DEFENDANT ASTENJOHNSON'S MOTION FOR NEW TRIAL OR IN THE ALTERNATIVE FOR A REMITTITUR<br><br>NOTE FOR MOTION CALENDAR: MOTION DATE: **January 8, 2010**<br><br>**ORAL ARGUMENT REQUESTED** |

AstenJohnson, Inc. ("Asten"), pursuant to Fed. R. Civ. P. 59, moves this Court for a new trial, or, in the alternative, for a remittitur.

## I.     Introduction.

To suggest that there is a paucity of evidence to support this verdict would be to grossly overestimate the evidence actually presented to the jury upon which it could possibly have relied to support the verdict against the defendants. Totally distinct from the shocking dollar award, a new trial is compelled because of the total lack of evidence provided to the jury on the primary issues in the case, including whether Mr. Barabin was actually exposed to any asbestos-containing dryer felts which AstenJohnson sold to the paper mill and whether, as

ASTEN MOTION FOR NEW TRIAL - 1
Case No. C07-1454

K:\2038878\00554\20514_GWS\20514P28BL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

used in the paper mill, those dryer felts emitted asbestos fibers that he could have breathed. Further, it was obvious from Mr. Barabin's testimony and the testimony of other witnesses that the cause of Mr. Barabin's disease was his substantial exposure to amphibole asbestos fibers during the course of his work at the Texaco Refinery in Port Arthur, Texas, which exposure coincided almost precisely with the latency period for his development of mesothelioma.  In order for the jury to find Asten liable, it essentially had to ignore the totality of the evidence presented at trial and, based on speculation and conjecture, conclude that if Mr. Barabin worked where asbestos-containing dryer felts may have been present then that was an adequate and sufficient basis for imposing liability.

In addition to the lack of evidence to support the verdict, as a result of jury misconduct extraneous prejudicial information was injected into the deliberative process, inflaming the jury against Asten and resulting in a grossly inflated award.

Technically, there are clear omissions of evidence on elements required to be proven by plaintiffs in order to recover. It is more than apparent that the great weight of the evidence completely undercuts plaintiffs' right to recovery in this case. Most importantly, however, a correctable injustice has occurred.  Anyone who assessed the testimony and evidence presented to this jury had to be shocked (and Asten respectfully submits that it was shocked) that the jury found Asten liable to plaintiffs and did so with a verdict that evidenced the jury's misguided prejudice and passion. How could the jury rely upon (1) an expert (Dr. Millette) who tested dryer felts but whose tests had no applicability to the paper mill where Mr. Barabin worked (per the Court's explicit instruction); (2) an expert who had no expertise on the subject of this case (Mr. Cohen); and, (3) an expert who contends that one does not have to know whether asbestos is emitted from a product or, if so, in what quantities in order to

ASTEN MOTION FOR NEW TRIAL - 2
Case No. C07-1454

K:\2038878\00554\20514_GWS\20514P28BL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

opine that it has a causative relationship to asbestos-related disease (Dr. Brodkin)?  These are not questions; they are the answers to the question of whether the great weight of the evidence requires a new trial. Certainly, if the jury paid any attention to the totality of the evidence offered at trial, the only reasonable conclusion it could have reached is (1) that Mr. Barabin's disease was caused by exposures to amphibole asbestos, not chrysotile as used in Asten asbestos-containing dryer felts; and, (2) that Mr. Barabin's disease was not caused by asbestos-containing dryer felts because there was no proof he was exposed to dryer felts, because there was no proof that dryer felts emitted respirable asbestos fibers in use in the paper mill, and because the maximum possible exposure from dryer felts was ambient level exposure, which defendants' and plaintiffs' experts all agreed was not a substantial factor in causing anyone's mesothelioma.

To prevent a miscarriage of justice, the totality of the circumstances in this case requires the Court to grant a new trial, or as argued in separate motions, to enter judgment in favor of defendants and against plaintiffs. Alternatively, were the Court to reject all of Asten's arguments in this regard, the Court should grant a substantial remittitur of the grossly excessive award of damages to plaintiffs.

Pursuant to Fed. R. Civ. P. 59, this Court has the power to grant a new trial based on its appraisal of the fairness of the initial trial and the reliability of the jury's verdict. *Gray v. Bicknell*, 86 F.3d 1472, 1480 (8th Cir. 1996).  This Court has broad discretion in granting a new trial.  *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36, 101 S.Ct. 188, 190-191 (1980), and can grant a new trial to prevent a miscarriage of justice.  *Consolo v. George*, 58 F.3d 791, 795 (1st Cir. 1995).  This Court may grant a new trial if "the verdict is contrary to the clear weight of the evidence, or is based on evidence which is false, or to prevent, in the

ASTEN MOTION FOR NEW TRIAL - 3
Case No. C07-1454

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

sound discretion of the trial court, a miscarriage of justice." *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir. 1999). Asten respectfully requests a new trial on six distinct grounds: (1) juror misconduct, (2) the jury verdict was against the great weight of the evidence, (3) improper evidentiary rulings, (4) incorrect jury charges, (5) improper and inflammatory argument of plaintiffs' counsel, and (6) unconstitutional deprivation of apportionment of damages. In the alternative, Asten moves for a remittitur of the excessive verdict.

## II.   Asten is Entitled to a New Trial Because of Juror Misconduct.

Juror misconduct occurred during trial that was so prejudicial to Asten that a new trial is mandated. During voir dire, counsel for Scapa asked the following question:

> Q.   I need to find out, just like I talked to Ms. Maghie, is there anybody here that has had any experience with cancer in your life? I am not going to go into the details about it, but a close friend, a relative, perhaps yourself, has had an experience with cancer that you feel like, when you start hearing about someone suffering from cancer and getting chemotherapy, and having the symptoms and problems that go along with that, that you are going to be so overwhelmed, feeling for the plaintiff, that you are just going to say, I really feel like Mr. Barabin should get some money no matter what? Anybody have any experience like that?

(10/26/09 107:7-17)[1].

Only potential jurors Nos. 8, 3, 9, 23, 17 and 33 responded by raising their hands. *Id.* at pp. 107-10. One potential juror did not raise her hand. The potential juror also did not raise her hand when the following question was later asked by counsel for Asten:

> All I am asking you all is to look in your hearts and to say, is there anything about my experiences or what I know that makes me believe that Asten is starting behind, and they are not going to catch up? And if there is, if you will let me know I would appreciate it, because the last thing any of us wants is to go through -- including yourself, to go through four weeks of trial,

---

[1] Copies of the trial transcript pages are attached as lettered exhibits to the 4th Declaration of G. William Shaw. Each witness or proceeding is a separate lettered exhibit. Voir Dire - Ex. A.

ASTEN MOTION FOR NEW TRIAL - 4
Case No. C07-1454

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

listen to all the evidence, and then disregard it because you had some preconceived notions that overruled it.
Is there anybody right now who says, you know, I have looked into my heart, I really don't think I can listen to the evidence and be objective?  Good.  I am glad to hear that.

(10/26/09 112:22-113:8).

That potential juror was ultimately selected to hear the case and what she failed to disclose during voir dire, but shared with the other jurors during jury deliberation, mandates that Asten receive a new trial in this case.

The Juror Declaration filed under seal with this motion avers that the juror who did not raise her hand during jury deliberations revealed to the other jurors that she has a terminal brain tumor and knows what it is like to have a terminal condition.  Juror Declaration, ¶ 6. Had that information been properly conveyed in voir dire, Asten could have followed up with that juror, and attempted to elicit information for a cause challenge or to assess whether one of its peremptory challenges should be used on that juror.  Because the juror did not answer the question, Asten lost the opportunity to discover the juror's bias on this issue.

Also during voir dire, counsel for Asten asked the following question:

Again, I am from New Orleans.  My client is AstenJohnson.  They are, like Scapa, a manufacturer of dryer fabrics which are used in paper mills.  They are based in Charleston, South Carolina.  I understand from Mr. Shaw that Charleston, South Carolina has been in the news of late here in Seattle.  I wondered – From looking at your questionnaires a number of you have ties to Boeing or worked with Boeing.  Is there anything about my client being from Charleston, and Charleston being in a contest with Seattle to get the new Boeing Dreamliner that would cause you to say, golly, there is a defendant from Charleston, we need to teach those Charleston folks a lesson?

(10/26/09 111:24-112:10).

After no juror raised his or her hand, Asten's counsel stated:  "Glad to hear."  The prospective jurors' silence reasonably led Asten's counsel to conclude that no follow-up questioning was necessary and that the no member of the jury would, in fact, hold this fact

ASTEN MOTION FOR NEW TRIAL - 5
Case No. C07-1454

K:\2038878\00554\20514_GWS\20514P28BL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

against Asten.[2]  The Juror Declaration, however, tells a different tale:

> The issue of Boeing moving the 787 production line to South Carolina and that one of the defendants in this case was head-quartered in South Carolina must have been in the jury's mind during deliberations.  In fact when the jury was deciding damages at one point the economic damages were listed as $700,007.  This was a direct reference to Boeing and its commercial airplane line.  One of the jurors who supported this particular calculation said something to the effect of "I wonder if they will get this?"

Juror Declaration, ¶ 7.

Although the hidden message was ultimately removed from the jury's verdict, *Id.* at ¶ 8, it is clear members of the jury intended to send, via their verdict, an improper message to the city of Charleston, to Asten, or to both.   These members of the jury simply refused to answer Asten's counsel's question honestly and did not reveal bias against Asten because it was based in Charleston.

Two types of juror misconduct occurred in this case.  First, the Juror Declaration demonstrates that certain jurors did not completely and truthfully answer questions during voir dire.  Had they answered these questions completely and truthfully, they would have been excused for cause.  Second, the Juror Declaration further demonstrates that extraneous prejudicial information extrinsic to the evidence adduced at trial was injected into the jury deliberations, and that such information could reasonably have affected the jury's verdict.  Independently, each of these instances of juror misconduct merits a new trial, taken together, it is clear a new trial is mandated.

>    **A.    Asten is Entitled to a New Trial Because Jurors Failed to Completely and Truthfully Respond to Questions in Voir Dire.**

Voir dire is a fundamental component of any jury trial.  However, without the honest participation of all potential jurors, voir dire cannot achieve its goals.  The Ninth Circuit has noted:

> In most situations, voir dire, the method we have relied on since the beginning, should suffice to identify juror bias.  This is because truthful disclosure of

---

[2] Boeing awarded the contract to Charleston on October 28, 2009, the day that Mr. Barabin testified.  It was the headline story on the front page of the <u>Seattle</u> <u>Times</u>.

