1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HENRY BARABIN and
GERALDINE BARABIN,

            Plaintiffs,

      v.

ASTENJOHNSON, INC. and
SCAPA DRYER FABRICS, INC.,
            Defendants.

No. C07-1454 RSL

ORDER DENYING DEFENDANTS'
MOTIONS FOR A NEW TRIAL OR, IN
THE ALTERNATIVE REMITTITUR

## I.   INTRODUCTION

      This matter comes before the Court on defendants' motions for a new trial or, in the

alternative, for remittitur (Dkt. ## 386, 396), and defendants' motion for an evidentiary hearing

regarding potential juror misconduct (Dkt. #497).  Defendants AstenJohnson, Inc. ("Asten")

and Scapa Dryer Fabrics, Inc. ("Scapa") move for a new trial on essentially the same grounds:

(1) juror misconduct, (2) improper evidentiary rulings, (3) incorrect jury charges, (4) improper

and inflammatory argument by plaintiffs' counsel, (5) insufficient evidence to support the

verdict, and (6) the unconstitutionality of Washington State tort law.  Defendants request

remittitur in the alternative to a new trial.   Having heard oral argument on these issues and

having reviewed the submissions of the parties, the Court DENIES defendants' motions for a

new trial and DENIES their alternative motions for remittitur.  The Court also DENIES

defendants' motion for an evidentiary hearing on potential juror misconduct.

ORDER DENYING DEFENDANTS'
MOTIONS FOR A NEW TRIAL, OR IN THE
ALTERNATIVE, REMITTITUR - 1

## II.   DISCUSSION

Defendants present a plethora of arguments, often summarily, in their motions for a new trial.  Some arguments are raised for the first time, such as juror misconduct and inflammatory argument by counsel.  Several other arguments -- for instance, as to the sufficiency of the evidence presented, the Court's previous evidentiary rulings, and the proper construction of Washington tort law -- ask the Court to revisit questions extensively briefed and ruled upon in previous motions.  This Order will focus primarily on the former category of arguments.

### A.   Allegations of Juror Misconduct

As the Ninth Circuit has noted, United States courts have historically been leery of investigating the deliberative processes of a jury:

> "The near-universal and firmly established common law rule in the United States flatly prohibited the admission of juror testimony to impeach a verdict." Tanner v. United States, 483 U.S. 107, 107 S. Ct. 2739, 2745, 97 L.Ed.2d 90 (1987); McDonald v. Pless, 238 U.S. 264, 267, 35 S. Ct. 783, 784, 59 L.Ed. 1300 (1915).  Exceptions were made only where it was alleged that an "extraneous influence" affected the jury; courts nearly always refused to admit juror testimony concerning internal abnormalities absent a contemporaneous adjudication or an extremely strong showing of juror incompetence. Tanner, 107 S. Ct. at 2746-47; see Mattox v. United States, 146 U.S. 140, 149, 13 S. Ct. 50, 53, 36 L.Ed. 917 (1892) (exception for situations involving extraneous influence); United States v. Pimentel, 654 F.2d 538, 542 (9th Cir.1981) (juror testimony admissible only concerning facts bearing on extraneous influence on deliberations).

Hard v. Burlington N. R.R., 870 F.2d 1454, 1460-61 (9th Cir. 1989) ("Hard II").  This long-standing policy discouraging the use of juror testimony to impeach the verdict is embodied in Fed. R. Evid. 606(b):

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith.  But a juror may testify about (1) whether extraneous prejudicial information was improperly brought to the jury's attention, (2) whether any outside

influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form. A juror's affidavit or evidence of any statement by the juror may not be received on a matter about which the juror would be precluded from testifying.

### 1.    __Juror Declaration__

Voting 10 to 1, the jury found Asten and Scapa liable for causing Mr. Barabin's mesothelioma under both strict liability and negligence theories.[1] Defendants now submit a declaration from the dissenting juror alleging abnormalities in the deliberative process. The declaration alleges that during deliberations (1) a juror revealed that she had been diagnosed with terminal cancer, (2) another juror revealed that she had received a legal settlement for injuries sustained by her and her daughter, (3) another juror revealed he had recently gone through bankruptcy proceedings, and (4) at one point the jury had calculated damages at $700,007, which led the dissenting juror to believe that several jurors were motivated by a regional bias against Scapa. Defendants contend that the declaration indicates that extraneous prejudicial information was brought to the jury's attention during deliberations so the declaration falls within one of the exceptions for admissible testimony listed in Rule 606(b). They also argue that the declaration indicates deceit on the part of several jurors during *voir dire*, citing Hard v. Burlington N. R.R., 812 F.2d 482, 485 (9th Cir. 1987) ("Hard I").

### 2.    __No Extraneous Information Under Fed. R. Evid. 606(b)__

Defendants argue that the juror declaration may be considered because its subject matter falls within the "extraneous prejudicial information" exception under Fed. R. Evid. 606(b). However, "[t]he type of after-acquired information that potentially taints a jury verdict should be carefully distinguished from the general knowledge, opinions, feelings, and bias that every juror carries into the jury room." Hard II, 870 F.2d at 1461.

---

[1] Upon being informed that there was a 10 to 1 split among the jury after 3 days of deliberation, the parties agreed to abide by a non-unanimous 10 to 1 verdict.

ORDER DENYING DEFENDANTS'
MOTIONS FOR A NEW TRIAL, OR IN THE
ALTERNATIVE, REMITTITUR - 3

The personal experience and knowledge described in the declaration does not constitute extraneous prejudicial information under Ninth Circuit law analyzing Rule 606(b).  It is undisputed that "[j]urors must rely on their past personal experiences when hearing a trial and deliberating on a verdict."  Hard I, 812 F.2d at 486.  The juror's personal knowledge constitutes extraneous prejudicial information where the juror has personal knowledge regarding the parties or issues involved in the litigation.  See id.  Because the juror declaration does not describe any extraneous matter of this type, it is not admissible as indicative of extraneous prejudicial information.

