**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| HENRY BARABIN; GERALDINE BARABIN, <br> *Plaintiffs-Appellees*, <br><br> v. <br><br> ASTENJOHNSON, INC., <br> *Defendant-Appellant*. | No. 10-36142 <br><br> D.C. No. 2:07-cv-01454-RSL |
| HENRY BARABIN; GERALDINE BARABIN, <br> *Plaintiffs-Appellees*, <br><br> v. <br><br> ASTENJOHNSON, INC., <br> *Defendant*, <br><br> and <br><br> SCAPA DRYER FABRICS, INC., <br> *Defendant-Appellant*. | No. 11-35020 <br><br> D.C. No. 2:07-cv-01454-RSL <br><br><br><br> OPINION |

Appeals from the United States District Court
for the Western District of Washington
Robert S. Lasnik, District Judge, Presiding

Argued and Submitted
January 11, 2012—Seattle, Washington

Filed November 16, 2012

Before: A. Wallace Tashima, Susan P. Graber,
and Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Rawlinson;
Concurrence by Judge Tashima;
Concurrence by Judge Graber

## SUMMARY[*]

The panel vacated the district court's judgment and remanded for a new trial because the district court failed to fulfill its obligations under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

The panel held that the district court abused its discretion when it failed to conduct a *Daubert* hearing or otherwise make relevance and reliability determinations regarding expert testimony. The panel held that the court's decision in *Mukhtar v. California State University*, 299 F.3d 1053 (9th Cir. 2002), *amended by* 319 F.3d 1073 (9th Cir. 2003) (order), dictated that a new trial be provided in this circumstance.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

   Judge Tashima concurred in all aspects in the majority opinion, and wrote separately to address an issue not addressed by the majority.  Judge Tashima stated that it would be helpful if the district court would articulate whether there is an impeachment exception to the Washington collateral source rule.

   Judge Graber, joined by Judge Tashima, concurred fully in the majority opinion, but wrote separately to express her disagreement with the rule in *Mukhtar*, requiring the court to vacate and remand for a new trial.  Judge Graber would conditionally vacate the judgment and remand with instructions to make a new *Daubert* determination, and only if the expert testimony was deemed not reliable should the district court preside over a new trial.

## COUNSEL

Michael B. King (argued) and Emilia L. Sweeney, Carney Badley Spellman, P.S., Seattle, Washington, for AstenJohnson, Inc.

Mary H. Spillane and Daniel W. Ferm, Williams, Kastner & Gibbs, PLLC, Seattle, Washington, for Scapa Dryer Fabrics, Inc.

Cameron O. Carter, Brayton Purcell, LLP, Portland, Oregon; Philip A. Talmage (argued), and Sidney Tribe, Talmadge/Fitzpatrick, PLLC, Tukwila, Washington; Alan Brayton, Brayton Purcell, LLP, Novato, California, for Henry and Geraldine Barabin.

**OPINION**

RAWLINSON, Circuit Judge:

AstenJohnson, Inc. (AstenJohnson) and Scapa Dryer Fabrics, Inc. (Scapa), appeal the district court's entry of judgment in favor of Henry and Geraldine Barabin following a jury trial resolving Henry Barabin's claim that his mesothelioma was caused by occupational exposure to asbestos. AstenJohnson and Scapa manufactured dryer felts that contained asbestos and that were installed on paper machines used in the paper mill where Henry Barabin worked. As now relevant, AstenJohnson and Scapa contend that the district court abused its discretion by improperly admitting expert evidence.

We have jurisdiction pursuant to 28 U.S.C. § 1291. Because the district court failed to fulfill its obligations under *Daubert*,[1] we vacate the judgment and remand for a new trial.[2]

**I. BACKGROUND**

**A. Pre-trial motions and trial proceedings**

Henry Barabin was exposed to asbestos from 1964 through 1984. He was employed from 1968 until his retirement in 2001 at the Crown-Zellerbach paper mill, which used dryer felts containing asbestos supplied by

---

[1] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

[2] Because of our determination that a new trial is warranted on this basis, we do not address the other issues raised on appeal.

BARABIN v. ASTENJOHNSON, INC. 5

AstenJohnson and Scapa. During his employment, Henry worked in various jobs that exposed him to the dryer felts that AstenJohnson and Scapa provided. Henry also took pieces of dryer felt home to use in his garden.

In November, 2006, Henry was diagnosed with pleural malignant epithelial mesothelioma.[3] It is undisputed that exposure to respirable asbestos causes mesothelioma.

