UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GERALDINE BARABIN,<br><br>　　　　　　Plaintiff,<br>　v.<br><br>SCAPA DRYER FABRICS, INC.,<br><br>　　　　　　Defendant. | CASE NO. C07-1454JLR<br><br>ORDER DENYING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT |

## I.　　INTRODUCTION

This matter comes before the court on Defendant Scapa Dryer Fabrics, Inc.'s ("Scapa") motion for summary judgment. (MSJ (Dkt. # 672).) Scapa argues that Plaintiff Geraldine Barabin is unable to meet her burden of proof that Scapa products proximately caused Henry Barabin's asbestos-related disease. (*See generally id.*) Ms. Barabin opposes the motion. (Resp. (Dkt. # 685).) The court has considered the motion, the parties' submissions in favor of and in opposition to the motion, the relevant portions
//

ORDER - 1

of the record, and the applicable law. Being fully advised,[1] the court DENIES Scapa's motion for summary judgment.

## II. BACKGROUND

This case arises from Mr. Barabin's alleged exposure to asbestos-containing products manufactured or sold by Scapa during his employment at the Crown-Zellerbach paper mill in Camas, Washington ("the Camas paper mill" or "the paper mill"). (*See* MSJ at 2; Resp. at 2-3.) The court has extensively detailed the factual and procedural background of this case in numerous prior orders. (*See, e.g.*, 12/12/07 Order (Dkt. # 63); 8/18/09 Order (Dkt. # 200); 12/10/10 1st Order (Dkt. # 550); 12/10/10 2d Order (Dkt. # 551); 2/12/18 Order (Dkt. # 698).) Thus, in this order, the court recounts only the facts salient to Scapa's instant motion.

The Camas paper mill consists of several buildings, plants, power stations, and warehouses that assist in the making, packaging, and shipping of paper. (MacKenzie Decl. (Dkt. # 673) ¶ 9, Ex. 9 at 10.) There are around 16 paper machines at the paper mill. (Good Decl. (Dkt. # 686) ¶ 12, Ex. 10 ("Barabin Tr. Testimony") at 12:16-18.) These paper machines utilized dryer felts: absorbent, fabric-like material that were used to move wet sheets of paper through the drying end of a paper machine. (*Id.* at 11:9-17.) It is undisputed that Scapa manufactured and sold both asbestos-containing and non-asbestos-containing dryer felts to the Camas paper mill. (MacKenzie Decl. ¶ 11, Ex. 11

//

---

[1] Both parties request oral argument (*see* MSJ at 1; Resp. at 1), but the court finds that oral argument would not be helpful to the court's disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4). Accordingly, the court denies the parties' request.

at 4-5; *see also* MSJ at 4-5 ("It is undisputed that during 1964-1982 Scapa sold 505 dryer felts to the Camas Mill.").) Scapa dryer felts were utilized on many of the paper machines at varying time periods during Mr. Barabin's time there.[2]

Mr. Barabin worked at the Camas paper mill in several positions from 1968 to 2001. (Barabin Tr. Testimony at 9:8-12.) During these 33 years, the jobs required him to work on and around several of the paper machines at the mill. (*Id.* at 21:12-19, 55:21-56:3.) Around 1974, Mr. Barabin became a "spare hand," a job that required him to "work[] on whatever machine that needs you." (*Id.* at 28:2-4.) Part of his duties included using high pressured hoses to blow the dust and paper out of the dryers when the paper sheets were caught in the dryer. (*Id.* at 28:12-29:24.) That same year, Mr. Barabin transitioned to the role of "fifth hand" on paper machines 7 and 8, although he also worked on machines 4, 5, and 6. (*Id.* at 32:13-33:5.) As a fifth hand, he would participate in dryer felt change-outs, which required him to cut old dryer felts out of the machine and fasten new ones in their place, particularly during machine shutdowns; he also used compressed air to clean out the dry end about once or twice a day. (*Id.* at 34:14-18, 37:14-38:6.) Mr. Barabin later worked as a "fourth hand" on paper machine 8, where he was also responsible for cleaning and assisting in dryer felt change-outs on

//

---

[2] Thirteen asbestos-containing dryer felts were utilized on paper machine 1 from 1968 to 1982; 37 were utilized on paper machine 2 from 1966 to 1982; 1 was utilized on paper machine 3 in 1973; 3 were used on paper machine 4 from 1973 to 1974; 73 were used on paper machine 5 from 1967 to 1977; 41 were used on paper machine 6 from 1965 to 1982; 5 were used on paper machine 7 from 1974 to 1981; 19 were used on paper machine 8 from 1965 to 1982; 2 were used on paper machine 9 from 1973 to 1975; 16 were used on paper machine 15 from 1967 to 1978; and 19 were utilized on paper machine 16 from 1964 to 1972. (Good Decl. ¶ 15, Ex. 13 ("Scapa Sales Chart") at 1-3.)

machines 4, 5, and 6. (*Id.* at 43:6-8; 44:6-7, 45:16-46:16; *see also* Good Decl. ¶ 16, Ex. 14 at 1.)

