UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GERALDINE BARABIN, | CASE NO. C07-1454JLR |
| Plaintiff, | ORDER EXCLUDING DR. ADRIAN BRODY'S TESTIMONY |
| v. | |
| SCAPA DRYER FELTS, INC., et al., | |
| Defendants. | |

## I.    INTRODUCTION

This order memorializes the court's March 28, 2018, oral ruling on the admissibility of Plaintiff Geraldine Barabin's expert witness, Dr. Arnold Brody.  (*See* 3/28/18 Min. Entry (Dkt. # 733).)  Defendant Scapa Dryer Felts, Inc. ("Scapa") argued that Dr. Brody's testimony would be needlessly cumulative of other expert testimony already presented by Ms. Barabin.  (*See* 3/27/18 Min. Entry (Dkt. # 728).)  The court considered the parties' arguments made during trial, the relevant portions of the record, and the applicable law.  In its oral ruling, the court EXCLUDED Dr. Brody's testimony

in its entirety.  (3/28/18 Min. Entry.)  This written order memorializes the court's oral ruling.

## II.     BACKGROUND

**A.     Expert Testimony Presented at Trial**

On March 27, 2018, Ms. Barabin presented testimony from Dr. Carl Brodkin, a physician in occupational and environmental medicine.  (*See* 3/27/18 Min. Entry.)  As part of his testimony, Dr. Brodkin spoke at length about the impact of asbestos on the body.  He testified about the body's natural defenses against fiber inhalation, such as structures to capture fibers; mucus in the respiratory tract; and cilia structures that capture and clear fibers through the mucociliary escalator.  Despite these respiratory defenses, Dr. Brodkin opined, fibers can access the lung and the pleura and persist there for years, leading to disease.

Dr. Brodkin then described how asbestos fibers in lung tissue lead to asbestosis: inflammation attempts to destroy the foreign body, but because asbestos fibers are persistent, the continued inflammation causes scarring of the lung and pleura plaques— scarring on the lining of the lung—which then impedes the ability of oxygen to diffuse from the air sacs into the capillaries.  Dr. Brodkin explained how asbestos fibers may lead to cancer by describing how asbestos fibers can enter the cell, directly damage genetic material, and cause a condition called aneuploidy—disruption of cell division, such that chromosomes do not divide evenly during mitosis.  He articulated that the repeated errors in cell division eventually become so abnormal that the cell loses control of its cell

//

division, ultimately resulting in carcinogenesis or cancer. The uncontrolled cell growth, Dr. Brodkin attested, causes tumor masses.

Dr. Brodkin described mesothelioma as the uncontrolled cell growth of the pleura, leading to thickening throughout the pleural lining of the lung that crowds out the normal lung tissue, leading to respiratory insufficiency and death. He testified that there is no cure for malignant mesothelioma; instead, only palliate treatments are available to lessen the impact of the symptoms and slow down the progression of the disease. Dr. Brodkin also stated that mesothelioma is a dose-response disease, which means that the greater the dose, the greater the risk for developing the disease.

**B.      Dr. Brody's Expert Report**

Dr. Brody outlined the opinions that he would testify to in his expert report. (Brody Rep. (Ex. 5) at 1.) His report states that he will generally testify about the impact of asbestos on human and animal lungs, including "the deposition patterns of inhaled fibers," the "impact upon cells of all forms of asbestos," and "their ability to induce genetic damage and disease." (*Id.*) Dr. Brody has not reviewed Mr. Barabin's records, examined Mr. Barabin or any of his specimens, or offered any conclusion specific to Mr. Barabin. (*See generally id.*)

Dr. Brody includes several opinions regarding the "basic fundamental biology and pathology concerning asbestos-related disease." (*Id.* at 3.) First, he concludes that asbestos fibers must be inhaled to cause disease, and once they are, they can be deposited along the respiratory tract. (*Id.* at 1.) Dr. Brody describes the body's "natural defenses that attempt to expel foreign materials," including cilia structures that "form a

mucociliary escalator" that attempts to remove materials out of the lung. (*Id.* at 1-2.) However, Dr. Brody explains, not all particles can be effectively expelled by the body's natural defenses, and thus, some fibers remain in the lungs. (*Id.* at 2.)