ASTEN MOTION FOR NEW TRIAL - 6
Case No. C07-1454

K:\2038878\00554\20514_GWS\20514P28BL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

information during voir dire sets up a challenge for cause (or in less clear-cut cases, a peremptory challenge) that can be exercised before resources are devoted to trying a case to verdict.  Cause challenges lie for implied (or presumed) bias as well as for actual bias.  Honesty is at the heart of the jury-selection process in an adversarial system; indeed, voir dire means to speak the truth.  The whole point of the voir dire process is to elicit information from the venire that may shed light on bias, prejudice, interest in the outcome, competence and the like so that counsel and the parties may exercise their judgment about whom to seat and whom to challenge.

*Fields v. Brown*, 431 F.3d 1186, 1196-97 (9th Cir. 2005) (citations and quotations omitted).

Unfortunately, as detailed above, several jurors did not answer the questions posed to them in voir dire, thereby subverting the voir dire process.  Asten never had the chance to question these jurors about answers that certainly would have led to follow-up questions.  As a result, Asten could not fully and critically evaluate both its challenges for cause and peremptory challenges.

"Challenges for cause are the means by which partial or biased jurors should be eliminated.  To disqualify a juror for cause requires a showing of either actual or implied bias[.]"  *United States v. Gonzalez*, 214 F.3d 1109, 1112 (9th Cir. 2000).  Because the jurors did not truthfully and fully answer the voir dire questions, there is no evidence in the transcript by which to assess actual bias.  The Ninth Circuit has "found implied bias in cases where the juror in question has had some personal experience that is similar or identical to the fact pattern at issue in the trial or where the juror is aware of highly prejudicial information about the defendant."  *Id.* at 1112 (citing *Tinsley v. Borg*, 895 F.2d 520, 527 (9th Cir. 1990).  For example, the Ninth Circuit found bias where the sons of a juror in a heroin distribution case were heroin users and had served prison sentences.  *United States v. Eubanks*, 591 F.2d 513, 517 (9th Cir. 1979).  Similarly, in *Dyer v. Calderon*, the Ninth Circuit found bias in a murder case where a juror's brother had been murdered, but the juror failed to reveal that information during voir dire because she did not believe the information to be relevant.  151 F.3d 970, 981-82 (9th Cir. 1998); *see also Tinsley* at 527-29 (cataloging implied bias cases); *Gonzalez* at 1113 n.4 (same).

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Here, the juror with the terminal brain tumor knew that her tumor, like Mr. Barabin's tumor, was terminal.  Under the objective analysis required to assess implied bias, it is clear the juror's personal life experience, had it been revealed instead of concealed, would have been grounds for granting a challenge for cause.

In assessing claims of juror misconduct for purposefully withholding information during voir dire, the Ninth Circuit employs a two-part test:  "(1) whether 'a juror failed to answer honestly a material question on voir dire'; and (2) whether 'a correct answer would have provided a valid basis for a challenge for cause.'"  *Price v. Kramer*, 200 F.3d 1237, 1254 (9th Cir. 2000) (quoting *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556, 104 S. Ct. 845, 78 L.Ed.2d 663 (1984)).  Both criteria are met in this case and the Court should grant Asten a new trial as a result.

**B.      Asten is Entitled to a New Trial Because a Juror Injected Extrinsic Evidence into Jury Deliberations.**

"A defendant is entitled to a new trial when the jury obtains or uses evidence that has not been introduced during trial if there is a <u>reasonable possibility</u> that the extrinsic material <u>could have affected</u> the verdict."  *United States v. Keating*, 147 F.3d 895, 900 (9th Cir. 1998) (quotations omitted) (emphasis added) (citing *Dickson v. Sullivan*, 849 F.2d 403, 405 (9th Cir. 1988) (quoting *Marino v. Vasquez*, 812 F.2d 499, 504 (9th Cir. 1987)).  This principle applies with equal force in civil cases.  *Rinker v. City of Napa*, 724 F.2d 1352, 1354 (9th Cir. 1983) (per curiam) (reliance on criminal cases is appropriate because the "integrity of the jury system is no less to be desired in civil cases.") (quotation and citation omitted).  This court must conduct an objective inquiry, but "need not ascertain whether the extrinsic evidence <u>actually</u> influenced any specific juror."  *Id.* at 902 (emphasis in original).

Extrinsic evidence need not involve the introduction of evidence, but may also constitute extraneous prejudicial information.[3]  *See, e.g.*, *United States v. Madrid*, 842 F.2d

---

[3] A juror may testify about (1) whether extraneous prejudicial information was improperly

ASTEN MOTION FOR NEW TRIAL - 8
Case No. C07-1454

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1090, 1093 (9th Cir. 1988); *United States v. Rosenthal*, 454 F.3d 943, 949-951 (9th Cir. 2006).  For example, in *Hard v. Burlington N. R.R.*, the Ninth Circuit concluded that a juror's introduction of personal experiences bearing on issues in the case were considered extrinsic and could be used to impeach a jury's verdict.  812 F.2d 482, 486 (9th Cir. 1986).   In determining whether the defendant reasonably could have suffered prejudice as a result of juror misconduct, great weight is given to the conclusion that extraneous prejudicial information was injected into the deliberations.  *Sassounian*, 230 F.3d at 1109 (9th Cir. 2000).  Moreover, since the evidence is extrinsic, there is a rebuttable presumption that a new trial is required, and <u>plaintiffs</u>, not Asten, have "the burden of showing beyond a reasonable doubt that extrinsic evidence did not contribute to the verdict."  *Keating* at 902-03 (listing factors court considers in determining whether party has met its burden under the "reasonable possibility" standard).

Here, the Juror Declaration demonstrates one of the jurors talked about her own brain tumor, describing it as terminal and further adding that "no amount of money makes it easier." Juror Declaration, ¶ 6.  This information was clearly extraneous prejudicial information injected into the deliberations to engender sympathy for plaintiffs.[4]   The juror effectively became an expert on how a terminal condition affects one's life.  Faced with the comments of that juror concerning her brain tumor, the remaining jurors were clearly in the position where a rejection of the plaintiffs' claimed pain and suffering would also have been a rejection of a fellow juror's.   Unfortunately, this information compromised the integrity of jury

---

brought to the jury's attention,  [and] (2) whether any outside influence was improperly brought to bear upon any juror…"  Fed. R. Evid. 606(b); *See also Hard v. Burlington N. R.R. Co.*, 870 F.2d 1454, 1461 (9th Cir. 1989) ("*Hard II*").

[4] The prejudice remains even if the juror did not have a brain tumor, but misrepresented that she did during deliberations to garner sympathy for the plaintiffs.

ASTEN MOTION FOR NEW TRIAL - 9
Case No. C07-1454

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    deliberations to the very substantial prejudice of Asten.

2         Washington state law, while not controlling, is also instructive on this issue.  Under

3    Washington law, the trial court has broad discretion in deciding if a new trial should be

4    granted because of juror misconduct.  *Lockwood v. AC&S, Inc.*, 109 Wn.2d 235, 265, 744

5    P.2d 605 (1987) (citing *Gardner v. Malone*, 60 Wn.2d 836,840, 376 P.2d 651 (1962)).  When

6    a juror places before the jury evidence which has not been introduced at trial, the trial court

7    must review the extraneous prejudicial information and decide if it probably had a prejudicial

8    effect on the minds of the other jurors.  *Id*. (citing *Gardner* at 840). If, <u>after considering all of</u>

9    <u>the pertinent record</u>, the trial court decides that it is reasonably doubtful whether the improper

10   conduct affected the amount of the verdict or the decision of any material issue, it should set

11   aside the verdict and grant a new trial.  *Id.* (citing *Gardner* at 846, 376 P.2d 651 and

12   *Halverson v. Anderson*, 82 Wn.2d 746, 752, 513 P.2d 827 (1973) (emphasis added).

13

14        In a case with similar circumstances of juror misconduct, a juror withheld material

15   information during voir dire and then injected the information into deliberations.  *State v.*

16   *Johnson*, 137 Wn.App. 862, 155 P.3d 183 (2007).  The Washington Court of Appeals found

17   that the juror's "injection on nondisclosed information into deliberations illustrated that she

18   could not be objective about the case at hand—the precise danger voir dire is designed to

19   prevent.  Because of the juror's actions, Johnson was denied the protection voir dire offers to

20   preserve jury impartiality."  *State v. Johnson*, 137 Wn.App. at 869.  The court went on to hold

21   (under a test similar to the Ninth Circuit's), that the defendant "was also likely prejudiced by

22   the injection of [the juror's] personal undisclosed information into deliberations."  *Id.*

23   Because it was impossible to know why the juror injected the information into the

24   deliberations, the court employed an objective standard and noted that her comments were

25   "injected to generate sympathy for the victim."  The court went on to note that regardless of

26

ASTEN MOTION FOR NEW
TRIAL - 10
Case No. C07-1454

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

what was the purpose of injecting information into the deliberations, "it seems quite likely that her comment gave greater credibility and sympathy" to the prosecutor's witness. *Id.* Ultimately, the court reversed the trial court and granted a new trial noting that the "misconduct prejudiced Johnson because it deprived him of an impartial jury and a fair trial." *Id.*

## C. Asten is Entitled to an Evidentiary Hearing Should the Court Determine the Juror Declaration Alone is Insufficient to Mandate a New Trial.

Should the Court determine that the Juror Declaration standing alone is insufficient to mandate a new trial, the Juror Declaration clearly indicates that a juror "either failed to respond or answer in a manner" that revealed she had an terminal brain tumor during voir dire. Accordingly, the Court should conduct an evidentiary hearing into the manner. *See, e.g.*, *Hard I*, 812 F.2d at 484 (9th Cir. 1986) ("While we agree with the court that the reporter's transcript fails to demonstrate dishonesty by Fraser, when it is considered in light of the juror affidavits there exists a possibility of dishonesty which is sufficient to make the failure to have conducted an evidentiary hearing an abuse of discretion."); *Tinsley*, 895 F.2d at 524 ("The remedy for allegations of juror partiality is a post trial hearing in which the defendant has the opportunity to prove bias.") (citing *Smith v. Phillips*, 455 U.S. 209, 217, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982)); *see also Tinsley* at 528 ("In cases where a juror's answers make thorough voir dire impossible, a post-trial hearing should accomplish the same result.") (citing *McDonough*, 464 U.S. at 556); *Johnson*, 155 P.2d at 186-87 (2007) ("When a juror withholds material information during voir dire and then later injects that information into deliberations, the court must inquire into the prejudicial effect of the combined, as well as individual, aspects of the juror's misconduct.").