3.  **Hard I's Holding Regarding Statements Tending to Show Deceit**

Defendants argue that the declaration is admissible because Hard I held that "[s]tatements which tend to show deceit during *voir dire* are not barred by [Fed. R. Evid. 606(b)]."  812 F.2d at 485. Although this broad statement appears to hold that any juror statement tending to show any deceit during *voir dire* is admissible under 606(b), most courts that have looked at the question, including Hard II, have held otherwise.  See Williams v. Price, 343 F.3d 223, 236 n.5 (3d Cir. 2003) (Alito, J.) (noting Hard I appears "inconsistent with" Fed. R. Evid. 606(b)).  As other courts have noted, it is hard to reconcile the plain text of 606(b) with such a broad holding.  See United States v. Benally, 546 F.3d 1230, 1236 (10th Cir. 2008):

> We agree with the government that allowing juror testimony through the backdoor of a *voir dire* challenge risks swallowing the rule.  A broad question during *voir dire* could then justify the admission of any number of jury statements that would now be re-characterized as challenges to *voir dire* rather than challenges to the verdict.  Given the importance that Rule 606(b) places on protecting jury deliberations from judicial review, we cannot read it to justify as large a loophole as Mr. Benally requests.

ORDER DENYING DEFENDANTS'
MOTIONS FOR A NEW TRIAL, OR IN THE
ALTERNATIVE, REMITTITUR - 4

Upon closer scrutiny, the case cited in <u>Hard I</u> for the proposition that juror statements tending to show deceit are not barred by Fed. R. Evid. 606(b), <u>Maldonado v. Missouri Pacific Ry. Co.</u>, 798 F.2d 764, 770 (5th Cir. 1986), merely holds that statements tending to show deceit during *voir dire* about objective, extraneous matters may be admissible, but statements alleging dishonesty about jurors' subjective processes and biases are barred by the rule:

> Missouri Pacific argues that the jurors should have disclosed their prejudices in response to defense counsel's *voir dire* questions concerning the jurors' ability to treat Missouri Pacific like any other individual. However, defendant's motion did not indicate to the district court that any juror had concealed information during *voir dire*. <u>Vezina</u> involved circumstances suggesting that a juror had failed to disclose important information about an extraneous matter that could have affected deliberations. In the present case, Missouri Pacific sought to examine the jurors about their subjective thoughts during deliberations. Its motion did not indicate that any juror believed he or she would be unable to treat Missouri Pacific fairly but concealed that fact during *voir dire*. The testimony sought by Missouri Pacific clearly concerned matters shielded from inquiry by Rule 606(b).

<u>Maldonado</u>, 798 F.2d at 770. <u>See also</u> <u>United States v. Pimentel</u>, 654 F.2d 538, 542 (9th Cir. 1981) ("Testimony of a juror concerning the motives of individual jurors and conduct during deliberation is not admissible. Juror testimony is admissible only concerning facts bearing on extraneous influences on the deliberation, in the sense of overt acts of jury tampering."). <u>Maldonado's</u> distinction between juror bias and extraneous information comports with the facts and holding of <u>Hard I</u>, where one juror, though specifically asked during *voir dire*, allegedly failed to disclose that he previously had been employed by the defendant and shared his personal knowledge of defendant's settlement practices during deliberations. <u>See</u> <u>Hard I</u> at 486 ("Since Fraser's statements constitute evidence of extraneous influence, testimony as to their occurrence should not be barred by Federal Rule of Evidence 606(b)."). Viewing <u>Hard I</u> in light of <u>Maldonado</u>, it appears that the proper construction of <u>Hard I</u>'s language regarding juror statements tending to show deceit is that such statements are admissible under Rule 606(b)

ORDER DENYING DEFENDANTS'
MOTIONS FOR A NEW TRIAL, OR IN THE
ALTERNATIVE, REMITTITUR - 5

insofar as they indicate deceit during *voir dire* about extraneous experience under Fed. R. Evid. 606(b).  Indeed, <u>Hard II</u>'s reading of <u>Hard I</u> comports with this view.  <u>See Hard II</u>, 870 F.2d at 1457 (describing <u>Hard I</u>: "We . . . remanded for an evidentiary hearing on the issue of juror misconduct, determining that Fraser's statements constituted evidence of extraneous influence and that testimony as to their occurrence should not have been barred by Federal Rule of Evidence 606(b).").  <u>Hard II</u> then states the standard by which courts should consider juror testimony:

> Where affidavits or juror testimony or other evidence of juror statements are offered to impeach a verdict, the district court must examine this material to decide whether it falls within the categories of admissible juror testimony permitted by Rule 606(b). Rule 606(b) permits testimony only on the questions of "whether *extraneous prejudicial information* was improperly brought to the jury's attention" and "whether any *outside influence* was improperly brought to bear on any juror." Rule 606(b) (emphasis added). Jurors may not testify as to how they or other jurors were affected by the extraneous prejudicial information or outside influence; they may only testify as to its existence. <u>Abatino v. United States</u>, 750 F.2d 1442, 1446 (9th Cir.1985) ("[J]urors may not be questioned about the deliberative process or subjective effects of extraneous information, nor can such information be considered by the trial or appellate courts.") (quoting <u>United States v. Bagnariol</u>, 665 F.2d 877, 884-85 (9th Cir.1981), *cert. denied,* 456 U.S. 962, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1982)). Rule 606(b) bars not just juror testimony but evidence of any sort as to a statement by a juror concerning jury deliberations, so long as a juror would be barred from making the same statement in the form of testimony in court. D. Louisell & C. Mueller, <u>Federal Evidence</u> § 286 at 119 (1979) (1988 Supp.).

> Looking only at affidavits and testimony admissible under Rule 606(b), the court must decide whether an evidentiary hearing is required to determine whether a new trial is necessary.  An evidentiary hearing is justified only when these materials are sufficient on their face to require setting aside the verdict.  Where a losing party in a civil case seeks to impeach a jury verdict, it must

ORDER DENYING DEFENDANTS'
MOTIONS FOR A NEW TRIAL, OR IN THE
ALTERNATIVE, REMITTITUR - 6

> be shown by a preponderance of the evidence that the outcome
> would have been different. Unless the affidavits on their face
> support this conclusion, no evidentiary hearing is required. Unless
> such a showing is made at the evidentiary hearing, no new trial is
> required.