AstenJohnson filed a motion *in limine* to exclude Drs. Cohen[4] and Millette as expert witnesses. The district court excluded Dr. Cohen as an expert because of his "dubious credentials and his lack of expertise with regard to dryer felts and paper mills. . . " Additionally, the district court limited Dr. Millette's testimony requiring disclosure to the jury that Dr. Millette's tests were "performed under laboratory conditions which are not the same as conditions at [Henry's workplace]." This limitation significantly diminished the strength of Dr. Millette's prospective opinion.

During a pre-trial conference, the district court reversed its decision to exclude Dr. Cohen's testimony. The district court explained that in the Barabins' response to the motions *in limine*, the Barabins clarified Dr. Cohen's credentials, including that he had testified in other cases. The district court did not hold a *Daubert* hearing. *See Daubert*, 509 U.S.

---

[3] Pleural malignant mesothelioma is a rare cancer that affects the tissue surrounding the lungs. *See* http://www.mayoclinic.com (last visited Nov. 6, 2012).

[4] There was some dispute as to whether Dr. Cohen was legitimately referred to as a "doctor." We give him the benefit of the doubt because his correct title is not dispositive.

6        BARABIN v. ASTENJOHNSON, INC.

at 589 (setting forth the trial judge's gatekeeping obligation to ensure that prospective expert testimony is reliable).

**B.  Procedural history**

After presentation of Plaintiffs' case, AstenJohnson and Scapa filed motions for judgment as a matter of law, which were denied. After closing arguments and before the verdict, AstenJohnson and Scapa renewed their motions for judgment as a matter of law. The district court again denied the motions.

The jury found in favor of the Barabins and awarded damages totaling $10,200,000. The district court granted AstenJohnson's and Scapa's motions to vacate the judgment and scheduled a reasonableness hearing. After the hearing and after ruling that the damages award was reasonable, the district court applied an offset of $836,114.61 for previous settlements,[5] ultimately awarding $9,373,152.12, plus $9,266.73 in costs, to the Barabins.

Scapa then filed a motion for a new trial or, in the alternative, for remittitur, and also incorporated AstenJohnson's motion for a new trial. AstenJohnson and Scapa sought a new trial based on, among other things, improper admission of expert testimony. The district court denied the motions in their entirety.

---

[5] Washington law provides that if a plaintiff receives a settlement from another party, an offset occurs for the next tortfeasor unless the first settlement was unreasonable. *See* WASH. REV. CODE § 4.22.060(2).

After entry of judgment in favor of the Barabins, AstenJohnson and Scapa filed timely notices of appeal. We consolidated these two appeals.

## II. STANDARDS OF REVIEW

Evidentiary rulings are reviewed for abuse of discretion; however, we review a district court's interpretation of the Federal Rules of Evidence *de novo*. *See United States v. Urena*, 659 F.3d 903, 908 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 1608 (2012).

We review a district court's denial of a motion for new trial for abuse of discretion. *See United States v. Montes*, 628 F.3d 1183, 1187 (9th Cir.), *cert. denied* 131 S. Ct. 2468 and 132 S. Ct. 52 (2011).

## III.   DISCUSSION

**The district court abused its discretion when it failed to conduct a *Daubert* hearing or otherwise make relevance and reliability determinations regarding expert testimony.**

In its role as gatekeeper, the district court determines the relevance and reliability of expert testimony and its subsequent admission or exclusion. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011). Admission or exclusion under *Daubert* rests on the scientific reliability and relevance of the expert testimony. *See id.* The expert's opinion must be deduced from a "scientific method" to be admissible. *Id.* (citation omitted). "The test under *Daubert* is not the correctness of the expert's conclusions but the soundness of his methodology . . . ." *Primiano v. Cook*,

Case: 21-35297, 04/15/2021, ID: 12069528, DktEntry: 23-2, Page 8 of 15

8         BARABIN v. ASTENJOHNSON, INC.

598 F.3d 558, 564 (9th Cir. 2010), *as amended* (footnote reference and alteration omitted).

*Daubert* provided the following non-exhaustive factors for consideration in assessing the reliability of proffered expert testimony:

> (1) whether the scientific theory or technique can be (and has been) tested, (2) whether the theory or technique has been subjected to peer review and publication, (3) whether there is a known or potential error rate, and (4) whether the theory or technique is generally accepted in the relevant scientific community.

*Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1064 (9th Cir. 2002) (citations omitted).