Around 1976, Mr. Barabin became a winderman on paper machines 7 and 8. (*Id.* at 46:19-21.) As a winderman, Mr. Barabin experienced a felt break, where a dryer felt broke into pieces. (*Id.* at 49:9-19.) After collecting the felt pieces, Mr. Barabin used compressed air to blow down the machine. (*Id.* at 50:3-8.) He continued to participate in changing the dryer felts and cleaning the dryers. (*Id.* at 51:9-19.) Afterwards, Mr. Barabin worked as a filterman and checked the "save-all" filters on all of the paper machines. (*Id.* at 53:6-8.) In 1984, he transitioned to working on paper machine 20 located in another building, where he stayed until his retirement in 2001. (*Id.* at 56:18-20, 57:9-11.)

Mr. Barabin remembers the Scapa brand in relation to the dryer felts while he was at the mill. (*Id.* at 62:1-4; *see also* MacKenzie Decl. ¶ 10, Ex. 10 at 163:4-7.) Specifically, he "knew [the Camas paper mill] had felts that were Scapa felts." (Barabin Tr. Testimony at 62:6-7.) However, he has "no particular knowledge of what particular felt we [were] putting on that particular machine." (*Id.* at 62:7-8.) Mr. Barabin's co-workers recall similar details: at most, they recall the name "Scapa" while working at the mill but cannot testify that they or Mr. Barabin personally worked with a Scapa product. (*See* MacKenzie Decl. ¶ 15, Ex. 15 ("Henry Dep.") at 58:17-19; *id.* ¶ 16, Ex. 16 ("Sanders Dep.") at 209:3-5; *id.* ¶ 12, Ex. 12 ("Mickes Dep.") at 167:20-169:16.)

Mr. Barabin was diagnosed with malignant pleural mesothelioma on or about November 1, 2006. (Good Decl. ¶ 11, Ex. 9 at 22.) This case originally went to trial in

November of 2009, and a jury returned a verdict in favor of the Barabins. (*See* Judgment (Dkt. # 355).) Scapa, along with then-defendant AstenJohnson, Inc. ("AstenJohnson"),[3] appealed. (*See* AstenJohnson Not. of Appeal (Dkt. # 443); Scapa Not. of Appeal (Dkt. # 565).) While the appeal was pending, Mr. Barabin passed away on March 30, 2012. (Good Decl. ¶ 10, Ex. 8 at 1; MacKenzie Decl. ¶ 3, Ex. 3, at 1.) Subsequently, the Ninth Circuit remanded the matter for a new trial. *See Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 467 (9th Cir. 2014) (en banc).

### III. ANALYSIS

#### A. Legal Standard

Summary judgment is appropriate if the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007). A fact is "material" if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson*, 477 U.S. at 248-49).

The moving party bears the initial burden of showing there is no genuine dispute of material fact and that it is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party does not bear the ultimate burden of persuasion at trial, it can

---

[3] Ms. Barabin and AstenJohnson recently reached settlement. (*See* Not. of Settlement (Dkt. # 694).)

show the absence of such a dispute in two ways: (1) by producing evidence negating an essential element of the nonmoving party's case, or (2) by showing that the nonmoving party lacks evidence of an essential element of its claim or defense. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). If the moving party meets its burden of production, the burden then shifts to the nonmoving party to identify specific facts from which a fact finder could reasonably find in the nonmoving party's favor. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 252.