Dr. Brody further concludes that asbestos fibers cause scarring because macrophages, cells that are designed to clear the lungs, attempt to move the fibers out of the lung and release "peptide growth factors that cause scar tissue" to develop. (*Id.*) This scar tissue thickens the membrane and thus compromises the diffusion capacity of the lung, such that the "oxygen-carbon dioxide exchange cannot take place efficiently." (*Id.*) Dr. Brody explains that asbestos fibers can also lead to "pleural plaques, which are discrete scars located at the pleural surface." (*Id.*)

Dr. Brody additionally explains how "asbestos fibers also cause damage to DNA such that chromosome integrity is compromised [known as aneuploidy]." (*Id.*) Aneuploidy leads to the development of lung cancer and mesothelioma because of "the accumulation of multiple errors in a series of genes that control cell growth." (*Id.*)

Finally, Dr. Brody opines that asbestosis is not treatable or curable; instead it can be a progressive disease, getting worse after exposure has ceased. (*Id.*) He states that asbestos-related diseases are "dose-response diseases, meaning that the more one is exposed, the more likely it is that disease will develop." (*Id.* at 3.)

### III.    ANALYSIS

Generally, Rule 702 of the Federal Rules of Evidence governs the admission of testimony by experts. *See* Fed. R. Evid. 702. However, even if the courts finds that a witness qualifies as an expert under Rule 702, the court may still exclude the testimony

under Rule 403.  *See McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 806 (9th Cir. 1988).

Rule 403 allows the court to exclude relevant evidence "if its probative value is

substantially outweighed by a danger of one or more of the following: unfair prejudice,

confusing the issues, misleading the jury, undue delay, wasting time, or needlessly

presenting cumulative evidence."  Fed. R. Evid. 403.

The district court has "considerable latitude in performing the Rule 403 balancing

test."  *Rogers v. Raymark Indus., Inc.*, 922 F.2d 1426, 1430 (9th Cir. 1991).  Indeed,

"[t]here can be no doubt of the power of the trial court, in the exercise of a sound and

reasonable judicial discretion, to limit the number of expert witnesses."[1]  *Ruud v. United

States*, 256 F.2d 460, 462 n.5 (9th Cir. 1958) (internal quotation marks omitted) (quoting

*Chapman v. United States*, 169 F.2d 641, 642 (10th Cir. 1948)); *see also* Fed. R. Civ. P.

16(c)(2)(D) (allowing district courts to "avoid[] unnecessary proof and cumulative

evidence, and limiting the use of testimony under Federal Rule of Evidence 702").  The

court recognizes that the exclusion of evidence under Rule 403 "is an extraordinary

remedy" to be used "sparingly"; the "mere presence of overlap" does not render

testimony unnecessarily cumulative.  *Rodriguez v. Cty. of Stanislaus*, No. 1:08-cv-00856

OWW GSA, 2010 WL 2720940, at *1-2 (E.D. Cal. July 8, 2010).

In *Rogers v. Raymark Industries, Inc.*, an asbestos matter, the Ninth Circuit

affirmed the district court's decision to exclude expert testimony that was "only

tangentially related to the issues at trial" and "had the potential of confusing the jury"

---

[1] The court has informed both parties several times of its rule that only one expert witness
may testify to each subject.

when the plaintiff had already "presented testimony bearing on the same point through other witnesses." 922 F.2d at 1430. The Ninth Circuit found that the testimony at issue had "minimal probative value" because his testimony was "one step removed" from the conditions relevant to the plaintiff. *Id.* Against this level of probative value, the Ninth Circuit determined that the district court "correctly balanced prejudicial effect." *Id.* Not only might the jury have been confused or misled by the testimony, but "other witnesses already had presented most of the relevant testimony [the expert in question] had to offer." *Id.* These previous witnesses included another expert, albeit from another specialty, who offered similar testimony as the excluded expert. *Id.*

As in *Rogers*, Dr. Brody's testimony has minimal probative value. His testimony offers a general overview of the "basic anatomy and biology" behind asbestos-related disease (*see* Brody Rep. at 3), but it is "one step removed" from the issues specific to Mr. Barabin's disease, *see Rogers*, 922 F.2d at 1430. Dr. Brody does not offer any observations regarding Mr. Barabin's mesothelioma—nor could he, as Dr. Brody did not review any information specific to Mr. Barabin. (*See generally* Brody Rep.) Indeed, neither Mr. Barabin's mesothelioma nor the progression of his disease is in dispute here, as the parties have stipulated to both Mr. Barabin's diagnosis and his death resulting from his mesothelioma. (*See* Pretrial Order (Dkt. # 725) at 7.)