In *Hard I*, the Ninth Circuit reversed the trial court's refusal to consider juror affidavits submitted by the party requesting a new trial, holding "[s]tatements which tend to show deceit during voir dire are not barred by" Fed. R. Evid. 606(b)." *Id.* at 485 (citations

ASTEN MOTION FOR NEW
TRIAL - 11
Case No. C07-1454

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1   omitted).  In addition, the Ninth Circuit stated:  "While it is not always an abuse of discretion

2   to fail to hold an evidentiary hearing when faced with allegations of juror misconduct, <u>it is</u>

3   <u>preferable that a hearing be held</u>."  *Hard I* at 485 (citations omitted) (emphasis added).  In

4   assessing whether a hearing should be held, the court must "be guided by the content of the

5   allegations, the seriousness of the alleged misconduct or bias, and the credibility of the source

6   in determining whether a hearing must be held."  *Id.*  Here, the allegations contained in the

7   Juror Declaration are serious enough to warrant, at the very least, an evidentiary hearing into

8   whether Asten can "establish the need for a new trial."  *Id.* at 486.

9          **III.    Asten is Entitled to a New Trial Because the Jury Verdict was Against the
           Great Weight of the Evidence.**
10

11          The Court should grant a new trial where, as present in this case, the verdict of the jury

12  was against the great weight of the evidence.  *Hemmings v. Tidyman's, Inc.*, 285 F.3d 1174,

13  1189 (9th Cir. 2002).  In determining whether the verdict is against the great weight of the

14  evidence, this Court is not bound to view the evidence in the light most favorable to the

15  nonmovant.  *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985).  Instead, the

16  Court "has the duty…to weigh the evidence as [the Court] saw it, and to set aside the verdict

17  of the jury, even though supported by substantial evidence, where, in [the Court's]

18  conscientious opinion, the verdict is contrary to the clear weight of the evidence."  *Murphy v.*

19  *City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990).  The verdict was against the great

20  weight of the evidence for the following reasons:

21
           **A.    Asten is Entitled to a New Trial Because There was No Evidence of
           Exposure to an Asten Asbestos-Containing Dryer Felt or Fabric.**
22

23          Asten is entitled to a new trial because there was no evidence that Henry Barabin was

24  ever actually in contact with, or worked on or around a paper machine where an Asten

25  asbestos-containing dryer felt or fabric was in use.  Absent such evidence of exposure, Asten

26

ASTEN MOTION FOR NEW
TRIAL - 12

Case No. C07-1454

K:\2038878\00554\20514_GWS\20514P28BL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1   can have no liability to Mr. Barabin.  In this case, Mr. Barabin agreed that he could not testify

2   that he ever worked around an Asten dryer felt before 1984. (10/28/09 188:24-189:6).[5]

3          The evidence in this case regarding exposure is overwhelmingly in favor of Asten.

4   Exhibit 696, the stipulation of Asten felt sales to the Camas paper mill, proves that 569 of 717

5   Asten dryer felts and fabrics sold to the Camas paper mill from 1971 to 1983, or 79% of them

6   (569÷717), were non-asbestos-containing.  Of 538 Asten dryer felts and fabrics sold for paper

7   machines 1-14, which plaintiff testified were all located in the main paper machine building

8   where plaintiff worked most of the time, 453 were non-asbestos containing.  There was no

9   proof that plaintiff ever worked with or around an Asten asbestos-containing dryer felt or

10  fabric and an 84% (453÷538) probability that if he did work with or handle an Asten dryer felt

11  or fabric, that it was non-asbestos-containing.

12

13         Lastly, according to plaintiff's Camas mill employment records, exhibit 2167, from

14  June 2, 1975 until December 31, 1980, plaintiff was assigned permanent positions on paper

15  machines 7 and 8.  During that time period, he spent approximately one-half of his time on

16  each machine.  These are the only two paper machines to which plaintiff was assigned.

17  However, he testified that he occasionally worked on other machines as a fifth hand (10/28/09

18  80:11-13) and also when he was a spare hand for about a month or two before he was

19  assigned to paper machines 7 and 8.  (10/28/09 74:19-75:4).  While assigned to paper

20  machines 7 and 8, he testified he assisted with dryer felt changes.  On paper machine number

21  7, there were 55 Asten non-asbestos containing dryer fabrics and only 1 asbestos-containing

22  dryer fabric.  Exhibit 696.  Accordingly, for paper machine number 7, there was a 98%

23

24

25

26  _____

[5] Plaintiffs admitted that Mr. Barabin was not exposed to asbestos-containing dryer felts from 1984 onward, when he was working on paper machine number 20. (10/27/09 10: 5-15

ASTEN MOTION FOR NEW
TRIAL - 13
Case No. C07-1454

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

probability that any Asten dryer felt or fabric Mr. Barabin handled was non-asbestos

containing.  On paper machine number 8, there were 40 Asten non-asbestos containing and 10

Asten asbestos-containing dryer felts and fabrics.  Exhibit 696.  Accordingly, there was an

80% probability that any Asten dryer felt or fabric Mr. Barabin handled was non-asbestos-

containing.

   Only by engaging in pure speculation completely contrary to the evidence could  the

jury find that Mr. Barabin was ever exposed to any Asten asbestos-containing dryer felts.

However, assuming arguendo that such speculation is permissible, there is still no evidence

that Asten asbestos-containing dryer felts released respirable asbestos in the Camas paper mill

in excess of ambient levels.

**B.    Asten is Entitled to a New Trial Because Asten Asbestos-Containing Dryer Felts Were not Shown to Be a Substantial Factor in Causing Plaintiff's Mesothelioma.**

   Plaintiffs' evidence regarding Asten asbestos-containing dryer felts establishes only

that they were sold to the Camas mill, during the same time frame that many more Asten non-

asbestos-containing dryer felts were also sold to the Camas mill.  Exhibit 696.  Any

conclusion that Mr. Barabin was exposed to asbestos released from an Asten asbestos-

containing dryer felt is based solely on speculation.   No witness ever placed Mr. Barabin

around an Asten dryer felt, much less an Asten asbestos-containing dryer felt.  Even though

Exhibit 696 stipulates sales to the Camas mill, the jury had to speculate that Asten asbestos-

containing dryer felts were on the paper machines when Mr. Barabin worked around them.

The jury also had to speculate that Mr. Barabin was exposed to respirable asbestos from an

Asten asbestos-containing dryer felt, in the face of evidence that, more probably than not, any

Asten dryer felt that Mr. Barabin was around was non-asbestos-containing.  *See* Exhibit 696.

ASTEN MOTION FOR NEW
TRIAL - 14
Case No. C07-1454

K:\2038878\00554\20514_GWS\20514P28BL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    Even assuming the jury could engage in this speculation, there is still no evidence that

2    an Asten asbestos-containing dryer felt released respirable asbestos fibers at a level above

3    ambient in the Camas paper mill.  To the contrary, the great weight of the evidence was that

4    Asten asbestos containing dryer felts did not emit respirable asbestos fibers during use in

5    paper mills, or, if they did, it was at a level associated with ambient exposures.

6          Defense expert witness Paul Carlson, a certified industrial hygienist who

7    worked at the Camas Mill during the 1980s and had extensive experience in paper

8    mills, testified that asbestos from dryer felts would not contribute to the airborne levels

9    of asbestos in the mill ("would contribute none, or so little that you couldn't measure

10   it").  (11/9/09 139:13-22).  Mr. Carlson also testified that had Mr. Barabin worked with

11   Asten asbestos-containing dryer felts, his exposure would have been "from zero to

12   ambient levels."  *Id.* at 139:15-140:2.  Defense expert witness Joseph Wendlick, a

13   certified industrial hygienist with extensive work experience at a number of paper mills

14   during the 1970s, testified that measurements of an actual blow down performed at a

15   paper machine where asbestos containing dryer felts were in use released asbestos at

16   less than ambient levels, and did not present a hazard.  (11/10/09 17-18).

17          Neither plaintiffs' expert Kenneth Cohen, nor plaintiffs' expert Dr. James Millette,

18   provided any quantitative testimony that Asten asbestos-containing dryer felts emitted

19   respirable asbestos fibers in excess of ambient levels in the Camas paper mill.  Because there

20   was no testimony that Asten asbestos-containing dryer felts released respirable asbestos in a

21   paper mill in a quantity sufficient to cause mesothelioma, there was insufficient evidence for a

22   jury to determine that they were a substantial factor in causing Mr. Barabin's mesothelioma.

23          Every expert who testified in this case, including plaintiffs' experts, acknowledged

24   that ambient levels of exposure to asbestos do not present an increased risk of mesothelioma

ASTEN MOTION FOR NEW
TRIAL - 15
Case No. C07-1454

K:\2038878\00554\20514_GWS\20514P28BL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

and are not a substantial factor in causing mesothelioma.  Plaintiffs presented no evidence that Asten asbestos-containing dryer felts and fabrics released asbestos in excess of ambient levels during use in the paper mill.  The only evidence of airborne levels of asbestos released, if any, by asbestos containing dryer felts presented by the plaintiffs were the glove box tests of Dr. Millette, which the Court specifically held were not representative of the paper mill environment and could not be extrapolated to paper mill exposures.  Dr. Millette offered no testimony that his glove box testing was intended to replicate the Camas mill environment, and the Court explicitly instructed the jury that it did not replicate the Camas mill environment.  (11/5/09 27:5-19).  Dr. Millette further testified that when he conducted his finger touch and Post-it® note testing he did not measure airborne levels of asbestos during those tests.  Accordingly, those tests provide no foundation or basis for an opinion that Asten asbestos-containing dryer felts released respirable asbestos inside the Camas paper mill.[6] Neither Dr. Millette's testing, nor Mr. Cohen's testimony, are probative of exposure levels, if any resulting from the use of asbestos-containing dryer felts in paper mills.

Dr. Brodkin's causation testimony, offered over objection, failed to satisfy the standards of Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993), and was insufficient to permit the jury to conclude that Asten asbestos-containing dryer felts were a substantial factor in causing Mr. Barabin's mesothelioma.  Therefore, it should have been excluded.  Dr. Brodkin never testified that Asten asbestos-containing dryer felts were a substantial factor in causing Mr. Barabin's mesothelioma.   Instead, over objection, he gave non-specific "qualitative" opinion testimony that "Mr. Barabin's exposures related to his paper machine work were strong identifiable exposures added to his cumulative exposure and as such would also be substantial

---

[6] The finger touch and Post-it® "tests" obviously provided nothing upon which the jury could rely, since there was no evidence that Mr. Barabin was involved in such activities in the paper

ASTEN MOTION FOR NEW
TRIAL - 16
Case No. C07-1454

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

contributing factors in his development of mesothelioma." (11/3/09 64:5-8).   Because his opinions were unsupported by the facts or evidence in this case, and further were not specific to dryer felts, they provided an insufficient basis for the jury to conclude that exposure to an Asten asbestos-containing dryer felt was a substantial factor in causing Mr. Barabin's mesothelioma.  Dr. Brodkin was permitted to testify, over objection, "[a]nd certainly textiles, when manipulated in certain ways, cutting, tearing, hosing, can generate airborne fibers." (11/3/09 50:24-25).  This opinion testimony was beyond the scope of his expertise and qualifications.  Further, it was non-specific to dryer felts and paper mills.