Hard II, 870 F.2d at 1461. After examining the precedent cited in Hard I, the Court is convinced that Hard II lays out the correct formulation of the law as stated in Fed. R. Evid. 606(b). Because the juror declaration is directed entirely at what occurred during deliberations and because it does not fall within any of the exceptions enumerated under 606(b), it is inadmissible under Rule 606(b).

### 4.   **Insufficient Evidence to Justify a New Trial or Hearing**

Even assuming the declaration is admissible under a broad reading of Hard I, the Court finds that an evidentiary hearing is not justified because the declaration is not sufficient on its face to require setting aside the verdict. Hard II, 870 F.2d at 1461. To obtain a new trial because of a juror's erroneous answer to *voir dire* questions, a party must: (1) demonstrate that a juror failed to answer honestly a material question on *voir dire*; and then (2) show that a correct response would have provided a valid basis for a challenge for cause. McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 556 (1984).

Defendants make two allegations of juror dishonesty during *voir dire*: (1) one juror's failure to disclose her cancer diagnosis; and (2) several jurors' failure to disclose their bias against Scapa because of Boeing's decision (which received local media coverage during voir dire) to locate new manufacturing facilities in Scapa's home state of South Carolina.

### a.   No Dishonesty as to Cancer Diagnosis

Counsel for Scapa asked the following question during *voir dire*:

> I need to find out, just like I talked to Ms. Maghie, is there anybody
> here that has had any experience with cancer in your life? I am not
> going to go into the details about it, but a close friend, a relative,
> perhaps yourself, has had an experience with cancer that you feel

ORDER DENYING DEFENDANTS'
MOTIONS FOR A NEW TRIAL, OR IN THE
ALTERNATIVE, REMITTITUR - 7

like, when you start hearing about someone suffering from cancer
and getting chemotherapy, and having the symptoms and problems
that go along with that, that you are going to be so overwhelmed,
feeling for the plaintiff, that you are just going to say, I really feel
like Mr. Barabin should get some money no matter what? Anybody
have any experience like that?

Dkt. #429 at 107.  Though several jurors raised their hands to discuss their experiences with

cancer, one juror ultimately selected to hear the case did not raise her hand.  The declaration

alleges that this juror revealed to the others during deliberations that she was diagnosed with a

terminal brain tumor.  Juror Declaration, ¶6.  The declaration further alleges, "She went on to

indicate something to the effect there is no amount of money that makes it easier."  Id.

Defendants argue that this juror's silence in response to Scapa's question constituted a

failure to honestly answer a material question during *voir dire* and that a correct answer would

have provided a basis to challenge for cause, satisfying the first and second prongs of

McDonough.  The Court finds, however, that defendants have not made a *prima facie* showing

that the juror failed to answer honestly.  Scapa's compound question to the jury asked the

potential jurors if (1) they had an experience with cancer (2) that would, in their opinion, make

them incapable of being objective.  Even assuming the facts in the declaration as true, it is

probable that this juror believed that she could be objective in assessing the liability or non-

liability of the defendants and so answered honestly when she did not raise her hand.

Regardless of how defendants would now have their question interpreted, "[w]hen *voir dire*

questions can be logically interpreted to mean something else to a juror, then a literal non-

disclosure on another reading of the question cannot be assumed merely for failure to answer

the question according to its intended meaning."  United States v. Robbins, 500 F.2d 650, 652

n.2 (5th Cir. 1974).  As the Ninth Circuit held in Hard II, "We agree with the Eleventh Circuit

that 'we cannot put upon the jury the duty to respond to questions not posed.'"  870 F.2d at

1460 (citing United States v. Kerr, 778 F.2d 690, 694 (11th Cir. 1985)).  Scapa's question can

ORDER DENYING DEFENDANTS'
MOTIONS FOR A NEW TRIAL, OR IN THE
ALTERNATIVE, REMITTITUR - 8

logically be interpreted to require responses only from those persons who believe their experiences with cancer would cause them to find for plaintiff "no matter what."[2]

Accordingly, even if the declaration were admitted, its allegations do not justify a new trial or evidentiary hearing because they do not state a *prima facie* case under McDonough. Hard II, 870 F.2d at 1461.

b.       No Evidence of Regional Bias

Defendants also argue that several jurors were dishonest about their alleged bias against Scapa and South Carolina. Counsel for Asten asked this question in *voir dire*:

> Scapa, a manufacturer of dryer fabrics which are used in paper
> mills. They are based in Charleston, South Carolina. I understand
> from Mr. Shaw that Charleston, South Carolina has been in the
> news of late here in Seattle. I wondered – From looking at your
> questionnaires a number of you have ties to Boeing or worked with
> Boeing. Is there anything about my client being from Charleston,
> and Charleston being in a contest with Seattle to get the new
> Boeing Dreamliner that would cause you to say, golly, there is a
> defendant from Charleston, we need to teach those Charleston folks
> a lesson?

Dkt. #429 at 111-12. No potential juror responded to this question. The declaration alleges:

> The issue of Boeing moving the 787 production line to South
> Carolina and that one of the defendants in this case was head-
> quartered in South Carolina must have been in the jury's mind
> during deliberations. In fact when the jury was deciding damages at
> one point the economic damages were listed as $700,007. This was
> a direct reference to Boeing and its commercial airplane line. One
> of the jurors who supported this particular calculation said
> something to the effect of "I wonder if they will get this?"

Juror Declaration, ¶7. Defendants contend the $700,007 figure evinces a "hidden message" that "members of the jury intended to send, via their verdict." See Asten Mot. at 6.

Juror affidavits alleging juror bias and "message" verdicts have been explicitly excluded under 606(b). Benally, 546 F.3d at 1241-42. Notwithstanding this law, even if the Court were to admit the declaration, it finds that there is not enough on the face of declaration to warrant

---

[2] In fact, a review of the transcript of the *voir dire* indicates that this was how the question was interpreted at the time. See Dkt. #429.