After the district court's ruling resolving AstenJohson's motion *in limine* by excluding Dr. Cohen from testifying as an expert witness, the Barabins filed a Motion for Pre-Trial *Daubert* Hearing seeking reconsideration of the district court's ruling. Included within the motion was information describing Dr. Cohen's use as an expert in the Washington state courts and in other courts. After considering the information contained in the Barabins' motion, the district court declined to hold a *Daubert* hearing. Rather, the district court simply reversed its prior exclusion of Dr. Cohen's testimony. The extent of the court's explanation was: "I think plaintiffs did a much better job of presenting to me the full factual basis behind Mr. Cohen testifying and his testimony in other cases. . . ."

BARABIN v. ASTENJOHNSON, INC.    9

Unfortunately, because no *Daubert* hearing was conducted as requested, the district court failed to assess the scientific methodologies, reasoning, or principles Dr. Cohen applied. None of the *Daubert* factors was considered. Instead, the court allowed the parties to submit the experts' unfiltered testimony to the jury.

It is notable that the district court's order originally addressing AstenJohnson's motion *in limine* expressed concerns with Dr. Millette's testing procedures and excluded Dr. Cohen's testimony altogether, due to its concerns regarding his credentials and expertise. Only after the Barabins provided additional information that Dr. Cohen had testified in other state court proceedings did the district court allow Dr. Cohen to testify as an expert.[6]

In federal courts, the admission of expert testimony is governed by Federal Rule of Evidence 702, as elucidated by the Supreme Court in *Daubert*. At the time of the trial in this case, Rule 702 provided:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of

---

[6] It is unlikely that the Washington state courts where Dr. Cohen testified used the *Daubert* standard in assessing the admissibility of Dr. Cohen's testimony. *See State v. Sipin*, 123 P.3d 862, 867 (Wash. Ct. App. 2005) ("In Washington, the *Frye* test is used to determine the admissibility of novel scientific evidence. . . .") (citation omitted); *see also Daubert*, 509 U.S. at 587 ("[T]he *Frye* test was superseded by the adoption of the Federal Rules of Evidence.") (footnote reference omitted).

> an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702 (2010).

Compliance with Rule 702 is gauged by the district court's assessment of the reliability of the proffered expert testimony. *See Daubert*, 509 U.S. at 589. Specifically, the district court is charged with determining whether the proffered expert testimony is trustworthy. *See id.* at 590 n.9. "In a case involving scientific evidence, *evidentiary reliability* will be based upon *scientific validity*." *Id.* (emphases in the original). Scientific validity is, in turn, assessed in large part by the degree to which the theories propounded by the expert have been subjected to and survived scrutiny in the relevant scientific community. *See Mukhtar*, 299 F.3d at 1063-64.

As we observed in *Mukhtar*, the decision to admit or exclude expert testimony is often the difference between winning and losing a case. *See id.* at 1067-68 (noting that once the challenged expert testimony was excluded no evidence of discrimination remained). The potentially significant influence of expert testimony underscores the importance of assiduous "gatekeeping" by trial judges.

Once presented with the additional information in the Barabins' response to the motion *in limine*, at a minimum the district court was required to assess the scientific reliability of the proffered expert testimony. *See Ellis*, 657 F.3d at 982

("Under *Daubert*, the trial court must act as a 'gatekeeper' to exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards . . .") (citation omitted). In failing to do so, the district court neglected to perform its gatekeeping role. *See Mukhtar*, 299 F.3d at 1066 ("*Kumho* [*Tire Co. v. Carmichael*, 526 U.S. 137 (1999),] and *Daubert* make it clear that the court must, on the record, make *some* kind of reliability determination.") (citation omitted) (emphasis in the original).

Rather than making the required determinations, the district court left it to the jury to determine the relevance and reliability of the proffered expert testimony in the first instance. In its order, the district court wrote:

> There is obviously a strong divide among both scientists and courts on whether such expert testimony is *relevant* to asbestos-related cases. *In the interest of allowing each party to try its case to the jury*, the Court deems admissible expert testimony that every exposure can cause an asbestos-related disease.

(Emphases added).