The court is "required to view the facts and draw reasonable inferences in the light most favorable to the [nonmoving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court may not weigh evidence or make credibility determinations in analyzing a motion for summary judgment because those are "jury functions, not those of a judge." *Anderson*, 477 U.S. at 249-50. Nevertheless, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

**B.     Scapa's Motion for Summary Judgment**

Scapa maintains Ms. Barabin cannot meet her burden of proof that Mr. Barabin's mesothelioma was proximately caused by exposure to Scapa's asbestos-containing products. (MSJ at 1.) Specifically, Scapa argues that Ms. Barabin "cannot establish that Mr. Barabin worked in proximity to any products manufactured by Scapa—let alone that

those products actually contained asbestos-containing material."[4] (*Id.* at 10; *see also id.* at 8 (qualifying Ms. Barabin's evidence as "at best, purely speculative").) Ms. Barabin opposes the motion for two reasons. As a threshold matter, Ms. Barabin contends that Scapa's motion for summary judgment is "essentially the same motion" it filed before the case was remanded and thus should be stricken or denied outright. (Resp. at 10-12.) On the merits, Ms. Barabin argues that there is sufficient circumstantial evidence to allow a reasonable jury to infer that Mr. Barabin more likely than not was exposed to Scapa's asbestos-containing dryer felts. (*Id.* at 12-19.) The court addresses the threshold issue before turning to the merits of the motion.

1. Successive Motion for Summary Judgment

At the outset, the court permits Scapa's second motion for summary judgment. District courts have discretion to entertain second motions for summary judgment. *Hoffman v. Tonnemacher*, 593 F.3d 908, 909 (9th Cir. 2010). "[A]llowing a party to file a second motion for summary judgment is logical, and it fosters the 'just, speedy, and inexpensive' resolution of suits." *Id.* at 911 (quoting Fed. R. Civ. P. 1). However, courts should "weed out frivolous or simply repetitive motions." *Id.* In *Hoffman v. Tonnemacher*, the Ninth Circuit determined that the district court did not abuse its discretion in allowing a successive summary judgment motion after a mistrial; the new

---

[4] Scapa also argues that summary judgment should be granted because Ms. Barabin's causation expert testimonies are inadmissible for the reasons articulated in its motions to exclude. (MSJ at 13.) The court has since resolved Scapa's motions to exclude and held that two of Ms. Barabin's causation expert testimonies—those by Dr. Carl Brodkin and Dr. David Tarin—are admissible. (*See generally* 2/12/18 Order.) Thus, the court rejects this alternative ground for summary judgment.

deposition of an expert witness, the testimony at trial, and the addition of a new witness "expanded the factual record beyond what it had been at the time of the pretrial summary judgment motion." *Id.* at 912.

The same is true here. Before the first jury trial, Scapa filed a motion for summary judgment relying on the factual record available at that time. (*See* 7/2/09 MSJ (Dkt. # 152).) But since then, the record has been altered dramatically. Trial testimony—unavailable at the time of the pretrial summary judgment motion for obvious reasons—is now a part of the record. (*See* Resp. at 3-8 (relying on the "testimony of Mr. Barabin" as sufficient to defeat summary judgment); *see generally* Barabin Tr. Testimony.) Moreover, new depositions of the expert witnesses have been taken (*see* Good Decl. ¶ 24, Ex. 22 (including Dr. Brodkin's deposition taken on November 10, 2017)), and new expert witnesses have been added (*see id.* ¶¶ 17-22, Exs. 15-20 (including reports and depositions of three new expert witnesses: Dr. Steve Compton, Mr. Christopher DePasquale, and Dr. Richard Cohen)).[5] As in *Hoffman*, these additions "expanded the factual record beyond what it had been at the time of the pretrial summary judgment motion." *See* 593 F.3d at 912. Thus, although the court recognizes that Scapa's arguments in the two motions for summary judgment—and indeed, even some of the language used—are largely identical, the court will consider the merits of Scapa's motion.

---

[5] Dr. Richard Cohen is not the same individual as Dr. Kenneth Cohen, who was the expert-at-issue during the previous trial and the subsequent appeal. (*Compare* Good Decl. ¶ 21, Ex. 19 at 1 (Dr. Richard Cohen report), *with Barabin*, 740 F.3d at 461 (describing the Barabins' expert Kenneth Cohen).)

2. Causation

Under Washington law,[6] "the plaintiff must establish a reasonable connection between the injury, the product causing the injury, and the manufacturer of the product." *Lockwood v. AC & S, Inc.*, 744 P.2d 605, 612 (Wash. 1987). "This does not mean, however, that a plaintiff . . . must personally identify the manufacturers of asbestos products to which he was exposed in order to recover from those manufacturers." *Id.* Instead, "[c]ircumstantial evidence may establish the entire basis for recovery." *Lockwood v. AC & S, Inc.*, 722 P.2d 826, 840 (Wash. App. Ct. 1986); *see also Van Hout v. Celotex Corp.*, 853 P.2d 908, 913 (Wash. 1993) ("Plaintiffs in asbestos cases may rely on circumstantial evidence that the manufacturer's products were the source of their asbestos exposure.").