Moreover, the similarity between Dr. Brodkin's testimony and Dr. Brody's proffered testimony goes beyond mere overlap and instead, crosses into the unnecessarily cumulative. Both offer insight on the body's natural defenses against fiber inhalation and what occurs when those natural defenses fail. (*See* Brody Rep. at 1.) Both instruct on the

consequences of asbestos fibers that are deposited along the respiratory tract, including the resulting scarring on the lungs and pleura. (*See id.* at 2.) Both detail the damage asbestos fibers can have on cell division, resulting in errors in cell growth and ultimately, the development of lung cancer and mesothelioma. (*See id.*) Finally, both remark on the dose-responsive nature of the disease and its lack of cure. (*See id.* at 2-3.) The degree of similarity between the two expert testimonies is illustrated succinctly by the fact that the two experts' respective PowerPoint presentations feature some identical slides. This danger of presenting needlessly cumulative evidence substantially outweighs the minimal probative value of Dr. Brody's testimony. *See* Fed. R. Evid. 403.

Ms. Barabin insists that Dr. Brody's testimony differs from Dr. Brodkin's because Dr. Brody specializes in a different field. In other words, Ms. Barabin believes that even if the two experts offer substantially similar testimonies, they are not cumulative simply because one is a physician in occupational medicine and the other is a cellular biologist. To support this contention, Ms. Barabin offers several cases that remark on the difference in qualifications as a reason for including both testimonies. But these cases do not stand for the proposition that a difference in qualifications, standing alone, renders what would otherwise be substantially identical testimony non-cumulative. Instead, many of Ms. Barabin's cases detail additional differences in the testimonies, such as consideration of evidence not relied upon by other experts or use of a different analysis.[2] *See, e.g.,*

---

[2] Ms. Barabin also offers two Ninth Circuit cases that she purports relied on the witnesses' qualifications to find testimony non-cumulative. Not so. In fact, neither Ninth Circuit case cited by Ms. Barabin touched on the issue of qualifications. *United States v. Skillman*, 922 F.2d 1370 (9th Cir. 1990), allowed evidence of "skinhead references" because

*Johnson v. United States*, 780 F.2d 902, 906 (11th Cir. 1986); *see also Cantu v. United States*, No. CV 14-00219 MMM (JCGx), 2015 WL 12743881, at *7 (C.D. Cal. Apr. 6, 2015) (recognizing that experts based conclusions on examinations conducted at different times and that one is retained while the other is not). There are no such additional differences here.

The court might be inclined to agree with Ms. Barabin if the different approaches taken by experts in different fields could impact the evidence at issue. But the evidence at issue here is a general overview of—in Dr. Brody's words—"basic anatomy and biology." (*See* Brody Rep. at 3.) Ms. Barabin has not shown how a physician in occupational medicine would approach "basic anatomy and biology" differently than a cellular biologist would; nor has she shown how that difference, if any, would add probative value to a textbook overview of anatomy and biology.

Dr. Brody's testimony has only limited probative value that is substantially outweighed by the danger of confusing the jury, undue delay, and needlessly presenting cumulative evidence. *See* Fed. R. Evid. 403. Accordingly, the court excluded Dr. Brody's testimony in its entirety. (*See* 3/28/18 Min. Entry.)

//

//

---

such references were not cumulative to other animus evidence "in light of the difficulty in establishing the requisite racial animus." *Id.* at 1374. *Shad v. Dean Witter Reynolds, Inc.*, 799 F.2d 525 (9th Cir. 1986), discussed the necessity of expert testimony on "churning," not the qualifications of the expert. *See id.* at 529-30. Thus, these cases do not support Ms. Barabin's position. Instead, Ninth Circuit case law suggests the opposite. In *Rogers*, the expert testimony was excluded despite the fact that the previous expert witness was from a different discipline. *See* 922 F.2d at 1430.

# IV. CONCLUSION

Based on the foregoing analysis, the court EXCLUDED the testimony of Dr. Arnold Brody.

Dated this 30th day of March, 2018.

_____
JAMES L. ROBART
United States District Judge