Dr. Brodkin's opinion regarding dryer felts and their contribution to asbestos levels around the paper machines was unsupported by the evidence.  He admitted that the only studies on which he based his opinions about release of fibers from a dryer felt were the Millette studies (11/3/09 55:21-24), which the Court later ruled were not representative of paper mill conditions.  The Korhonen study upon which he relied for measurements of levels of airborne asbestos in paper mills contained no references or measurements as to dryer felts, and there is no evidence that asbestos from dryer felts was part of the levels reported.

Based solely on the Millette glove box and laboratory studies, Dr. Brodkin opined, over objection, that "dryer felts would be an important component of the cumulative exposure around a paper machine." (11/3/09 56:14-16).  Dr. Millette's studies, however, were an insufficient foundation for this opinion.  Because Dr. Millette's studies did not replicate conditions in a paper mill, Dr. Brodkin should not have been permitted to rely on those studies to opine that asbestos-containing dryer felts in use in a paper mill would be an

mill with an Asten asbestos containing dryer felt.

ASTEN MOTION FOR NEW
TRIAL - 17

Case No. C07-1454

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

"important component" of the cumulative exposure.[7]

Dr. Brodkin conceded that "simply walking by an asbestos-containing material would not represent an identified exposure." (11/3/09 62:7-8).  Yet he was permitted to testify, over objection, that Mr. Barabin would have had bystander exposure to dryer felts from 1968-1975, when his primary involvement with paper machines was walking by them or stopping briefly to collect pulp or paper samples.

Dr. Brodkin was permitted to give unsupported opinion evidence, over objection, that "Mr. Barabin's exposures related to his paper machine work were strong identifiable exposures and added to his cumulative exposure, and as such would also be substantial contributing factors in his development of mesothelioma." (11/03/09 64:4-8).  However, significantly, he was not permitted to testify, because there was no foundation for the opinion, that exposure from Asten or Scapa dryer felts contributed to Mr. Barabin's mesothelioma. (11/3/09 64:15-21).

In sum, there was no evidence upon which Dr. Brodkin could base a causation opinion.  Plaintiffs offered no proof that Mr. Barabin was ever actually in contact with, or worked on or around a paper machine where an Asten asbestos-containing dryer felt or fabric was installed, nor did they offer any proof that any fibers were actually emitted in the course of use of the resin-treated asbestos containing dryer felts that Asten sold to the mill during the years that Mr. Barabin worked there.  Indeed in light of the circumstances that the dryer felts were typically wet, and that there was steam and humidity in the area where the felts were

---

[7] In addition to its argument that plaintiffs failed to offer legally sufficient proof of causation, Asten respectfully submits that the Court erred in its evidentiary rulings by permitting Dr. Brodkin to testify to the opinions noted above and submits that such errors independently constitute a basis for granting a new trial.

ASTEN MOTION FOR NEW
TRIAL - 18

Case No. C07-1454

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

used in the course of drying paper and that very substantial exhaust fans were used to exhaust the heat and humidity and presumably any fibers that could have been emitted, it is understandable that Dr. Brodkin was unable to state that Mr. Barabin was exposed to Mr. Cohen's "re-entrained" asbestos fibers (from what source one might reasonably ask since the Court specifically held that the Millette tests that Mr. Cohen relied upon were not representative of circumstances in a paper mill) or to opine that asbestos fibers from dryer felts were a substantial factor in causing Mr. Barabin's disease. Rather, Dr. Brodkin, over defense counsels' objections, testified that the total dose of asbestos from paper machine exposure was causative, without any support in the record for what that dose might have been, and that asbestos fibers from dryer felts were an important component of the total dose of asbestos exposure from the paper making machine area.

The emperor has no clothes. Not knowing what the total paper machine dose was, and not knowing what dryer felt emissions (if there were any) were, Dr. Brodkin made one a substantial factor and the other an important component of the substantial factor.  However, he admitted in the next breath that ambient exposure levels (which is the maximum quantity that the uncontradicted evidence suggests could possibly have been contributed by dryer felt use) are not substantially contributory to causing mesothelioma. If indeed this is the causation testimony upon which the verdict against Asten is based then certainly the jury's verdict must be set aside as there is no evidence at all to support it.

Several Washington state trial courts have rejected Dr. Brodkin's previous attempts to wrap an unknown quantity of asbestos fibers into a larger quantity from other sources to support causation on the basis that this is simply a backhanded way of saying that every fiber, or a single fiber, can cause disease.  *See, e.g. Anderson v. Asbestos Corp., Ltd., et al.*, No. 05-

ASTEN MOTION FOR NEW TRIAL - 19

Case No. C07-1454

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

2-04551-5SEA, slip op. at 144-45 (King Co. Super. Ct., October 31, 2006)(transcript of bench ruling)(Erlick, J.); *Free v. Ametek*, No. 07-2-04091-9-SEA (King Co. Super. Ct. Feb. 29, 2008)(Barnett, J.)(ruling on motion in limine).  Moreover, this theory has been rejected by an increasing number of courts across the country.  See Mark A. Behrens, *The "Any Exposure" Theory: An Unsound Basis for Asbestos Causation and Expert Testimony*, 37 Southwestern Univ. L. Rev. 479, 480-482 (2008)(citing more than a dozen courts nationwide that have rejected the every fiber theory). (*See* 2nd Shaw Decl., at ¶¶1-2).  Most recently, in *Daly v. Arvinmeritor, Inc., et al.*, No., 07-19211, Circuit Court of the 17th Judicial Circuit for Broward County, Florida, the Circuit Court granted a directed verdict in favor of trial defendant Pneumo Abex, reversing a jury award.  The circuit court held that plaintiffs failed to meet their burden that defendant's products were the legal cause of injury expert testimony and evidence failed to establish either general or specific causation. *Id*. at 4-6.  The circuit court found plaintiff's exposure evidence insufficient, because it "hinge[d] on multiple sub-pyramids of inferences" to support plaintiff's claim of exposure. *Id*. at 8.  The circuit court specifically held that plaintiff's expert's medical testimony (which was similar to that of Dr. Brodkin in this case) that "any exposure above background" could cause mesothelioma "would eviscerate" Florida's substantial contributing factor standard.  *Id*.  (2nd Shaw, at ¶ 3).

Plaintiffs were erroneously permitted to present their theory that every dose of asbestos Mr. Barabin received contributed to his total dose and caused his disease.  This "total dose" theory is nothing more than a re-naming of the "single fiber" theory the Court rejected in pre-trial motions.  Plaintiffs' own experts conceded that not every dose of asbestos is causative. Dr. Brodkin agreed that ambient levels of exposure to asbestos do not present a clinically significant increased risk for mesothelioma." (11/3/09 92:4-11), and  Dr. Brodkin

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

agreed with defendants' experts Drs. Roggli, Hammar and Crapo that ambient exposures from the urban air were not causative of mesothelioma.  The overwhelming evidence was that if an Asten asbestos-containing dryer felt emitted respirable asbestos at all, it was at or below levels associated with these urban ambient measures.  All medical experts, including Dr. Brodkin, acknowledged that ambient levels were not causative of mesothelioma.  Dr. Brodkin also opined that "exposures that occurred within ten years of the mesothelioma" would not be part of the total dose. (11/3/09 66:21-23).

Dr. James Crapo, a doctor certified in internal medicine and pulmonary disease, testified about ambient levels of asbestos.   Dr. Crapo, as Dr. Brodkin did for the Plaintiffs, testified that ambient levels of asbestos are not causative of disease and are not considered part of a total dose calculation.  (11/12/09 50:10-16).

Dr. Samuel Hammar, a board certified pathologist, testified that asbestos from an asbestos-containing dryer felt was not a substantial factor in causing Mr. Barabin's mesothelioma.  (11/9/09 31:4-13).  Dr. Hammar based his opinion on Mr. Carlson's uncontradicted conclusion that if dryer felts released respirable asbestos, it was at most, at ambient levels.

Dr. Victor L. Roggli, a board certified pathologist, testified that there is no evidence that ambient levels of asbestos cause disease. (11/6/09 39:2-5).  Dr. Roggli testified that not all occupational exposures were substantial factors in contributing to the cause of disease (11/6/09 33:1-4).  He further opined that it was unlikely that asbestos from an Asten asbestos-containing dryer fabric was a substantial cause of Mr. Barabin's mesothelioma. *Id.* at 51:6-13.

In *Lockwood v. AC&S, Inc.*, 109 Wn.2d 235, 744 P.2d 605 (1987), the Supreme Court of Washington recognized that "it is extremely difficult to determine if exposure to a particular defendant's asbestos product actually caused the plaintiff's injury. *Id.* at 248.

ASTEN MOTION FOR NEW
TRIAL - 21
Case No. C07-1454

K:\2038878\00554\20514_GWS\20514P28BL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Accordingly, the Supreme Court held that trial courts should consider a number of factors when determining if there is sufficient evidence for a jury to find causation, including:

    a.   evidence of the plaintiff's proximity to the asbestos product when the exposure occurred
    b.   the expanse of the work site where asbestos fibers were release
    c.   the extent of time the plaintiff was exposed to the product
    d.   the types of asbestos products to which the plaintiff was exposed
    e.   the ways in which the products were handled and used

*Id*. at 248.

The *Lockwood* Court also acknowledged that "[a]sbestos products exist in a wide variety of forms, which differ in the amounts and percentages of asbestos they contain.  In addition, the tendency of such products to release asbestos fibers into the air depends on their form and on the methods in which they are handled.  *Id*. at 248.

The *Lockwood* Court concluded, "[u]ltimately, the sufficiency of the evidence of causation will depend on the unique circumstances of each case." *Id*. at 249.   The circumstances of this case do not support the jury's conclusion that Asten asbestos-containing dryer felts were a substantial factor in causing Mr. Barabin's mesothelioma.