ORDER DENYING DEFENDANTS'
MOTIONS FOR A NEW TRIAL, OR IN THE
ALTERNATIVE, REMITTITUR - 9

an evidentiary hearing.  The declaration merely speculates as to the significance of the $700,007 figure.  <u>Contrast</u> <u>United States v. Henley</u>, 238 F.3d 1111, 1121 (9th Cir. 2001) (allegations of overtly racist statements made by juror before deliberations which indicated racial bias).  The Court has no doubt that defense counsel extracted the strongest possible declaration it could  from the dissenting juror, yet the most it can allege is what "must have been in the jury's mind."  Any further inquiry on this topic would necessarily go only to the jury's subjective processes, and this is exactly what Fed. R. Evid. 606(b) prohibits.  One juror's speculation about bias is not substantial enough evidence to warrant violating the sanctity of the jury room.  Therefore, even after considering the declaration's allegations of bias for the sake of argument, the Court is satisfied that it cannot justify either a new trial or an evidentiary hearing under the standard elucidated in <u>Hard II</u>.

B.     **Evidentiary Rulings**

Defendants next move for a new trial on the basis of many of the Court's evidentiary rulings.  "The trial court may grant a new trial, even though the verdict is supported by substantial evidence, if the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice."  <u>United States v. 4.0 Acres of Land</u>, 175 F.3d 1133, 1139 (9th Cir. 1999) (internal quotations omitted).  "While the trial court may weigh the evidence and credibility of the witnesses, the court is not justified in granting a new trial merely because it might have come to a different result from that reached by the jury."  <u>Roy v. Volkswagen of Am., Inc.</u>, 896 F.2d 1174, 1176 (9th Cir. 1990) (internal quotations omitted).  It is not "the courts' place to substitute our evaluations for those of the jurors."  <u>Union Oil Co. v. Terrible Herbst, Inc.</u>, 331 F.3d 735, 743 (9th Cir. 2003) (reversing district court's grant of a new trial where the "case was an eight-day jury trial and involved several different environmental

ORDER DENYING DEFENDANTS'
MOTIONS FOR A NEW TRIAL, OR IN THE
ALTERNATIVE, REMITTITUR - 10

1  pollutants and conflicting testimony.").  For the reasons that follow, the Court finds no basis to

2  order a new trial.

3      1.  **Plaintiffs' Experts**

4      Defendants again challenge the admissibility of the testimony of almost every expert

5  presented by plaintiffs.  Because these issues were briefed and decided previously through

6  motions *in limine*, the Court will only briefly address them here.

7      Rule 702 of the Federal Rules of Evidence provides for the admissibility of expert

8  testimony if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the

9  product of reliable principles and methods, and (3) the witness has applied the principles and

10 methods reliably to the facts of the case.  "Faced with a proffer of expert scientific testimony,

11 the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is

12 proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand

13 or determine a fact in issue."  Daubert v. Merrel Dow Pharm., Inc., 509 U.S. 579, 592 (1993).

14 This process requires the Court to make a "preliminary assessment of whether the reasoning or

15 methodology underlying the testimony is scientifically valid and of whether that reasoning or

16 methodology properly can be applied to the facts in issue."  Id.

17      Before trial, the Court scrutinized the credentials and proposed testimony of each of

18 plaintiffs' experts and found that their testimony qualified as scientific, technical, or specialized

19 knowledge which would help the jury to better understand the evidence and to determine facts

20 at issue.  The Court had initially excluded the testimony of industrial hygienist Kenneth Cohen

21 because plaintiffs did not present sufficient evidence and argument to prove Mr. Cohen's

22 expertise and the relevance of his testimony.  Upon further motion (Dkt. #267), wherein

23 plaintiffs presented, *inter alia*, Mr. Cohen's extensive experience and qualifications as an

24 industrial hygienist and further noted that Mr. Cohen's testimony had been recently admitted

25 under the more restrictive Frye standard in a case against the same defendants in Washington

26 State court, the Court reconsidered its preliminary ruling and found Mr. Cohen's testimony

ORDER DENYING DEFENDANTS'
MOTIONS FOR A NEW TRIAL, OR IN THE
ALTERNATIVE, REMITTITUR - 11

admissible under Fed. R. Evid. 702.   See Coulter v. AC & S, Inc. *et al.*, King County Superior Court Cause No. 01-2-34675-0SEA.   See also Emrick v. AC & S, Asten Group., Inc. *et al.*, Multnomah County (OR) Circuit Court Case No. 0002-02019 (Mr. Cohen testifying in similar dryer felt asbestos matter).   Agreeing with the sound reasoning of Judge Armstrong in Coulter, the Court placed certain limits on plaintiffs' experts' testimony, which they did not exceed. Defense counsel vigorously cross-examined plaintiffs' experts and presented their own experts to the jury.   The jury weighed the evidence presented and ultimately found for plaintiffs.   There is no basis for a new trial here.

2.      **Asbestos Textile Institute Documents and Defendants' Corporate Documents Were Properly Admitted**

Defendants argue that certain corporate documents indicating defendants' knowledge of the dangers of asbestos should not have been admitted in support of plaintiffs' negligence claim.   In a negligence claim against a product manufacturer, the manufacturer's knowledge of the product, its dangerousness, and the hazards involved in reasonably foreseeable uses of the product are all relevant in determining its culpability.   See Lockwood v. AC & S, Inc., 109 Wn.2d 235, 252 (1987).   To this end, plaintiffs submitted evidence from the Asbestos Textile Institute ("ATI") in relation to their negligence claim against Asten.   Similarly, plaintiffs submitted certain corporate documents from Asten and Scapa, which, plaintiffs argue, indicate that defendants were aware of the dangers of exposure to asbestos.   The Court admitted only a portion of the documents plaintiffs sought to introduce so that they would not be cumulative or overly prejudicial.   As Scapa was not a member of ATI, the jury was specifically instructed to consider the ATI documents only as to Asten's alleged negligence and to consider the corporate documents only as to the negligence claims against each defendant.   Such documents are routinely admitted into evidence in asbestos product liability negligence actions and there was no error admitting them here.   See Lockwood, 109 Wn.2d at 264.