Under our precedent, the district court's decision to allow presentation of the expert testimony to the jury without making any gateway determinations regarding relevance and reliability constituted an abuse of discretion requiring a new trial. *See id.* at 1063 (noting the "trial court's 'special obligation' to determine the relevance and reliability of an expert's testimony") (citation omitted); *see also id.* at 1068 (remanding for a new trial where the expert's testimony was

admitted "without the proper reliability determination" and the error was not harmless).[7]

The district court committed reversible error when it failed to assess the proffered expert testimony for relevance and reliability. *See id.* Our decision in *Mukhtar* dictates that a new trial be provided in this circumstance. *See id.* Accordingly, the district court abused its discretion when it denied AstenJohnson's and Scapa's motions for a new trial. *See Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (explaining that we may reverse the denial of a motion for a new trial when the district court has "made a mistake of law") (citation omitted).

**JUDGMENT VACATED and CASE REMANDED for a new trial. Each party shall bear its own costs on appeal.**

---

TASHIMA, Circuit Judge, concurring:

I concur in all respects in the majority opinion, as well as in Judge Graber's concurring opinion. I write separately briefly to address another issue raised in this appeal, which the majority does not address, because it is likely to arise again on retrial.

At the trial, plaintiff Geraldine Barabin, Henry Barabin's wife, testified that she wanted to be able to maintain her health, continue caring for Henry, and be able to pay for Henry's necessary medications. She further testified that she

---

[7] The Barabins do not argue that any error in admitting Dr. Cohen's testimony was harmless.

did not "want to be left destitute," implying that she would be so left without a recovery from defendants. On cross-examination, defendants sought to impeach Mrs. Barabin's credibility regarding her fear of financial destitution by reference to collateral source evidence. The district court sustained plaintiffs' objection to this line of inquiry without extended discussion, citing the collateral source rule, which generally bars such evidence.

But no reported Washington case appears to have confronted the question of whether evidence of collateral source payments can be used for impeachment. Other jurisdictions, however, recognize an impeachment exception to the collateral source rule. *See, e.g., Corsetti v. Stone Co.*, 483 N.E.2d 793, 802 (Mass. 1985) ("Our cases have long recognized that in some circumstances, evidence of collateral source income may be admissible . . . 'as probative of a relevant proposition . . . *or credibility of a particular witness.*'" (emphasis in original)); *McKinney v. Cal. Portland Cement Co.*, 117 Cal. Rptr. 2d 849, 855-56 (Ct. App. 2002) ("There are exceptions to the [collateral source] rule of exclusion, for example, where the defendant is allowed to introduce otherwise inadmissible evidence . . . to impeach self-serving testimony . . . ."). Similarly, the Supreme Court has recognized that even evidence excludable under the *Miranda* rule is admissible for impeachment. *See Harris v. New York*, 401 U.S. 222, 224-25 (1971).

The district court appears not to have considered whether the Washington Supreme Court would, if so confronted, recognize an impeachment exception to the collateral source rule, but relied only on the "well-established" general rule. Because there appear to be good grounds to recognize an impeachment exception to the Washington collateral source

rule, and because of the lack of controlling Washington case law, should the issue arise again on retrial, it would be helpful on appeal if the district court would articulate the reasons for its ruling on this issue.

---

GRABER, Circuit Judge, with whom TASHIMA, Circuit Judge, joins, concurring:

I concur fully in the majority opinion. The district court failed to explain adequately its reasons for admitting the expert testimony, and the error was not harmless. Accordingly, the judgment cannot stand.

I write separately, however, to express my disagreement with the rule that, pursuant to *Mukhtar v. California State University*, 299 F.3d 1053 (9th Cir. 2002), *amended by* 319 F.3d 1073 (9th Cir. 2003) (order), we must vacate the judgment and remand *for a new trial*. On remand, the district court dutifully will make a new *Daubert* determination. If the court finds that the expert testimony is, indeed, reliable, what purpose is served by empaneling a new jury and conducting another lengthy trial the outcome of which likely will be identical to the one already concluded? *Mukhtar* answers that query by holding that we cannot trust a district court not to succumb to "post-hoc rationalization." 319 F.3d at 1074. But we routinely trust district courts to reassess their earlier judgments in matters of more consequence than disputes over money. *See, e.g., United States v. Ameline*, 409 F.3d 1073 (9th Cir. 2005) (en banc). Regardless, I do not share *Mukhtar*'s lack of faith in our district courts.

Were it not for *Mukhtar*, I would conditionally vacate the judgment and remand to the district court with instructions to

make a new *Daubert* determination. If the expert testimony is reliable, then the original judgment should be re-entered. If the expert testimony is not reliable, then the court should preside over a new trial. *See Mukhtar*, 319 F.3d at 1077 (Reinhardt, J., dissenting from denial of reh'g en banc).