In *Lockwood v. AC & S, Inc.*, although there was "no direct evidence that [the plaintiff] worked with or near [the defendant's product] on the [vessel]," 744 P.2d at 611, the court nonetheless held that "it would be reasonable for a factfinder to infer that [the plaintiff] was exposed to [the defendant's] product," *id.* at 612. First, witness testimony established that the defendant's product was used on the ship where the plaintiff worked. *Id.* Second, expert testimony showed that the asbestos on the vessel drifted in the air and could be inhaled by bystanders. *Id.* Thus, the court concluded that "the evidence . . . presented creates a reasonable inference that [the plaintiff] was exposed to [the defendant's] product." *Id.* at 613. The *Lockwood* court then laid out several factors

---

[6] Because federal jurisdiction is based on the diversity of the parties, the court applies Washington state substantive law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

ORDER - 9

that a court should consider in determining whether exposure to a particular defendant's asbestos product actually caused the plaintiff's injury. *Id.* These include: (1) the "plaintiff's proximity to the asbestos product when the exposure occurred"; (2) "the expanse of the work site where asbestos fibers were released"; (3) "the extent of time that the plaintiff was exposed to the product"; (4) "the types of asbestos products to which the plaintiff was exposed"; (5) "the ways in which such products were handled and used"; and (6) "the evidence presented as to medical causation of the plaintiff's particular disease." *Id.*

Scapa focuses the majority of its briefing on the first and second *Lockwood* factors of proximity and expanse of the work site. (*See generally* MSJ.) Viewing the facts and drawing inferences in the light most favorable to Ms. Barabin, the court finds that Ms. Barabin provides enough evidence on these first two, as well as the remaining, *Lockwood* factors for a reasonable trier of fact to find in her favor.

First, Ms. Barabin provides evidence showing Mr. Barabin's proximity to the asbestos-containing dryer felts. More specifically, Ms. Barabin shows the number of Scapa asbestos-containing dryer felts used on each paper machine that Mr. Barabin worked in close proximity to. For instance, in 1974 and 1975, Mr. Barabin worked as a spare hand, a fifth hand, and a fourth hand on paper machine 6. (Barabin Tr. Testimony at 28:2-4, 32:13-33:5; Good Decl. ¶ 16, Ex. 14 at 1.) From 1965 to 1982, Scapa provided 41 dryer felts that contained asbestos fibers to be used on that machine. (Scapa Sales Chart at 1.) Similarly, from 1974 to 1984, Mr. Barabin worked on paper machine 8. (Barabin Tr. Testimony at 32:13-33:5, 46:19-21.) During that time, Scapa sold 19

ORDER - 10

asbestos-containing dryer felts to be used on machine 8. (Scapa Sales Chart at 1.) It bears repeating that while Mr. Barabin was working on these machines, his job responsibilities included manipulating, cutting, and cleaning the dryer felt used.[7] (*See* Barabin Tr. Testimony at 34:14-18, 37:14-38:6, 50:3-8, 51:9-19.) As in *Lockwood*, the sales records here provide sufficient evidence from which a reasonable juror can infer that Scapa's products were used, not only in the Camas paper mill, but also in close proximity to where Mr. Barabin worked.

To defeat proximity, Scapa points to the fact that neither Mr. Barabin nor his co-employees could testify that they personally worked with Scapa dryer felts. (MSJ at 10, 12.) But such direct testimony is not necessary. *See Lockwood*, 722 P.2d at 840 (recognizing that to require specific identification of the defendant products "would present an impossible task for plaintiffs in most asbestos cases"). Although the *Lockwood* court relied on witness testimony, *see* 744 P.2d at 612, the court did not indicate that witness testimony is required, or that it is the only way in which a plaintiff can demonstrate proximity, *see id.* Here, the Scapa sales records do what the witness testimony did in *Lockwood*—provide sufficient evidence from which a trier of fact could reasonably find that Scapa's asbestos-containing dryer felts were used in Mr. Barabin's