Absent any quantitative evidence of levels of asbestos released from an Asten asbestos-containing dryer felt in the Camas mill, plaintiffs' experts Dr. Brodkin and Mr. Cohen could offer only vague and unsupported opinion testimony that "qualitatively" the exposures from dryer felts were significant exposures of Mr. Barabin. (11/3/09 53:2-10).  "Qualitative exposure" is nothing more than an imprecise and legally insufficient term that permits plaintiffs to dilute the causation requirements necessary to prove proximate cause.

Even assuming hypothetically that Mr. Barabin was "qualitatively exposed" to an Asten asbestos-containing dryer felt, there is no evidence that it was at a level above ambient

ASTEN MOTION FOR NEW TRIAL - 22
Case No. C07-1454

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

exposures.  In light of the uniform testimony from all expert witnesses that ambient levels of exposure do not cause disease, such a hypothetical exposure would be *de minimus* at best.  A *de minimis* quantity of asbestos that does not by itself cause disease, cannot be considered a substantial factor, even when combined with other exposures.  *See Mavroudis*, 86 Wn. App. at 32 (where one defendant has made a quite insignificant contribution to the result, as where he throws a lighted match into a forest fire) (citing W. Keeton, et al., Prosser and Keeton on Torts § 41 (5th ed. 1984).

**IV. Asten is Entitled to a New Trial Because of Incorrect Evidentiary Rulings.**

A new trial is warranted where the Court's evidentiary rulings were erroneous and affected the jury's verdict.  *Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995).  In this case, several of the Court's rulings were erroneous and affected the jury's verdict.

**A.  The Court Erroneously Permitted Kenneth Cohen to Testify.**

The Court's September 18, 2009 pre-trial order granting Asten's motion in limine, and excluding Kenneth Cohen as a witness "[b]ecause of his dubious credentials and his lack of expertise with regard to dryer felts and paper mills" was correct.  Dkt. # 248 at 14.  The Court's subsequent reconsideration and reversal of its order was error.  Mr. Cohen, through his testimony at trial, proved that he had no experience or expertise in paper mills or with dryer felts and fabrics.  His "expert" testimony, therefore, was unsupported and should have been excluded under Fed. R. Evid. 702 and *Daubert* standards.  Asten's renewed objection when Mr. Cohen began offering opinion testimony should have been granted.  (10/29/09 3:7-22; 41:4-5). Mr.  Cohen was unqualified to opine on exposures from asbestos-containing dryer felts.  He had never been in the Camas paper mill, or performed any air sampling in that

ASTEN MOTION FOR NEW
TRIAL - 23
Case No. C07-1454

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

facility to measure the amount of asbestos released from a dryer felt.  (10/29/09 107:17-22).

He had never conducted air sampling at any pulp or paper mill.  (10/29/09 108:6-8).  He had

no measurements of asbestos fiber released from an Asten felt at a paper mill.  (10/29/09

110:2-4).  He was unaware of a single published study showing exposure to asbestos from

dryer felts in use in a paper mill.  (10/29/09 110:5-8).  He performed no tests on settled dust in

a paper mill (10/29/09 124:4-6).  Further, he admitted that the only test he had reviewed of

settled dust in the Camas paper mill showed the settled dust contained less than 1% asbestos.

(10/29/09 123:7-12).

Mr. Cohen presented no evidence that Asten asbestos-containing dryer felts emitted

respirable asbestos fibers in excess of ambient levels.  In addition, Mr. Cohen's total dose

theories of exposure are internally inconsistent.  Mr. Cohen conceded that (1) ambient

exposures are not causative, (2) asbestos release is dependent on environmental factors, and

(3) asbestos is abated as a matter of course ("half life" theory).  His opinion that any asbestos

released from a dryer felt (regardless of the duration of the release, its intensity, or Mr.

Barabin's proximity) would have exposed Mr. Barabin is unsupported by his own theory.  Mr.

Cohen admitted that he was unaware of a single article associating dryer felts with asbestos-

related disease in the published literature.  (10/29/09 106:18-21).  Mr. Cohen's testimony was

not grounded in science or fact, and consequently could not have aided the jury as a matter of

law.

In *Andrews v. Foster Wheeler Corp.*, 138 Cal. App. 4th 96, 41 Cal. Rptr. 3d 229 (1st Ct.

App. 2006), the California Court of Appeal, First Appellate Division, rejected Mr. Cohen's

testimony regarding re-entrainment or resuspension of asbestos fibers in the plaintiff's

specific work site, finding it speculative and lacking of a sufficient foundation.  *Id*. at 112-

ASTEN MOTION FOR NEW
TRIAL - 24
Case No. C07-1454

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

113. The Andrews court held that "the mere 'possibility' of exposure does not create a triable issue of fact." *Id.* at 108.   The same rationale applies here.  Mr. Cohen's opinions regarding dryer felts in use at paper mills rely on speculation and there is insufficient foundation for Mr. Cohen's opinions that Mr. Barabin would have been "qualitatively" exposed to asbestos from an Asten asbestos-containing dryer felt.

> **B.      The Admission of Dr. Millette's Testimony, Although Limited, Was Not Probative, and Was Irrelevant and Prejudicial.**

The Court limited Dr. Millette's testimony and correctly held that the tests he conducted could not be extrapolated to conditions in the Camas paper mill.  At trial, the Court instructed the jury following objection by Asten counsel: **"Dr. Millette's experiment does not replicate the conditions in a paper mill."** (11/5/09 26:2-3).  Dr. Millette's tests were not conducted in a paper mill on an operating paper machine.

> THE COURT:  Well, attempting to replicate is what we are
> going to be disagreeing about here.  But I have already said to
> you, there is no way to replicate it in the lab conditions that
> Dr. Millette is going to describe.  He can try to do something
> that he may feel helps him extrapolate from that.  The other side
> will say why they disagree with that.  You ultimately decide what
> to do.
> But I am going to ask counsel to be careful about using words
> that suggest that the conditions are duplicated, replicated,
> anything like that.  And I am not suggesting that Mr. Nevin -- he
> already said to you he is not claiming that they are the same.
> He is not trying to deceive in any way.  This is an area that we
> talked about a lot pretrial, about how we are going to handle
> this.  That's why I am stepping in a little more than I normally
> would.
>
> (11/5/09 27:5-19).

Environmental conditions such as humidity, moisture, ventilation were not present in Dr. Millette's tests.  The exhaust fans that were present over the paper machines at the Camas mill, which Paul Carlson testified, in the dryer section of number 8 paper machine alone,

ASTEN MOTION FOR NEW
TRIAL - 25
Case No. C07-1454

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  removed 25,900 gallons of water and 72 million cubic feet of air per day, at a rate of 50,000

2  cubic feet per minute were not accounted for in Dr. Millette's test.  (11/9/09 136:2 – 137:17).

3  Dr. Millette admitted that the amount of water in the dryer felt, when it is being used in the

4  paper mill, would affect its ability to release fibers.  (11/5/09 62:9-12).  He further admitted

5  that wetting of an asbestos-containing product has been recommended for decades as a way to

6  decrease the potential for fiber release from that product.  (11/5/09 62:13-17).  He also

7  admitted that ventilation will decrease the potential for asbestos exposure.  (11/5/09 62:18-

8  22).   Dr. Millette also admitted that the potential for fiber release and the potential for

9  asbestos exposure would vary by job function.  (11/5/09 62:23-63:4).  None of these factors

10 was accounted for in Dr. Millette's testing.  Further, there was no paper stock present in Dr.

11 Millette's tests, which Dr. Millette admitted is at least 50% wet when it enters the dryer

12 section. (11/5/09 21:4-5).  Dr. Millette's glove box test was not conducted on a resin treated

13 dryer felt, which were stipulated to be the only type of asbestos-containing dryer felts that

14 Asten sold to the Camas mill.  Exhibit 696.

15     Dr. Millette admitted that he has never witnessed anyone changing a dryer felt or

16 performing a blow down in a paper mill.  (11/5/09 63:11-14).  The glove box test he

17 performed involved blowing directly on a six inch square of old dryer felt for 5 minutes,

18 primarily at a 90 degree angle from 6-8 inches away.  (11/5/09 67:22-68:12).   There was no

19 testimony that anything resembling this occurred at the Camas paper mill.   Dr. Millette

20 admitted that he was aware of no studies that showed that cutting a dryer felt releases

21 respirable asbestos fibers above the current OSHA permissible exposure limit (PEL) of 0.01

22 f/cc.  (11/5/09 73:2-5) Likewise, he was aware of no tests indicating that installation or

23 removal of a dryer felt releases respirable asbestos fibers in excess of the current OSHA PEL.

24 (11/5/09  73:6-10).  Lastly, Dr. Millette's finger touch and Post-it® note tests did not measure

25 airborne release of asbestos and provide no foundation for the conclusion that Asten dryer

26

ASTEN MOTION FOR NEW
TRIAL - 26
Case No. C07-1454

K:\2038878\00554\20514_GWS\20514P28BL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  felts released respirable asbestos fibers in the Camas paper mill which were breathed by Mr.

2  Barabin.  (11/5/09  73:11-21).

3      Dr. Millette's testing provided no support that there was asbestos in the settled dust at

4  the Camas paper mill from Asten asbestos-containing dryer felts.  Nor did it support the

5  conclusion that any settled dust containing asbestos would be re-entrained.   Dr. Millette

6  admitted that he had done no studies to determine the amount of asbestos found in a paper

7  mill and further agreed that in order to determine if any asbestos from settled dust were re-

8  entrained, one would have to have some information on how much asbestos was in the settled

9  dust.  (11/5/09  80:7-19).

10      Dr. Millette's methodology and findings are not generally accepted in the scientific

11  community.  Because his techniques failed to replicate the relevant paper mill conditions, they

12  were an insufficient basis for concluding that Asten asbestos-containing dryer felts released

13  respirable asbestos fibers in the Camas paper mill.  "Evidence proffered to illustrate the

14  existence of a dangerous condition necessitates a high degree of similarity because it weighs

15  directly on the ultimate issue to be decided by the jury." *Busse v. Bayerische Motoren Werk*,

16  1997 WL 106716 (E.D. La. 1997).  Dr. Millette's testimony and dissimilar testing ultimately

17  misled the jury and should have been excluded under Fed. R. Evid. 702 and *Daubert*

18  standards.  *See also General Electric v. Joiner*, 522 U.S. 136, 118 S.Ct. 512, 519

19  (1997)(affirming trial court's exclusion of dissimilar studies); *Wallace v. General Motors

20  Corp.*, 1997 WL 269498 (E.D. La. 1997)(excluding evidence of video study of test done

21  under static conditions that were not representative of conditions of accident).