Even assuming error, any error here would be harmless as the jury found both

ORDER DENYING DEFENDANTS'
MOTIONS FOR A NEW TRIAL, OR IN THE
ALTERNATIVE, REMITTITUR - 12

defendants guilty on both strict liability and negligence theories:

> We reverse only where an error is prejudicial, however.  Here, the
> error was harmless because the jury rendered a single monetary
> verdict on both the strict liability product-warning claim and the
> negligent failure-to-warn claim.  Because we affirm the judgment
> with respect to the strict liability product-warning claim, a reversal
> of the negligent failure-to-warn claim would not affect the
> judgment.

Mavroudis v. Pittsburgh-Corning Corp., 86 Wn. App. 22, 36 (1997).

### 3.    **Collateral Source Income Evidence**

Defendants argue that, though normally excluded by the collateral source rule, evidence of Mr. Barabin's medical insurance compensation and settlements from other defendants should have been presented to the jury because Mrs. Barabin "opened the door" to collateral source income evidence in testifying that she did not want "to be left destitute" as a result of her husband's illness.  Dkt. #432 at 17.  Though defendants failed to object to Mrs. Barabin's testimony at the time, they now argue that this testimony prejudiced the jury by implying that the Barabins had no other source of income.  They argue that the Court should order a new trial on this basis.

Generally, evidence of collateral source income is excluded under Washington law:

> This Court has long held that "payments, the origin of which is
> independent of the tort-feasor, received by a plaintiff because of
> injuries will not be considered to reduce the damages otherwise
> recoverable."  Ciminski v. SCI Corp., 90 Wash.2d 802, 804, 585
> P.2d 1182 (1978).  See also Johnson v. Weyerhaeuser Co., 134
> Wash.2d 795, 798, 953 P.2d 800 (1998).  Thus, courts generally
> exclude evidence that the plaintiff has received compensation from
> a third party for an injury for which the defendant has liability.
> Johnson, 134 Wash.2d at 798, 953 P.2d 800.  The "rule is designed
> to prevent the wrongdoer from benefitting from third-party
> payments."  Cox v. Lewiston Grain Growers, Inc., 86 Wash.App.
> 357, 375, 936 P.2d 1191 (1997).  Accordingly, "as between an
> injured plaintiff and a defendant-wrongdoer, the plaintiff is the
> appropriate one to receive the windfall."  Xieng v. Peoples Nat'l

ORDER DENYING DEFENDANTS'
MOTIONS FOR A NEW TRIAL, OR IN THE
ALTERNATIVE, REMITTITUR - 13

1
2

<u>Bank</u>, 120 Wash.2d 512, 523, 844 P.2d 389 (1993) (citing
<u>Ciminski</u>, 90 Wash.2d at 804, 585 P.2d 1182).

3

<u>Cox v. Spangler</u>, 141 Wn.2d 431, 439-40 (2000).  Defendants cite no case in any jurisdiction

4

where the trial court granted a new trial on this basis.  Nor do they cite a case where an

5

appellate court reversed a trial court's determination not to allow the introduction of collateral

6

source income.  The Washington cases cited in defendants' memoranda on this point are

7

inapposite to the facts here.  <u>See Johnson v Weyerhaeuser Co.</u>, 134 Wn.2d 795, 804 (1998)

8

(remanding for new trial and noting collateral source income would be admissible only if

9

plaintiff opens the door); <u>Marler v. Dep't of Ret. Sys.</u>, 100 Wn. App. 494, 505 (2000) (plaintiff

10

repeatedly testified that he had been granted a pension).  Further, defendants' failure to timely

11

object to Mrs. Barabin's testimony negates the basis of their motion.  "[A]n objection to the

12

introduction of testimony must be timely or it will be held to have been waived."  <u>United States</u>

13

<u>v. Carney</u>, 468 F.2d 354, 357 (8th Cir. 1972).  Defendants cannot argue now that Mrs.

14

Barabin's testimony warrants a new trial when they did not move to strike that testimony at

trial.

15

Defendants' further argument that settlements received by plaintiffs should have been

16

presented to the jury has even less basis under the law, as under Washington law any award

17

owed by defendants will be offset by those settlements.  Defendants cite no law to support this

argument.

18

        4.    **<u>Plaintiffs Were Properly Allowed to Present Their Causation Theory</u>**
            **<u>to the Jury</u>**

19

20

Defendants argue, somewhat vaguely, that plaintiffs should not have been permitted to

21

argue their "every fiber/total dose" theory of liability.  This characterization appears misleading

22

as the Court cannot recall any testimony from plaintiffs that "every fiber" of asbestos is

23

causative.  Nor did there appear to be significant disagreement among both parties' experts that

24

the total dose of asbestos exposure is relevant in determining the cause of a case of asbestos-

25

26

ORDER DENYING DEFENDANTS'
MOTIONS FOR A NEW TRIAL, OR IN THE
ALTERNATIVE, REMITTITUR - 14

related cancer.  Indeed, defendants' own expert, Dr. Samuel Hammar, perhaps the preeminent expert in his field, appeared to testify to plaintiffs' theory on cross examination:

> Q: Is the concept of total dose response in mesothelioma causation a controversy?
>
> A: I don't think that's too much of a controversy. The controversy, I think, would be potencies of different types of asbestos fibers, that Chrysotile is significantly lower than, say, Amosite or Crocidolite. I don't think that's of any significant controversy. There probably would be some controversy with respect to the significance of finding different types of fibers in the pleural tissue, and if that has any significance one way or the other. I think those are some areas of controversy that still haven't been worked out. . . . Basically, [ ] most of the exposures that a person has to asbestos contribute as a whole to cause their mesothelioma.
>
> Q: And what does it mean, subsection I right here? What's the point there?
>
> A: It says it's not valid to point to one exposure among the others and incriminate it as the sole cause of a mesothelioma, with exoneration of the other exposures.
>
> Q: Do you agree with that?
>
> A: Sure. . . . Yeah. It's not valid to point to one exposure among the others and exonerate it from a causative role in the development of a mesothelioma, and to incriminate all of the others. And that's just basically saying that if the person has multiple exposures, you just can't, say, throw one out and say that wasn't important. There is no way that you could say it was or was not important. You have to potentially include that, if a person actually did have that exposure.