//

---

[7] Scapa maintains that there is no evidence that Mr. Barabin was "regularly involved in the replacement of dryer felts." (Reply (Dkt. # 687) at 8.) But Mr. Barabin's testimony indicates that he was involved with dryer felts fairly often. For instance, he testified that he would use compressed air to clean out the dry end of a paper machine, from "below inside the dyers, between the felts and the drums," about once or twice a day when there was a paper break. (Barabin Tr. Testimony at 29:20-24, 37:14-38:1.) This cleaning is in addition to Mr. Barabin's manipulation of dryer felts in change-outs, some machine shutdowns, and felt breaks. (*See, e.g., id.* at 27:3-5, 35:15-23, 39:7-9.)

work environment, namely the very machines that Mr. Barabin worked on. *See id.*; (*see generally* Scapa Sales Chart.) Even if witness testimony were required, Mr. Barabin testified to the paper mill having Scapa felts. (*See* Barabin Tr. Testimony at 62:6-7.) Moreover, two of Mr. Barabin's co-workers recognized the name "Scapa" in association with dryer felts used on the paper machines.[8] (*See* Mickes Dep. at 167:20-25; Sanders Dep. at 190:1-17.) These testimonies, in combination with the sales records information, are sufficient to preclude summary judgment.

Scapa also relies on the fact that in totality, the majority of its dryer felts sold to the Camas paper mill did not contain asbestos. (*See* MSJ at 12 ("[I]f Mr. Barabin worked in proximity to Scapa products, it is just as likely (if not more likely) that they were non-asbestos containing products as it is that they were asbestos-containing.").) Scapa correctly calculates that a slight majority of its dryer felts at the paper mill—54.65% to be exact—did not contain asbestos. (*See* Scapa Sales Chart.) But the court disagrees that this one statistic means no reasonable jury could infer that Mr. Barabin worked in proximity to Scapa asbestos-containing dryer felts. Again, the machine-specific evidence is illustrative here. For instance, Mr. Barabin worked with the dryer felts on paper machine 5 around 1974. (Barabin Tr. Testimony at 32:13-33:5, 43:6-8; 44:6-7, 45:16-46:16.) Between 1967 and 1977, 73 out of 75, or 97.33% of Scapa dryer felts on paper

//

---

[8] Mr. Mickes was asked whether he "recognize[s] a company by the name of Scapa," to which he responded "I recognize that name . . . I recognize that name when I worked on [machines] 7 and 8, I believe." (Mickes Dep. at 167:20-25.) Mr. Sanders was asked the same question and responded "[Y]eah, I do. I think they had dryer felts . . . seems like that's what I seen, like I remember them." (Sanders Dep. at 190:4-5, 190:16-17.)

machine 5 contained asbestos. (*See* Scapa Sales Chart at 1.) A reasonable juror could infer that, although only 45.35% of Scapa dryer felts at the mill contained asbestos, Mr. Barabin was exposed during his work on individual machines, such as paper machine 5, which used a much higher percentage of Scapa asbestos-containing dryer felts.

Scapa then argues that the second *Lockwood* factor—expanse of the work site—weighs in its favor. (*See* MSJ at 10-11.) Because the Camas paper mill is sprawling, "spanning 660 acres" and consisting of various mills and structures, Scapa maintains that selling asbestos-containing dryer felts to the mill is insufficient by itself to illustrate close proximity. (*See id.*) If Ms. Barabin's evidence only showed that Scapa products were housed somewhere in the Camas paper mill without any reference to where those products were placed in relation to Mr. Barabin, the court would agree with Scapa. But Ms. Barabin proffers more: The sales records indicate the particular machine that each Scapa dryer felt went to, and Mr. Barabin testified that he worked on those particular machines while Scapa asbestos-containing dryer felts were used. (*See* Scapa Sales Chart; Barabin Tr. Testimony.) Thus, drawing all reasonable inferences in favor of Ms. Barabin, the overall size of the Camas paper mill is immaterial given the evidence that Scapa products were used on the very machines that Mr. Barabin worked on.

The evidence presented for the remaining *Lockwood* factors also favors Ms. Barabin, such that a genuine issue of material fact remains for trial. *See* 744 P.2d at 613. Mr. Barabin testified about the many years that he spent working with the dryer felts that were used in the various machines. (*See* Barabin Tr. Testimony at 9:8-12.) Moreover, he details the numerous ways in which his work required him to manipulate the dryer felts,

including changing them in and out of the machines, cutting them, disposing of them, and blowing compressed air at them during the cleaning process. (*See id.* at 28:12-29:2, 34:14-18, 37:14-38:6, 49:9-19, 51:9-19.) This evidence demonstrates both Mr. Barabin's regular and frequent presence in areas with Scapa asbestos-containing dryer felts and the number of ways in which these dryer felts were handled and used.