22      **C.     Asbestos Textile Institute Documents and Asten Corporate Documents
          Regarding Plant Conditions Were Improperly Admitted.**

23

24      The Court erroneously admitted certain documents into evidence at trial.  These

25  documents include:

26      a.   Asbestos Textile Institute (ATI) documents - exhibits 221, 222, 230, 240,

ASTEN MOTION FOR NEW
TRIAL - 27
Case No. C07-1454

K:\2038878\00554\20514_GWS\20514P28BL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

241, 245, 250, 251, 254, 255, 256, 261, 262, 264, 279, 283, and 285;

    b.   Asten corporate documents, including documents pertaining to plant conditions in Asten manufacturing facilities – exhibits 320, 321, 323, 324, and 354.

The ATI documents were not relevant to the issues at trial. Fed. R. Evid. 401. They are not Asten corporate documents, but records and minutes of a trade organization of which Asten was one of a number of members. Assuming *arguendo* that they had limited relevance as to notice to Asten of the hazards of asbestos, this relevance was outweighed by the prejudicial effect they had upon the jury. Fed. R. Evid. 403. Further, since the ATI documents were admitted for the purpose of showing Asten had notice of the health hazards of asbestos, they were cumulative of the Asten interrogatory responses read into the record by plaintiff counsel, in which it admitted it was aware that asbestos presented a health hazard in the 1940s, before it became a member of the ATI in 1951. (11/5/09 126:17-127:5)

The Asten corporate documents pertaining to plant conditions in Asten manufacturing facilities also were not relevant to the issues in this case. The conditions in the Asten manufacturing facilities, where raw asbestos was being used to produce a finished product, were entirely dissimilar to conditions in the Camas paper mill and had no probative value on the work experience of the plaintiff. Any relevance these plant conditions documents had was outweighed by their prejudicial effect. Fed. R. Evid. 403. These documents were likewise cumulative of the interrogatory responses read into the record by plaintiff counsel. (11/5/09 127:6-21).

In its September 18, 2009 Order on Motions in Limine, Dkt. # 248, the Court held that "plaintiffs must lay a foundation in order to show that these particular defendants would have

ASTEN MOTION FOR NEW TRIAL - 28

Case No. C07-1454

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

or should have  known about the implications of conditions in manufacturing plants on conditions at paper mills." *Id.* at p. 27.  Plaintiffs never laid this foundation, yet the Asten plant conditions documents were admitted and the jury had them for review in the jury room during deliberations.  The prejudice resulting from the admission of these documents requires that Asten be granted a new trial.

### D.      Evidence of Collateral Source Income Was Wrongfully Excluded.

Geraldine Barabin testified during direct examination as follows:

> My thoughts for the future are that I can keep my health and be able to take care of him, and be able to pay for the necessary medications and stuff, because this is not a cheap illness.  It is very expensive.  And I just hope that I just don't break down, and I am able to continue taking care of Henry and securing the proper things that I need to take care of him with. <u>And I just don't want to be left destitute.</u>

(10/29/09 16:9-15).

Under Washington law: "[i]njured parties may . . . waive the protections of the collateral source rule by opening the door to evidence of collateral benefits."  *Johnson v. Weyerhaeuser Corp.,* 134 Wn.2d 795, 804, 953 P.2d 800 (1998); *see also Marler v. Dept. of Ret. Sys*., 100 Wn.App. 494, 504-5, 997 P.2d 966 (2000).  The court of appeals in *Johnson* held that the plaintiff opened the door to evidence that his wife was receiving workers' compensation benefits by testifying that "the family did not have as much money as it used to."  *Johnson,* 134 Wn.2d at 804.  Reversing on other grounds, the Washington Supreme Court agreed with that ruling and held that if the plaintiff opened the door on retrial, the collateral source evidence would again be admissible.  *Id.*  "[A] plaintiff's testimony on direct examination may make evidence of payments from a collateral source relevant and necessary for purposes of rebuttal."  *Cowens v. Siemens-Elema AB*, 837 F.2d 817, 824 (8th Cir. 1988).  The collateral

ASTEN MOTION FOR NEW
TRIAL - 29
Case No. C07-1454

K:\2038878\00554\20514_GWS\20514P28BL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

source rule should not be used as a shield.  Accordingly, "when a plaintiff through either the use of misleading statements or outright false statements falsely conveys to the jury that he or she is destitute or in dire financial straits, the admission of evidence of collateral source payments received by the plaintiff is admissible."  *Kronig v. State Farm Auto. Ins. Co.*, 567 N.W.2d 42, 46 (Minn. 1997).

Mrs. Barabin's testimony opened the door to evidence of collateral benefits; namely, that Henry Barabin's medical expenses are being paid by his employer and that Plaintiffs have recovered substantial settlements from others.  Mrs. Barabin misleadingly implied (i) that Mr. Barabin's healthcare depends on Mrs. Barabin remaining healthy so that she can pay for his medications and treatment, and (ii) that paying for Mr. Barabin's treatment could leave her destitute.  This is precisely the sort of misleading testimony that courts in Washington and elsewhere have deemed to open the door to collateral source evidence.  *See, e.g., Fitzgerald v. Expressway Sewerage Const., Inc.*, 177 F.3d 71, 75-76 (1st Cir. 1999) (district court properly admitted collateral source evidence after accident victim's mother testified to financial strain caused by accident).  Mrs. Barabin's misleading testimony caused the jury to calculate its excessive damage award based on sympathy, rather than the true facts.  This is reflected in the excessive award of $1,500,000 for loss of consortium and also in the overall award to plaintiffs since the jury likely assumed that Mrs. Barabin would be the primary beneficiary of the award to Mr. Barabin.  Courts should not accept unfair application of the collateral source rule with complacency.  *Rotolo Chevrolet v. Superior Court* (2003) 105 Cal. App. 4th 242, 246 n.3.  Accordingly, the Court should order a new trial.

### V.  Asten is Entitled To a New Trial Because of Incorrect Jury Charges.

A new trial should be granted where the court's jury charge is misleading or misstates the

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

law.  *See Martin v. California Dept. of Veterans Affairs*, 560 F.3d 1042, 1046 (9th Cir. 2009).

In the instant case, the following errors in the jury charges warrant a new trial.

**A.      An Exposure Question Should Have Been Included on the Jury Verdict Form.**

Exposure to a defendant's asbestos-containing product is a prerequisite to a finding of

liability against that defendant.   The evidence in this case regarding Asten and Mr. Barabin's

potential exposure to an Asten asbestos-containing dryer felt was non-existent.  No witness

testimony or other evidence placed Mr. Barabin working with or around an Asten asbestos-

containing dryer felt.  Indeed, the great weight of the evidence indicated to the contrary – if

Mr. Barabin was ever around an Asten dryer felt, the chances are overwhelmingly that it was

non-asbestos-containing and that it did not emit respirable asbestos fibers that could ever have

exceeded ambient levels.  *See* Section III, subsection 1, *infra*.  Accordingly, because exposure

was a central issue in this case, the Court erred by not presenting a discrete exposure question

to the jury on the jury verdict form.

**B.  The Proximate Cause Instruction Was Incorrect.**

The Court's jury charge on proximate cause stated:[8]

> The term proximate cause means a cause that was a substantial
> factor in bringing about the injury, <u>even if the result would
> have occurred without it</u>.  A substantial factor is one that is
> important or significant in bringing about the result, rather
> than being unimportant or insignificant.  Each cause is
> considered to be a proximate cause of the injury if it is a
> substantial factor in bringing it about.

(11/16/09 48:7-13)(emphasis added).

Washington law provides in asbestos cases that a defendant's product may be a proximate

---

[8] Asten objected to the Court's proximate cause charge. (11/16/09 35-36).  *See also*  Dkt. #
344, Defendants AstenJohnson, Inc. and Scapa Dryer Fabrics, Inc.'s Exceptions to the Court's
Instructions to the Jury.

ASTEN MOTION FOR NEW
TRIAL - 31

Case No. C07-1454

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

cause of the plaintiff's injury if it was a substantial factor in causing the injury, commonly referred to as "substantial factor causation." *See Mavroudis v. Pittsburgh Corning Corp.*, 86 Wn. App. 22, 935 P.2d 684 (1997).  However, a product which could not have brought about the injury independently cannot be a substantial factor.[9]

Considering that Mr. Barabin had undisputed exposures to a number of amphibole asbestos containing thermal insulation products at the Texaco refinery before he ever worked at Camas, and further exposures to similar products while working at Camas, the potential contribution of any Asten asbestos-containing dryer felts to Mr. Barabin's total exposure is speculative at best.  Even assuming any contribution from an Asten asbestos-containing dryer felt, such contribution would be insignificant and not rise to the level of a substantial factor in causing Mr. Barabin's disease. *Mavroudis,* 86 Wn. App. at 32 (where one defendant has made a quite insignificant contribution to the result, as where he throws a lighted match into a forest fire)(citing W. Keeton, et al., Prosser and Keeton on Torts § 41 (5th ed. 1984).

A history of the adoption of the substantial factor test by the Washington courts is instructive.  The Washington Supreme Court declined to adopt the substantial factor test in *Daugert v. Pappas*, 104 Wn.2d 254, 262, 704 P.2d 600 (1985), but described the test as follows:

---

[9] The facts of *Mavroudis* are distinguishable from the facts of this case.  The *Mavroudis* Court found that the plaintiff had shown that the defendant's product "Kaylo" was "one of only three asbestos-containing products used during the time that he was assigned to the U.S.S. Wright project.  *Mavroudis,* 86 Wn. App. at 31.  In contrast, Mr. Barabin worked from 1964-1968 at the Texaco Port Arthur Refinery around numerous asbestos containing products, none of which were manufactured by Asten.  Later, while at Camas, he worked around numerous asbestos-containing products, including thermal pipe insulation and Limpet.  Unlike in *Mavroudis*, Asten dryer felts were not one three asbestos-containing products present at plaintiff's work site, and there was no testimony that they gave off "very substantial amounts of asbestos when cut." *Id.*  Instead, Asten asbestos-containing dryer felts were not only a small percentage of the total amount of dryer felts Asten supplied to the Camas mill, but an even smaller percentage of the total number of dryer felts used by the mill and an even smaller percentage of the number of asbestos-containing products present at the Camas mill.