Dkt. #438 at 59-60.  Dr. Hammar similarly agreed with the proposition that "if someone is exposed to a level of asbestos that they can breathe in, that exposure is, regardless of the source of the fiber, significant and substantial in causing mesothelioma in someone with

ORDER DENYING DEFENDANTS'
MOTIONS FOR A NEW TRIAL, OR IN THE
ALTERNATIVE, REMITTITUR - 15

1    mesothelioma."  Id. at 55.  Thus, it appears to the Court that defendants' causation expert

2    testified to the same theory they seek to exclude.

3            C.      **Jury Instructions and Verdict Form**

4                    1.      **The Pattern Instruction on Cause was Correct**

5            Defendants argue that the jury was improperly instructed on what is a "substantial

6    factor" under Washington law.  However, the language the defendants complain of was taken

7    verbatim from the most recent edition of the Washington Pattern Jury Instructions: "The term

     "proximate cause" means a cause that was a substantial factor in bringing about the *[injury]*

8    *[event]* even if the result would have occurred without it."  6 Wn. Prac., Wn. Pattern Jury Instr.

9    Civ. WPI 15.02.

10           As the Court has noted in its previous orders, the Washington Supreme Court has not

11   established how the substantial factor causation standard is to be applied in asbestos-injury

12   cases.  In Mavroudis v. Pittsburgh-Corning Corp., 86 Wn. App. 22 (1997), the Court of

13   Appeals analyzed Hue v. Farmboy Spray Co., Inc., 127 Wn.2d 67 (1995), a pesticide case in

14   which the Washington Supreme Court found that "the plaintiff only needed to show that a

     portion of a defendant's pesticide became part of the total cloud of pesticide that caused the

15   damage."  86 Wn. App. at 30.  "[T]he Hue court certainly implied that asbestos-injury plaintiffs

16   need not prove or apportion individual causal responsibility but need only show that the

17   defendant's asbestos products were among those in the plaintiff's work environment when the

18   injurious exposure occurred."  Id.  However, the Mavroudis court did not reach the issue since

19   it found that the plaintiff had shown that exposure to the defendant's product, "standing alone,

20   would have been sufficient to cause Mr. Mavroudis's injury."  Id. at 31.  The court based its

21   determination on the fact that the defendant's product was one of only three asbestos-

22   containing products during the time of exposure, that the defendant's product gave off very

23   substantial amounts of asbestos when cut, and that as little as ten percent of the asbestos

24   exposure the plaintiff received would have been sufficient to cause his mesothelioma.  Id.

25

26   ORDER DENYING DEFENDANTS'
     MOTIONS FOR A NEW TRIAL, OR IN THE
     ALTERNATIVE, REMITTITUR - 16

There is no question that under Washington law that it was plaintiffs' burden of proof at trial to demonstrate that each defendant's asbestos-containing product was "an important or material factor and not one that is insignificant." <u>Mavroudis</u>, 86 Wn. App. at 28. Plaintiffs had the burden to prove that Mr. Barabin was exposed to defendant's product and that the product was a substantial factor in bringing about the asbestos-related disease. They did not need to meet some quantitative threshold in order to establish causation. Nor did they need to establish that defendants' products were the sole cause of plaintiff's mesothelioma or could alone have caused the disease. Whether a defendant's product was a substantial factor depends on a number of factors, which were explored at trial. It was the jury's place to ultimately decide whether the defendants' asbestos-containing products were a substantial factor in causing Mr. Barabin's disease.

The Court believes that this articulation of the standard comports with the Washington Supreme Court's analysis in <u>Lockwood</u>, 109 Wn.2d at 247. The <u>Lockwood</u> court found that the evidence presented by plaintiff created a reasonable inference that he was exposed to defendant's product. "When this is combined with the expert testimony that all exposure to asbestos has a cumulative effect in contributing to the contraction of asbestosis, it would be reasonable for a jury to conclude that [the plaintiff's] exposure to [the defendant's] product was a proximate cause of his injury." <u>Id.</u> at 247-48. The <u>Lockwood</u> court did not require the plaintiff to establish that the defendant's product alone would have caused the plaintiff's injury.[3] Nor did it hold that there is no such thing as a *de minimis* contribution. Rather, it noted "a number of factors" a jury may consider in determining whether causation has been established. <u>Id.</u> at 248.

---

[3] <u>See</u> <u>Mavroudis</u>, 86 Wn. App. at 29 n.3 ("<u>Lockwood</u> was a challenge to the sufficiency-of-the-evidence case and not an instructional-error case. However, the court's ruling that where the evidence showed exposure to the defendant's product and an expert testified that all exposure to asbestos has a cumulative effect in contributing to the contraction of asbestosis, the jury could reasonably find that exposure to the defendant's product was a proximate cause is consistent with the giving of the substantial factor instruction.") (citing <u>Lockwood</u>, 109 Wn.2d at 247).

ORDER DENYING DEFENDANTS'
MOTIONS FOR A NEW TRIAL, OR IN THE
ALTERNATIVE, REMITTITUR - 17

The standard articulated by the Court and reflected in the jury instructions permitted each party to make its case regarding what the jury should consider "substantial."  Despite the defendants' disagreement with existing law, it was not error for the Court to instruct the jury using the pattern instruction published for that purpose.  The jury instructions given were sufficient if they permitted the defendants to argue their theory of the case.  Brewer v. City of Napa, 210 F.3d 1093, 1097 (9th Cir. 2000).  Here, the defendants were free to argue their theories of exposure and its relation to liability based on the instructions given.

2. **The Court Properly Did Not Include a "State of the Art" Component in Its Strict Liability Instruction**

Without supporting argument, defendants assert that the Court erred in not including a "state of the art" instruction in its jury instructions regarding strict liability.  As noted in the Court's order on motions *in limine*, evidence of industry custom and technological feasibility is generally inadmissible in strict liability claims, while permissible as a defense to negligence claims.  Lenhardt v. Ford Motor Co., 102 Wn.2d 208, 212-14 (1984); Koker v. Armstrong Cork, Inc., 60 Wn. App. 466, 476 (1991).  The jury instructions properly reflect this law.