The court additionally considers the expert testimony presented regarding the asbestos dust released from dryer felts and the effect that release had on those who worked with the dryer felts. Ms. Barabin presents the report of Dr. Steven Compton, a physicist and microscopist with experience in testing asbestos-containing products for fiber release. (Good Decl. ¶ 17, Ex. 15 ("Compton Rep.") at 1.) Dr. Compton concludes that "asbestos-containing dryer felts can release asbestos fibers when handled, blown with compressed air, or cut." (*Id.* at 2.) Combining this knowledge with Mr. Barabin's occupational history, Dr. Compton opines that "the handling of asbestos-containing dryer felts, cleaning with compressed air, and cutting of dryer felts performed by Mr. Henry Barabin and by others in his presence would have released asbestos fibers into the air." (*Id.* at 2-3.) Ms. Barabin also presents the testimony of Mr. Christopher DePasquale, an industrial hygienist. (Good Decl. ¶ 19, Ex. 17 ("DePasquale Rep.") at 1.) Given his review of Mr. Barabin's occupational history, he concludes that:

> Mr. Barabin would have had significant exposures to asbestos because of his work on and with paper machines. These exposures would have occurred when he personally cut dryer felts, assisted in the change-out of dryer felts, and when he or others used compressed air to clean off dryer felts.

*Id.* at 7.

ORDER - 14

Ms. Barabin also presents the testimony of Dr. Carl Brodkin, who concluded that the asbestos exposure at the Camas paper mill was a substantial factor in causing Mr. Barabin's mesothelioma. (*See* Good Decl. ¶ 23, Ex. 21 ("Brodkin Rep.").) Although Dr. Brodkin reports that Mr. Barabin experienced bystander asbestos exposure as a laborer at a Texas refinery between 1964 and 1968, Dr. Brodkin states that Mr. Barabin's "most prominent exposure" to asbestos came during his time as a paper mill worker, with "prominent direct exposure to asbestos" through "regular manipulation of . . . dry felts." (*Id.* at 22.) Based on studies associating manipulation of dryer felts with significant levels of airborne asbestos fibers, studies finding significantly elevated risks of asbestos-related cancers among workers in the paper mill industry, and Mr. Barabin's frequent observations of visibly dusty conditions at the mill (*id.* at 23), Dr. Brodkin concludes that Mr. Barabin's "mesothelioma was caused by his occupational exposure to asbestos as a career paper machine worker and laborer . . . with a prior exposure to asbestos as a refinery laborer" (*id.* at 30). Because "dryer felts represent an historically important source of respirable asbestos exposure," Dr. Brodkin determines that Mr. Barabin's exposure to asbestos fibers through dryer felts "is a substantial contributing factor in his development of malignant mesothelioma." (*Id.* at 7.)[9] All of the above experts' testimony, combined with the sales records evidence locating Scapa's dryer felts at certain machines and Mr. Barabin's testimony of working on those same machines,

//

---

[9] This conclusion comes from Dr. Brodkin's "Updated Report for Mr. Henry Barabin" on March 24, 2009. This report is included in the same exhibit as Dr. Brodkin's original report, and thus, the court cites to the internal document page number.

constitute sufficient evidence upon which a fact finder could reasonably find in Ms. Barabin's favor on the issue of causation. *See Celotex*, 477 U.S. at 324.

The court recognizes that Ms. Barabin's evidence is far from conclusive. Ms. Barabin does not present any direct evidence linking Scapa's asbestos-containing dryer felts to Mr. Barabin's exposure to asbestos, but the circumstantial evidence she provides, when viewed in the light most favorable to her, is sufficient for a reasonable juror to infer that Mr. Barabin was exposed to Scapa asbestos-containing dryer felts during the 30-plus years he worked at the Camas paper mill and that this exposure proximately caused Mr. Barabin's mesothelioma. Because there is sufficient evidence that a reasonable fact finder may find for Ms. Barabin on this issue, Scapa is not entitled to prevail as a matter of law, and the court denies summary judgment.

## IV. CONCLUSION

For the foregoing reasons, the court DENIES Scapa's motion for summary judgment (Dkt. # 672).

Dated this 22nd day of February, 2018.

JAMES L. ROBART
United States District Judge

ORDER - 16