ASTEN MOTION FOR NEW TRIAL - 32

Case No. C07-1454

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

It is likewise inappropriate at this time to adopt the substantial factor test. See *Baker v. Beal*, 225 N.W.2d 106 (Iowa 1975); *Winter v. Brown*, 365 A.2d 381 (D.C. 1976). Such a change in the test for cause in fact is normally justified only when a plaintiff is unable to show that one event alone was the cause of the injury. <u>As noted by Dean Prosser, the substantial factor test aids in the disposition of three types of cases. First, the test is used where either one of two causes would have produced the identical harm, thus making it impossible for plaintiff to prove the "but for" test. In such cases, it is quite clear that each cause has played so important a part in producing the result that responsibility should be imposed on it. Second, the test is used where a similar, but not identical, result would have followed without the defendant's act. Third, the test is used where one defendant has made a clearly proven but quite insignificant contribution to the result, as where he throws a lighted match into a forest fire.</u> W. Keeton, D. Dobbs, R. Keeton & D. Owen, Prosser and Keeton on Torts § 41 (5th ed. 1984).

As the Supreme Court noted, Prosser underscores that substantial factor is intended for cases where more than one cause could have been a "but for" cause of the disease. P&K, p. 267; *see also* 268 ("But in the great majority of cases, it produces the same legal conclusion as the "but for" test). Keeton does acknowledge two other types of cases where substantial factor may be "helpful:" (1) "where a similar but not identical result would have followed without the defendant's act" and (2) "where one defendant has made a clearly proved but quite insignificant contribution to the result, as where he throws a lighted match into a forest fire." *Id.* It is clear that in the last instance, the application of the substantial factor test operates to exonerate a defendant whose contribution is *de minimis*.

Although the substantial factor instruction was given in the *Lockwood* case, the Washington Supreme Court has not explicitly approved of the substantial factor test in an asbestos case. However the giving of a substantial factor instruction was approved by the Washington Court of Appeals. *Mavroudis v. Pittsburgh Corning Corp.*, 86 Wn. App. 22, 935 P.2d 684 (1997). The Washington Court of Appeals approved of the giving of a jury instruction on substantial factor, citing to both *Daugert* and Prosser and Keaton. The Court of Appeals noted that the substantial factor test was appropriate where more than one cause <u>would have been independently causative</u>, but it isn't clear which one ultimately did it. The *Mavroudis* Court specifically noted that the evidence was enough to show that the defendant's

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

product released enough asbestos to be causative. *Mavroudis*, 86 Wn. App., at 31. Conversely, in this case there was no evidence presented that Asten asbestos-containing dryer felts, standing alone, would have been causative of Mr. Barabin's mesothelioma. All of the quantitative evidence presented in the case indicated to the contrary, that they would have released no asbestos during operation on a paper machine, or at most a level associated with ambient exposures, which every expert testified did not present an increased risk of mesothelioma and were not causative of mesothelioma.

Finally, the *Mavroudis* Court noted that the weakened causation standard announced in *Hue v. Farmboy Spray Co.*, 127 Wn.2d 67, 896 P.2d 682 (1995) was not the standard applied in *Mavroudis* and declined to adopt the *Hue* standard for future asbestos cases. *Mavroudis*, 86 Wn.App. at 33. Application of the substantial factor test as enunciated by the courts of Washington to the facts of this case leads to one compelling result: there was no evidence presented that the amount of asbestos, if any, released from Asten asbestos-containing dryer felts, standing alone, would have caused Mr. Barabin's disease. Accordingly, Asten asbestos-containing dryer felts could not have been a substantial factor in causing Mr. Barabin's mesothelioma.

**C. The Continuing Duty to Warn Instruction Should Not Have Been Given.**

The evidence in the case was insufficient to establish that Mr. Barabin was ever exposed to asbestos from an Asten asbestos-containing dryer felt. Further, the evidence failed to establish that Asten asbestos-containing dryer felts were unreasonably dangerous in use at the Camas paper mill. Accordingly, Asten never had a duty to warn, much less a continuing duty to warn Mr. Barabin and a continuing duty to warn instruction was error. Merely because a product contained asbestos does not make it automatically unreasonably dangerous. If there is no proof, as there was none here, that the product emitted respirable asbestos fibers during ordinary use at levels sufficient to be a substantial factor in causing disease, then that product

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1   cannot be held to be unreasonably dangerous, and there is nothing about which to warn.

2   Moreover, Asten ceased the manufacture of asbestos-containing dryer felts in 1980; the last

3   Asten asbestos-containing dryer felt was sold to the Camas mill on December 31, 1980.

4   Exhibit 696.  Further it was stipulated that Mr. Barabin was no longer exposed to asbestos

5   after he went to work on paper machine 20 in 1984.   The Court erred in giving a continuing

6   duty to warn instruction in this case because it was unsupported by the evidence in the case.

7

8   **VI.      Asten is Entitled to a new Trial Because of the Improper and
           Inflammatory Argument of Plaintiffs' Counsel.**

9

10      During closing argument, plaintiff counsel improperly argued "They (the Barabins) are

11  part of the many people that these defendants have been hurting and killing over the years,

12  and they are no different" (11/16/09 62:20-22).  That statement suggested to the jury that

13  Asten acted with a degree of calculated intentional malevolence – a suggestion that had no

14  place in this trial on negligence and strict liability.  This was an improper appeal to the jury's

15  passions.  *See Marcoux v. Farm Serv. & Supplies, Inc.*, 290 F. Supp. 2d 457, 471 (S.D.N.Y.

16  2003).  In effect, Plaintiffs' counsel was urging the jury to send Asten a message, which is

17  clearly improper in a case where punitive damages are not in issue.  *Nice v. ZHRI, Inc*., 105 F.

18  Supp. 2d 1028, 1029 (E.D. Ark. 2000).

19

20      Moreover, the statement improperly went outside the record by referring to Asten

21  killing and hurting others when there was no evidence of such, and it improperly encouraged

22  the jury to render a verdict that would punish Asten for injuries it had allegedly inflicted on

23  *others*.  Given the United States Supreme Court's holding that a defendant may not be forced

24  to pay punitive damages for harm caused to strangers to the litigation, that argument was

25  clearly improper.  *See Phillip Morris, USA v. Williams*, 549 U.S. 346 (2007).  Although the

26

ASTEN MOTION FOR NEW
TRIAL - 35
Case No. C07-1454

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Court sustained an objection to the argument and struck it from the record (11/16/09 62:23-63:7), the jury's grossly excessive damages award indicates that the jurors did in fact base their verdict on a desire to punish the defendants.  For all of these reasons, the Court should order a new trial.

## VII.    Asten Was Unconstitutionally Deprived Of An Apportionment Of Damages.

Under Washington law, Asten was not permitted to seek a fault apportionment that would have resulted in Asten paying only those damages that the jury found it actually caused.  *See Coulter v. Asten Group, Inc.*, 135 Wn.App. 613, 146 P.2d 444 (2006) (apportionment not available in cases involving asbestos-related claims).[10]

### A.    Imposing Joint and Several Liability on Asten Violates the Equal Protection Clause of the United States Constitution.

Under Washington law, damages are apportioned as to all classes of defendants save one: a defendant responsible for a hazardous substance that contributes to cause an injury is not entitled to an apportionment and is instead held jointly and severally liable. *See* WASH. REV. CODE ANN. § 4.22.070(1).  Washington courts have held that this section of the statute applies to asbestos cases.  *See Coulter*, 146 P.2d at 446-47.[11]  The Equal Protection Clause of the Fourteenth Amendment to the Federal Constitution commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws."  *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249 (1985).

---

[10] This issue was also raised and extensively briefed in Scapa's Motion for New Trial and Asten adopts the argument and analysis therein.

[11] (Apparently, however, the Washington Legislature intended for it to apply to toxic waste cases.  *See* Cornelius J. Peck, *Washington's Partial Rejection and Modification of the Common Law Rule of Joint and Several Liability*, 62 WASH. L. REV. 233, 251 (1986)).  As one commentator observed shortly after the statute was enacted, the creation of this exception "will almost certainly be used to attack the constitutionality of [the statute] as a deprivation of equal protection of the law under both the United States and Washington Constitutions."  *Id.*

ASTEN MOTION FOR NEW TRIAL - 36

Case No. C07-1454

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

There is no rational basis for (1) classifying defendants who manufactured asbestos-containing products as hazardous substance tortfeasors and (2) treating them differently from all other types of defendants.  The disparate treatment cannot be justified as an incentive to exercising greater care with respect to hazardous or potentially-hazardous products.  Joint and several liability forces a defendant to pay for *another's* carelessness – *i.e.,* conduct that it cannot control.  The disparate treatment cannot be rationalized on the grounds that apportionment is impossible in cases involving hazardous or toxic substances.  *Burlington N. & Santa Fe Ry. Co. v. United States*, 129 S.Ct. 1870 (2009) (defendants in CERCLA case not jointly and severally liable; district court's apportionment of liability for a single harm was reasonable).  The disparate treatment cannot be justified on the ground that some hazardous-substance tortfeasors responsible for the plaintiff's injury or disease might be non-existent or insolvent by the time the injury or disease manifests itself.  It is arbitrary to tie a defendant's liability to the solvency of his co-tortfeasors.  In cases not involving hazardous substances, defendants are entitled to apportionment even when their co-tortfeasors are insolvent or immune to liability.  *See* WASH. REV. CODE ANN. § 4.22.070(1).  Finally, as applied to Asten, joint and several liability cannot be justified as an incentive to remediation because it has not manufactured asbestos-containing dryer felts for three decades.

For these reasons, the Court should hold that Section 4.22.070(3)(a) violates the Equal Protection Clause of the United States Constitution and grant Asten a new trial.  *See Estelle v. Dorrough*, 420 U.S. 534, 539 (1975) (Equal Protection Clause requires that, in defining class subject to legislation, distinctions that are drawn have some relevance to purpose for which classification is made).

ASTEN MOTION FOR NEW
TRIAL - 37
Case No. C07-1454

K:\2038878\00554\20514_GWS\20514P28BL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

**B.**    **Imposing Joint and Several Liability Deprives Asten of its Property Without Due Process.**

Washington law affords a Defendant whose liability is predicated on Section 4.22.070(3)(a) a "credit" for amounts paid in settlement by other responsible parties.  In asbestos cases generally and in the present case, the plaintiff or his counsel acknowledge that non-parties' conduct was a substantial factor in causing the disease and that mesothelioma is a total-dose disease.  Here, as in other cases, plaintiffs nonetheless made no effort to recover from many of those admittedly responsible parties.  During trial, plaintiffs then asked the jury to award the full measure of all damages, including the portion of the damages attributable to non-trial defendants.  This manipulation of the process renders the law per se unconstitutional as applied to asbestos cases.