3. **The Continuing Duty to Warn Instruction Was Correct**

Defendants argue the jury was erroneously instructed regarding plaintiffs' negligence claims on defendants' continuing duty to warn, yet cite no law to support the argument.  This argument appears to be foreclosed by Lockwood, which held that if a person's susceptibility to the danger caused by a product continues after that person's direct exposure to the product has ended, the manufacturer has a duty after exposure to exercise reasonable care to warn the person of known dangers, if the warning could help to prevent or lessen the harm.  Lockwood, 109 Wn.2d at 260.

In any case, as discussed previously, an error in the negligence instructions would be harmless here as the jury found both defendants liable on both strict liability and negligence theories.  Mavroudis, 86 Wn. App. at 36.

ORDER DENYING DEFENDANTS'
MOTIONS FOR A NEW TRIAL, OR IN THE
ALTERNATIVE, REMITTITUR - 18

4.   **It Was Not Error to Refuse the Defendants' Request for an "Exposure" Question on the Verdict Form**

Defendants contend that a question specifically asking if Mr. Barabin was exposed to asbestos from defendants' products should have been included in the special verdict form. However, they cite no law to support their argument.  After three weeks of testimony, much of which was focused on the question of exposure, it is indisputable that the jury understood that in order to find defendants liable for causing Mr. Barabin's injuries, they necessarily had to find that Mr. Barabin was exposed to asbestos from their products.

D.   **Improper and Inflammatory Argument by Plaintiffs' Counsel**

Defendants move for a new trial on the basis of plaintiffs' counsel's improper and inflammatory statement during closing.

> MR. NEVIN: . . . . They are part of the many people that these defendants have been hurting and killing over the years, and they are no different.
>
> MR. YOUNG: Your Honor, I don't think that is a proper argument.
>
> THE COURT: The objection is sustained to the form of the argument.
>
> MR. YOUNG: We move to strike, your Honor.
>
> THE COURT: The jury should consider the law as I read it to you and the facts here. It is not fair to compare them to -- in the manner that Mr. Nevin just did, and you should disregard that argument.

Dkt. #441 at 62-63.  The Court agrees that counsel's statement was an improper appeal to the jury's passions.[4]  However, defendants objected to the statement at the time it

_____

[4] The Court does not condone this and other aspects of plaintiff's counsel's closing argument where he compared the defendants to drunk drivers, unfaithful politicians and child abductors.  Dkt. #441 at 177 (no objection made).  The Court notes that the jurors themselves rebuffed counsel with one of them (not the dissenting juror who differed with the other 10) taking the extraordinary step of interrupting counsel's closing argument to ask him to "make his point without yelling at us." Dkt. #441 at 179.  It is much more likely the jury was swayed by testimony and evidence than anything plaintiff's counsel said during closing argument.

ORDER DENYING DEFENDANTS'
MOTIONS FOR A NEW TRIAL, OR IN THE
ALTERNATIVE, REMITTITUR - 19

was made.  The objection was promptly sustained and the jury was instructed to disregard the improper argument.

To warrant reversal of the jury's verdict on grounds of attorney misconduct, however, "the flavor of misconduct must sufficiently permeate an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict." Kehr v. Smith Barney, Harris Upham & Co., Inc., 736 F.2d 1283, 1286 (9th Cir. 1984) ("We have no trouble concluding that Lauchengco's remarks were improper. The only question before us, therefore, is whether the instances of misconduct so permeated the trial that the jury was necessarily prejudiced."). Here, the statement complained of was made in closing argument and did not permeate the proceedings so as to warrant a new trial. Id. at 1286 (upholding denial of motion for new trial because "the offending remarks occurred principally during opening statement and closing argument, rather than throughout the course of the trial.  They were isolated, rather than persistent.").

E.     **Sufficient Evidence to Support the Verdict**

Defendants argue that there was insufficient evidence to support the verdict.  As explained in more detail in its order denying judgment as a matter of law, the Court finds that there was sufficient evidence to support a finding of liability in this case.  "Circumstantial evidence may establish the entire basis for recovery under either negligence or strict products liability." Lockwood v. AC & S, Inc., 44 Wn. App. 330, 354 (1986).  It was not unreasonable for the jury to conclude that defendants' products were a substantial factor in causing Mr. Barabin's mesothelioma after defendants stipulated to supplying asbestos-containing dryer felts to the Camas Mill during the time Mr. Barabin was regularly handling dryer felts at the Camas Mill and in light of plaintiffs' expert causation testimony.

ORDER DENYING DEFENDANTS'
MOTIONS FOR A NEW TRIAL, OR IN THE
ALTERNATIVE, REMITTITUR - 20

1

F.      **Constitutionality of Washington State Tort Law**

2          Defendants note that under RCW 4.22.070, they are subject to joint and several liability,

3    unlike many categories of tortfeasors who are entitled to an apportionment of damages.

4    Defendants contend that because they were precluded from seeking apportionment and treated

5    differently under the law, they were deprived of their constitutional rights to equal protection

6    and due process.[5]

7          Before the Court reaches the substance of the constitutional challenges, it must address

8    plaintiffs' contention that defendants waived the issue by failing to raise it in connection with

9    the jury instructions and the special verdict form.  Defendants' motion is the first time they

10   have raised the constitutional issues.  Moreover, defendants could have anticipated the issues

11   and challenged the constitutionality of joint and several liability prior to the verdict.  Scapa

12   counters that any constitutional challenge to joint and several liability before or during trial

13   would have been premature.  At that point, because no finding of liability had been imposed,

14   any consideration of the propriety of joint and several liability would have been hypothetical.

     Courts "will not 'anticipate a question of constitutional law in advance of the necessity of

15   deciding it.'"  Stoner v. Presbyterian Univ. Hosp., 609 F.2d 109, 111 (3d Cir. 1979) (quoting

     Ashwander v. TVA, 297 U.S. 288, 346-47 (1936) (Brandeis, J., concurring)).