Under Section 4.22.070(3)(a), a defendant has no input or control over its liability to the plaintiff for damages caused by others.  The plaintiff exercises absolute control over whether to assert claims against and settle with other parties that contributed to cause his injury.  If the plaintiff chooses not to settle with those other parties, then the defendant cannot obtain a settlement credit reducing the total amount of damages it must pay.  Moreover, Washington law does not allow the defendant to seek contribution from those other parties that caused the plaintiff's injuries.  *See Gerrard v. Craig*, 122 Wn.2d 288, 298-99, 857 P.2d 1033 (1993).

The Due Process Clause of the Fourteenth Amendment to the United States Constitution is violated when a defendant can be forced to pay damages caused by another without any control over the extent of its liability or the right to recoup from others responsible for causing those damages.  *See Whisenant v. Brewster-Bartle Offshore Co.*, 446

ASTEN MOTION FOR NEW
TRIAL - 38
Case No. C07-1454

K:\2038878\00554\20514_GWS\20514P28BL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

F.2d 394, 403 (5th Cir. 1971) (indemnitor's liability cannot be established by indemnitee's unilateral act of settling with plaintiff – due process requires notice and an opportunity to defend). Under Washington law, Asten had no opportunity to defend itself against liability imposed for the injury-causing conduct of other parties, and it has no right even to *seek* reimbursement from those other parties who caused the damages Asten will be required to pay.

**VIII.      In the Alternative, Asten is Entitled to a Remittitur of the Jury Verdict.**

Asten moves this Court in the alternative for an order granting a remittitur pursuant to Fed. R. Civ. Pro. 59(e).  The amount awarded to plaintiffs by the jury on November 19, 2009, Docket No, 355, was excessive.  Asten challenges both the aggregate amount awarded and each separate amount awarded by the jury for economic damages, non-economic damages and Mrs. Barabin's loss of consortium.[12]

When the Court, after viewing the evidence concerning damages in a light most favorable to the prevailing party, determines that the damages award is excessive, it may (1) grant defendant's motion for a new trial based upon verdict excessiveness or (2) deny the motion conditioned upon the prevailing party accepting a remittitur.  *Fenner v. Dependable Trucking Co.*, 716 F.2d 598, 603 (9th Cir. 1983); *Shu-Tao Lin v. McDonnell Douglas Corp.*, 742 F.2d 45, 49 (2d Cir.1984) ("A remittitur is the process by which a court compels a plaintiff to choose between reduction of an excessive verdict and a new trial.").  The prevailing party may either submit to a new trial or accept the court's reduced amount of damages.  *Minthorne v. Seeburg Corp.*, 397 F.2d 237, 244-45 (9th Cir.1968); *Linn v. United*

---

[12] Mrs. Barabin's testimony of her fear of being left "destitute," coupled with the exclusion of collateral source evidence, certainly contributed to the excessive loss of consortium award.

ASTEN MOTION FOR NEW
TRIAL - 39
Case No. C07-1454

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1   *Plant Guard Workers of America, Local 114*, 383 U.S. 53, 65-66, 86 S.Ct. 657, 664, 15

2   L.Ed.2d 582 (1966).  If the prevailing party rejects the remittitur, a new trial must be granted.

3   *Fenner*, 716 F.2d at 603.[13]

4       To determine whether an award is excessive, federal courts have looked to and

5   compared awards in similar cases in the state.  By way of example, in *Raucci v. Town of*

6   *Rotterdam*, 902 F.2d 1050, 1058 (2nd Cir. 1990), the trial court reduced the verdict amount of

7

8   $250,000 for the wrongful death of the decedent minor to $100,000, the largest award in New

9   York.  *See also Knight v. Nurseryman Supply, Inc.*, 248 F. Supp. 925 (D.C. Tenn. 1965)

10  (finding that the court could consider what Tennessee reviewing courts had said in other

11  wrongful death cases).

12      With narrow exceptions not applicable here, awards of punitive damages in

13  Washington are forbidden as against public policy.  *See Dailey v. N. Coast Life Ins. Co.*, 129

14  Wn.2d 572, 574, 919 P.2d 589 (1996).  Nor may the jury circumvent this rule by awarding

15  punitive damages in the guise of excessive actual damages.  Washington courts that have

16

17  considered the outer bounds of actual damages have indicated that an award must be

18  supported by the evidence.  *Hill v. GTE Directories Sales Corp.*, 71 Wn. App. 132, 138-39,

19  856 P.2d 746 (1993) (finding remittitur of economic damages was appropriate where the

20  evidence did not support the verdict and where the non-economic damages, which were ten

21  times the amount of the economic damages, were not supported by the evidence and indicated

22  passion or prejudice "or an attempt to award punitive damages.").

23

24  _____

25  [13] However, where the jury verdict on liability is a product of passion or prejudice, a remittitur
    is not appropriate and the court must order a new trial.  *Minneapolis, St. Paul & Sault Ste.*

26  *Marie Ry. Co. v. Moquin*, 283 U.S. 520, 521, 51 S.Ct. 501, 502, 75 L.Ed. 1243 (1931); *Watec*
    *Co. Ltd. v. Liu*, 403 F.3d 645, 655 (9th Cir. 2005); *Seymour v. Summa Vista Cinema, Inc.*, 809

ASTEN MOTION FOR NEW
TRIAL - 40
Case No. C07-1454

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Of the 117 asbestos injury cases tried in Washington in the past twenty-seven years, fifty-three have resulted in a verdict for the Plaintiff.  First Declaration of G. William Shaw in Support of AstenJohnson, Inc.'s Motion ("1st Shaw Decl."), at ¶ 4.  The highest mesothelioma verdict reached by the jury was for $1,700,000 in the King County *Henderson v. Fraser's Broiler Service, Inc.*, Cause No. 01-1-02403-5-SEA, a living mesothelioma case where the plaintiff testified to direct exposure to the verdict defendant's products. *See* 1st Shaw Decl., at ¶ 6.  The only previous verdict in Washington against a <u>dryer felt</u> defendant, *Coulter v. ACandS, Inc.*, 01-2-34675-0 SEA was for at total amount of $242,500.00, with AstenJohnson assessed 5% liability and the plaintiff 2% liability.  *See* 1st Shaw Decl., at ¶ 9.

The jury's award in this matter of $10.2 million dollars is 42 times the largest amount ever awarded in Washington to a plaintiff claiming exposure from an asbestos-containing dryer felt (*Coulter*), and six times the largest amount ever awarded to a Washington mesothelioma plaintiff.  The jury's verdict is shockingly excessive compared to prior Washington verdicts in asbestos matters.  Indeed, the verdict suggests that the jury intended not only to compensate the plaintiffs, but to punish the defendants.  *Fountila v. Carter*, 571 F.2d 487, 492-93 (9th Cir. 1978) (noting the discrepancy between actual and punitive damages was "striking", and led the court to express "anxious concern that the verdict may have been reached in an improvident manner."); *Hill*, 71 Wn. App. at 138-39 (discrepancy between economic and non-economic damages, and the paucity of evidence, led the court to believe that the jury improperly awarded punitive damages).[14]  A remittitur of the jury's award is

---

F.2d 1385, 1387 (9th Cir. 1987); Wright & Miller, *Federal Practice and Procedure*, § 2815 (2d Ed.)

[14] Mr. Nevin's closing arguments in fact urged the jury to award punitive damage, asking that

ASTEN MOTION FOR NEW TRIAL - 41

Case No. C07-1454

K:\2038878\00554\20514_GWS\20514P28BL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

both appropriate and necessary in this matter.

**IX.        Adoption of AstenJohnson's Rule 50(b) Motion for Judgment as a Matter of Law; Joinder and Adoption of Scapa's Rule 50(b) Motion.**

Asten adopts and incorporates by reference its previously filed Motion for Judgment as a Matter of Law and the renewals thereof.  Asten joins in, adopts, and incorporates by reference, Scapa's Motion for Judgment as a Matter of law, and the renewals thereof.

**X.  Joinder and Adoption of Scapa's Motion for New Trial.**

Asten joins in, adopts, and incorporates by reference Scapa's motion for new trial.

**XI.        Conclusion.**

Asten respectfully requests that the Court grant Asten a new trial or in the alternative a remittitur of the jury's verdict, and award Asten any other relief to which it is entitled.

RESPECTFULLY SUBMITTED this 18th day of December, 2009.

K&L GATES LLP

By   _/s/ G. William Shaw_____
G. William Shaw, WSBA # 8573
Martha Rodriguez-Lopez, WSBA # 35466
Michelle Jensen, WSBA #36611
Attorneys for Defendant
AstenJohnson, Inc.

the jury's verdict:
>    strike a blow for the good companies out there that have always spent the money and the resources to do the testing, to do what is right, to not put out hazardous products in the marketplace.  A verdict for the Barabin family is not just for the Barabins, it is for all those good companies.

(11/16/09 178:5-9).

ASTEN MOTION FOR NEW
TRIAL - 42

Case No. C07-1454

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  I hereby certify that on December 18, 2009 I electronically filed the foregoing with the Clerk
   of the Court using the CM/ECF system which will send notification of such filing to the
2  following:

3

Gilbert L. Purcell                                     Barry Neal Mesher
4  gpurcell@gbraytonlaw.com                            mesherb@lanepowell.com

5  Cameron O. Carter                                   Lisa Christine Williams
   ccarter@braytonlaw.com                              lwilliams@williamskastner.com
6
Jane Elizabeth Vetto                                   Jeffrey M. Odom
7  jvetto@braytonlaw.com                               odomj@lanepowell.com

8  Forrest Ren Wilkes                                  William Ivan Aloe
   ren@fpwk.com                                        waloe@williamskastner.com
9
H. Lane Young, II                                      Robert U. Bokelman
10  lyoung@hplegal.com                                 BBokelman@braytonlaw.com

11  M. Elizabeth O'Neill                               James P. Nevin
    eoneill@hplegal.com                                JNevin@braytonlaw.com
12
S. Christopher Collier                                 Robert B. Gilbreath
13  ccollier@hplegal.com                               rgilbreath@hplegal.com

14  Jan Catherine Kirkwood
    jkirkwood@williamskastner.com
15

16                                                          /s/ Laura G. White
                                                       Laura G. White
17                                                     Secretary to G. William Shaw
                                                       K&L Gates LLP
18                                                     925 4th Avenue, Suite 2900
                                                       Seattle, Washington  98104
19                                                     Phone:  (206) 370-7952
                                                       Fax:  (206) 623-7022
20                                                     Email:  laura.white@klgates.com

21

22

23

24

25

26

ASTEN MOTION FOR NEW
TRIAL - 43
Case No. C07-1454
K:\2038878\00554\20514_GWS\20514P28BL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022