16         Defendants' argument shows, at most, that a *decision* on the merits of the constitutional

17   issues before the jury rendered its verdict may have been unnecessary.  However, it does not

18   address the issue of whether defendants should have raised the issue sooner.  The jury

19   determined fault and the extent of damages.  Accordingly, under defendants' theory, the jury

20   should have been allowed to apportion fault between the defendants, and perhaps among other

21   parties too.  Practically, the only way the jury could have done so was through the verdict form

22   and a related jury instruction.  Nevertheless, defendants failed to object to the Court's jury

23   _____

     [5] The Washington state Attorney General was given an opportunity to address the challenge
24   to the constitutionality of the statute, but declined to intervene or otherwise respond to the
     issue. Dkt. #467.
25

26   ORDER DENYING DEFENDANTS'
     MOTIONS FOR A NEW TRIAL, OR IN THE
     ALTERNATIVE, REMITTITUR - 21

instructions and verdict form, which did not allow for apportionment.  In fact, defendants' own proposed verdict form did not include any opportunity for the jury to apportion damages.  Dkt. #319 at 69-71.  Additionally, defendants considered the controlling law and proposed an instruction that did not seek apportionment.  See Dkt. #319 at 53 ("Proposed verdict forms and special interrogatories proposed by Defendants reflect traditional joint and several liability principles and do not seek to have the jury apportion fault.").  By failing to object to the jury instructions and verdict form, and by considering and rejecting an instruction on apportionment, defendants waived the argument that fault should have been apportioned.  See Affordable Housing Dev. Corp. v. City of Fresno, 433 F.3d 1182, 1196 (9th Cir. 2006) (failure to object to instruction waives right to review); United States v. Perez, 116 F.3d 840, 845-46 & n.7 (9th Cir. 1997) (en banc) (defendant's error is waived where defendant has both invited the error and relinquished a known right).  See also Fed. R. Civ. P. 51.

Rather than accepting the allegedly flawed instructions and verdict form, defendants could have sought a verdict form that reflected apportionment, as the parties did in Coulter v. Asten Group, Inc., 135 Wn. App. 613 (2006).  In that case, the appellate court noted that counsel sought the use of a verdict form with lines for apportionment of fault "to prevent the necessity of a new trial if an appellate court were to agree with [defendant's] position." Coulter, 135 Wn. App. at 621 (finding that no waiver occurred).  In contrast, by failing to raise the issue in this case in a timely manner, defendants left the Court and parties with no option other than a new trial on the apportionment of damages if their constitutional argument were accepted.  Under those circumstances, the Court finds that a waiver occurred.  Accordingly, defendants' constitutional arguments do not support vacating the verdict.

G.     **Excessive Damages and Remittitur**

On a motion for new trial or remittitur, if the Court, after viewing the evidence concerning damages in the light most favorable to the prevailing party, determines that the damages award is excessive, it has two alternatives:  It may grant defendant's motion for a new

ORDER DENYING DEFENDANTS'
MOTIONS FOR A NEW TRIAL, OR IN THE
ALTERNATIVE, REMITTITUR - 22

trial or deny the motion conditional upon the prevailing party accepting a remittitur.  <u>Fenner v. Dependable Trucking Co., Inc.</u>, 716 F.2d 598, 603 (9th Cir. 1983).  "Generally, a jury's award of damages is entitled to great deference, and should be upheld unless it is clearly not supported by the evidence or only based on speculation or guesswork."  <u>In re First Alliance Mortg. Co.</u>, 471 F.3d 977, 1001, 1003 (9th Cir. 2006) (internal quotations omitted) (finding remittitur proper where the damages calculation was based on a legally incorrect theory of damages under the applicable California law).  The proper amount of a remittitur is the maximum amount sustainable by the evidence.  <u>D & S Redi-Mix v. Sierra Redi-Mix and Contracting Co.</u>, 692 F.2d 1245, 1249 (9th Cir. 1982).

Instead of arguing why the damage award is not supported by the evidence, defendants argue that the award should be reduced because it far exceeds other asbestos injury awards in Washington State.  Plaintiffs counter by citing awards in other jurisdictions which match or exceed the award here.  After reviewing the damages award, the evidence submitted to the jury, and applicable law, the Court finds that though the damages awarded by the jury in this case certainly exceed what the Court would have awarded, the Court cannot conclude that the award is unsustainable under the law after viewing the evidence concerning damages in a light most favorable to the plaintiffs.  The jury properly awarded economic damages of $700,000, taking into consideration plaintiffs' witnesses' largely uncontroverted expert testimony that economic damages in this case amounted to $771,200.  As to non-economic damages, the jury was instructed, pursuant to model jury instruction WPI 30.01.01, to exercise their judgment:

> Your award must be based upon evidence and not upon speculation, guess, or conjecture.  The law has not furnished us with any fixed standards by which to measure noneconomic damages. With reference to these matters you must be governed by your own judgment, by the evidence in the case, and by these instructions.

Dkt. # 350 at 27.  Quantifying the measure of non-economic damages is always difficult and the Court will respect the jury's determination.

ORDER DENYING DEFENDANTS'
MOTIONS FOR A NEW TRIAL, OR IN THE
ALTERNATIVE, REMITTITUR - 23

# III.   CONCLUSION

For all of the foregoing reasons, the Court DENIES defendants' motions for a new trial, or in the alternative, remittitur (Dkt. ## 386, 396), and motion for evidentiary hearing (Dkt. #497).  The Clerk of Court is directed to enter judgment in favor of plaintiffs Henry and Geraldine Barabin and against defendants AstenJohnson, Inc. and Scapa Dryer Fabrics, Inc. in the amount of $9,373,152.12, which reflects the $10.2 million jury verdict, less the offset in reasonable settlements of $836,114.61 (Dkt. #539), with interest under 28 U.S.C. § 1961 at the rate of 0.28 percent per annum, plus $9,266.73 in costs, which will accrue interest at the rate of 0.28 percent per annum as of February 2, 2010 (Dkt. #452). The judgment shall be entered *nunc pro tunc* as of November 20, 2009, the date of the initial judgment.  The Court urges the parties to resolve the issues raised in defendants' motion for continuance of temporary stay under Rule 62(d) (Dkt. #540) and motion to apportion the supersedeas bond (Dkt. #541).  This Order supersedes the Court's prior Order entered on September 13, 2010.  Dkt. #539.

DATED this 10th day of December, 2010.

Robert S. Lasnik
United States District Judge

ORDER DENYING DEFENDANTS'
MOTIONS FOR A NEW TRIAL, OR IN THE
ALTERNATIVE, REMITTITUR - 24